

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA



STEPHEN P. WALLACE, individually, d/b/a )
RIVER OAKS ASSOCIATES, as Trustee of the )
Stephen P. Wallace Irrevocable Trust of 1996, )
and as next friend of LORICE T. WALLACE; )
                             )

WALLACE REAL ESTATE COMPANY, )
 an Oklahoma Partnership; )
                             )

RIVER OAKS DEVELOPMENT CORPORATION, )
an Oklahoma Corporation; and )
                             )

WILLIAM E. MADDOX, )
                             )

                Plaintiffs, )

vs. )            Case Number:01CV0311H(J)

TRUST COMPANY OF OKLAHOMA, )
an Oklahoma Corporation, individually and as interim )
successor co-trustee of the LORICE T. WALLACE )
IRREVOCABLE TRUST of 1996, general partner of the )
LORICE T. WALLACE FAMILY LIMITED )
PARTNERSHIP, an Oklahoma Limited Partnership; )

PAUL MINDEMANN and TOM WILKINS, individually )
and as officers of TRUST COMPANY OF OKLAHOMA; )

RONALD J. SAFFA, individually, and as interim )
successor co-trustee of the LORICE T. WALLACE )
IRREVOCABLE TRUST of 1996, general partner of the )
LORICE T. WALLACE FAMILY LIMITED )
PARTNERSHIP, an Oklahoma Limited Partnership; )

MARY ROMA JAGE individually and as limited guardian )
of the person of LORICE T. WALLACE; )

BANK ONE, N.A., as interim trustee of the FRANK A. )
WALLACE TRUST of 1974; )
                             )

1





EXHIBIT
C 2-Part
1



THE UNITED STATES OF AMERICA, ex rel.,  )
THE U..S. ARMY CORPS OF ENGINEERS;  )
)
RICHARD BILINSKI, individually and in his official  )
capacity as project manager of the Fry Creek Drainage  )
Project of the U.S. Army Corps of Engineers;  )
)
THE CITY OF BIXBY, OKLAHOMA,  )
an Oklahoma Municipal Corporation;  )
)
JOE WILLIAMS, individually and in his official capacity  )
as Mayor for the City of Bixby, Oklahoma;  )
)
L.C. NEEL, individually and as former City Councilman  )
of the City of Bixby, Oklahoma; and  )
)
PHIL FRAZIER, individually and as municipal counsellor  )
for the City of Bixby, Oklahoma,  )
)
Defendants.  )

## PLAINTIFFS' FIRST AMENDED COMPLAINT

### I . Preliminary Statement

1.  This action is brought primarily by STEPHEN P. WALLACE (hereinafter

WALLACE), and his wholly owned business enterprises, RIVER OAKS ASSOCIATES which

later became RIVER OAKS DEVELOPMENT CORPORATION, an Oklahoma Corporation,

(hereinafter RODC);  and WILLIAM E. MADDOX (hereinafter MADDOX), for the purpose of

seeking redress against violation of their civil private property rights guaranteed under the Fifth

and Fourteenth Amendments of the Constitution of the United States and under federal statute, 42

U.S.C. § 1983.  Plaintiffs allege that certain of the named Defendants have conspired and acted in

concert with the City of Bixby, through its officials and under color of law, in injuring Plaintiffs'

2

right to develop certain private property interests.

2. WALLACE also brings this action on behalf of WALLACE REAL ESTATE COMPANY, an Oklahoma partnership composed of WALLACE and LORICE T. WALLACE (hereinafter LTW) and organized in 1982 by Frank A. Wallace (hereinafter FAW), LTW and WALLACE for the purpose of managing and marketing real estate owned by the Wallace family.

3. WALLACE requests court appointment and approval to bring this action as next friend of LTW, his mother and partner in WALLACE REAL ESTATE, and who is the settlor and primary beneficiary of the LORICE T. WALLACE Irrevocable Trust of February 1996 (hereinafter LTW-Irrevocable Trust). Said LTW-Irrevocable Trust is the general partner of the LORICE T. WALLACE FAMILY LIMITED PARTNERSHIP(hereinafter LTW-Family Limited Partnership). The LTW-Family Limited Partnership holds fee simple title to all but seventeen and one-half acres of the property known as the River Oaks Golf Course and Residential Community (hereinafter RIVER OAKS). WALLACE, through his personal trust the Stephen P. Wallace Irrevocable trust of February 1996, is a limited partner of the LTW-Family Limited Partnership and holds fee simple title to the remaining seventeen and one-half acres of RIVER OAKS.

4. WALLACE, and later RODC, are the developers, along with MADDOX, of certain land located in Tulsa County, Oklahoma, and within the Northern District of Oklahoma, which was commonly known as RIVER OAKS. RIVER OAKS is composed of approximately 320 acres of real property along the North bank of the Arkansas River in the cities of Bixby and Tulsa, Oklahoma, located just South of S. 131st Street between Memorial Road and Yale Ave., in Tulsa County, State of Oklahoma, containing, but not limited to, the following legal description:

E/2 of NE 10 acres Lot 1, E/2 W/2 NE 10 acres, Lot 1, SE 10 acres Lot 1, and all

3

of Lot 5, Section 10; and Lots 1, 2, 3, 4 and 5 and N/2 NW/4 and W/2 NW/4 NW/4 and Less the W 25 feet, the N. 272.4 feet, and the S 264 feet of W/2 NW/4 NE/4 all in Township 17 North, Range 13 East of the I.B.&M., containing in all 230 acres more or less, as well as all accreted land and riparian rights.

5.  WALLACE individually owns an additional seventeen and one-half acres of River Oaks in fee simple and holds an option to purchase the remainder of the real estate from his mother, LTW,  through various family trusts, more fully set out below.  This option was extended from time to time as requested by WALLACE since 1993 and was in force at the time of notice of the impending condemnation by the City of Bixby, Oklahoma (hereinafter BIXBY) of from 12 to 14 acres of land which was planned for the "signature hole" in the RIVER OAKS golf course property and which BIXBY sought to develop into a sewer lagoon.

6.  This complaint is based upon a continuing series of acts by those acting in concert with certain factions within BIXBY.  During the process of development and while the option contract was pending, BIXBY began seeking a portion of the property for use  in expanding a sewer lagoon system that BIXBY had built on land adjacent to RIVER OAKS.

7.  BIXBY previously acquired the land for the original sewer lagoon system in 1976 from FAW and LTW, WALLACE's parents.  This land had been acquired from the Wallaces by BIXBY under a ruse perpetrated by L.C. NEEL (hereinafter NEEL), former Councilman of BIXBY.  NEEL represented to the Wallaces that BIXBY wished to acquire the property for use as a public park for children.  However, as soon as the property was acquired, BIXBY and NEEL revealed their true intention to use the land as a sewer lagoon to further the development interests of NEEL in real estate projects in North BIXBY and limit the development potential of the competing Wallace tract.  Over one-half of the land acquired by BIXBY in 1976 was developed

4

into and used as sewer lagoons.

8. Sufficient land remained to complete the recently proposed expansion of the lagoon system without taking any additional Wallace land by condemnation. There were also other viable, more economical and more environmentally sound solutions available to satisfy any increased need for sewage capacity without the necessity of expanding the lagoons. As will be set forth in detail below, BIXBY could tie its existing system in with the 36" force main which runs adjacent to the lagoons. A connector for such a tie in was provided during construction and the facility at the end of the line has more than enough capacity to accommodate the needs of BIXBY for the foreseeable future.

9. BIXBY, NEEL, JOE WILLIAMS (hereinafter WILLIAMS), as well as PHIL FRAZIER (hereinafter FRAZIER), knew of the legal and enforceable property interests of WALLACE and his development of RIVER OAKS. BIXBY through the efforts of WILLIAMS and FRAZIER has wilfully resisted Plaintiffs in their attempts to develop RIVER OAKS by

(a) unsuccessfully resisting the approval of the planned unit development zoning in 1993;

(b) ceasing cooperation in the funding of an alternate path for the Fry Creek Drainage Channel by the U.S. Army Corps of Engineers in 1993;

(c) interfering with the Plaintiffs in their contract rights to have certain fill dirt from the Fry Creek Drainage Channel spread over the RIVER OAKS property in order to bring the property out of the 100 year flood plain in 1995-1996; and

(d) taking additional RIVER OAKS property to expand the sewer lagoon system which is continuing at the time of the filing of this complaint.

10. The property on which RIVER OAKS was to be developed has been a constant

source of controversy since the circumstances under which the original sewer lagoons were constructed. The Wallace family has brought actions against BIXBY since that time

(a) to recover sand and mineral rights wrongfully obtained during the process of acquiring the property for the park;

(b) to seek damages for wrongful deposit of dirt fill from the construction of the Fry Creek Drainage Channel; and

(c) to dispute the use of an easement originally acquired for road purposes for the park.

11. BIXBY, acting through NEEL, WILLIAMS and later FRAZIER, have engaged in a course of conduct hostile to the Wallace family since 1976. Plaintiffs believe that the motivation for this hostile conduct was due to dominance of the City Council of BIXBY by a faction loyal to rival real estate developer, L.C. NEEL. Plaintiffs state that NEEL, a City Councilman in 1976, is the person who fraudulently induced the Wallace family to sell the land to BIXBY for park purposes and then was instrumental in the construction and financing of the sewer lagoons. NEEL was the largest single bond purchaser when the sewer lagoons were originally financed and developed. NEEL primarily benefitted in his competing real estate development business in the acquisition by BIXBY of the Wallace property for the sewer lagoons.

12. NEEL recruited defendant WILLIAMS to assist him in persuading BIXBY to continue to exploit the Wallace property. WILLIAMS, and the faction influenced by NEEL, have been vocally and continuously opposed to any development of the Wallace land. NEEL has on several occasions sought to purchase the RIVER OAKS property from the Wallaces for his own commercial interests but was refused each time. NEEL subsequently acquired a tract of land adjacent to RIVER OAKS on the East for commercial development purposes including sand

6

rights which were in direct competition with sand rights wrongfully sought under the BIXBY

deeds for the park and which were subsequently returned to the Wallaces. This action allowed

NEEL to develop his competing sand mining operation on the adjacent land while BIXBY tied the

Wallace property up in litigation for several years in case number CJ-85-1318, *Frank Wallace and*

*Lorice T. Wallace v. The City of Bixby*, Oklahoma, District Court, Tulsa County.

13. WALLACE countered this political opposition by supporting a candidate who was

opposing WILLIAMS for Mayor. In 1991, after a scandal involving the loss of public records of

BIXBY at a cost to the taxpayers of over a quarter of a million dollars, Janene McGuire defeated

the incumbent WILLIAMS in the election for the office of Mayor. McGuire was not a member of

the NEEL/WILLIAMS faction and wholly supported the development of RIVER OAKS as a

future asset and amenity to the City of Bixby and south Tulsa. During McGuire's tenure as

Mayor of BIXBY, WALLACE was successful in narrowly obtaining (by a 3-2 vote) approval of

the Planned Unit Development zoning request for RIVER OAKS and in supporting and passing a

$5.5 million bond issue to finance the construction of the Fry Creek Drainage Channel by BIXBY

and the U.S. Army Corps of Engineers. This bond issue was used as matching funds to obtain

an additional $18 million grant from the U.S. Congress to complete the drainage project.

BIXBY, through its engineers, represented to WALLACE that the drainage channel would take

the RIVER OAKS property out of the 100 year flood zone. BIXBY used this representation to

induce LORICE WALLACE to sell the land required for the channel to BIXBY rather than

construct the Channel to the North of River Oaks. The representation by BIXBY was, once

again, false in that the project did not remove RIVER OAKS from the 100 year flood zone.

14. In 1993, during a special election urged by Frazier which called for a change in the

7

form of BIXBY government, Mayor McGuire lost her seat to WILLIAMS. WILLIAMS

immediately retaliated against Wallace by requiring him to post a deposit for the cost of an

alteration to the drainage channel which would have been more conducive to use of the Wallace

property as a golf course/residential community. This was a significant deviation from the

position taken by the previous administration and the U.S. Army Corps of Engineers..

15. WILLIAMS and NEEL were also instrumental in altering BIXBY's plans to expand

the sewer lagoon. In 1996 BIXBY sought financing from the Oklahoma Water Resources Board

to expand the sewer lagoon system to the East of the existing facility using the "park" land at the

direction of Mansur-Daubert, an independent engineering firm. This land had never been

developed as a park and was scarcely used at all during the period from 1976 through 1999. In

1998, WILLIAMS and others persuaded the majority of the City Council to move the location of

the lagoon expansion to the west of the existing lagoons thereby taking more of the Wallace

property for sewer lagoon expansion. This taking would eliminate the "signature hole" for the

golf course and require the move of the clubhouse on the golf course plan which had already been

approved twice by BIXBY. The impact of this taking severely damaged the ability of Plaintiffs to

develop RIVER OAKS into its highest and best use as a $40 million residential golf course

community.

16. WILLIAMS, NEEL, FRAZIER and others were successful in December of 1998 in

redirecting the plans for expansion of the lagoons to the West and onto the Wallace property.

WILLIAMS, NEEL, FRAZIER and other representatives and officials of BIXBY knew, or

should have known, that this taking would materially and substantially interfere with the golf

course residential development and that the taking was not necessary for a number of reasons

8

including, but not limited to the following:

(a) A 36" force sewer main connecting to the Haikey Creek Sewage Treatment Plant was constructed adjacent to the BIXBY lagoons by the Tulsa Metropolitan Utility Authority (TMUA) and the Regional Metropolitan Utility Authority (RMUA), of which BIXBY was a member, to assist in processing increased sewage needs for the area. A flange tie-in was installed in said line by the City of Tulsa specifically for BIXBY to hook on and use the line and was easily and economically available for use by BIXBY to increase sewage treatment capacity without taking land to the East nor the RIVER OAKS property to the West..

(b) Sufficient land was available to the East of the lagoons. The "park" had lain dormant since the sewage lagoon system was built. The expansion into the "park" would not alter the fact that there was an existing sewer lagoon adjacent to the property.

(c) Both the U.S. Environmental Protection Agency and the Oklahoma Department of Environmental Quality discourage the use of lagoons as a sewage treatment alternative. The 36" Force main was established in South Tulsa to eliminate open air lagoon systems which pollute the air and dump the remaining effluent into the Arkansas River.

17. With the easy availability of Haikey Creek Treatment Center to members of the RMUA., like BIXBY, the expansion of the lagoons was not the best environmental choice. Noxious odors, unsightly sludge and environmentally hazardous waste water damage the surrounding properties and ecosystems. However these factors were not considered due to the real reason for the taking which was to wilfully, wantonly, intentionally, arbitrarily and capriciously interfere with the RIVER OAKS development.

18. BIXBY, WILLIAMS and FRAZIER initiated the condemnation of a portion of

RIVER OAKS in bad faith and in an arbitrary and capricious manner in that there were these viable, more cost efficient and sanitary alternatives to expand the sewer capacity of BIXBY without adding a fourth lagoon system in front of the clubhouse to be located on RIVER OAKS property. This decision by BIXBY was designed to maliciously, arbitrarily and capriciously interfere with the private property rights of WALLACE, RODC, LORICE T. WALLACE and MADDOX.

19. BIXBY, WILLIAMS and FRAZIER did not initially name WALLACE, MADDOX or RODC as defendants in the condemnation action. Subsequently BIXBY, WILLIAMS and FRAZIER added them as additional parties to the condemnation case in response to said Plaintiffs' objection to the condemnation action. However in August of 2000, BIXBY, acting through WILLIAMS and FRAZIER, voluntarily dismissed them when it was learned they intended to object to the necessity of the taking. Said dismissal from the condemnation was made without prejudice to bringing a separate action regarding the taking issue. WALLACE objected to his voluntary dismissal from the condemnation action and sought review by the Oklahoma Supreme Court by way of application for a Writ of Mandamus, but said application was denied on October 17, 2000.

20. Defendants RONALD J. SAFFA (hereinafter SAFFA), TRUST COMPANY OF OKLAHOMA (hereinafter TCO) and MARY ROMA JAGE (hereinafter JAGE) acting as limited guardian of the person of LORICE T. WALLACE, purporting to act on behalf of LORICE T. WALLACE in the management of her property, stated at the August 2000 hearing that they had "no objection" to the taking of the RIVER OAKS property.

21. BIXBY, WILLIAMS and FRAZIER, willfully and intentionally disregarded the rights

10

of Plaintiffs by voluntarily dismissing them from the condemnation action.  BIXBY, acting in

concert and with the approval of SAFFA, TCO and JAGE, has proceeded to take possession of a

portion of RIVER OAKS intending to maximize the damaging effect that the taking had on the

remainder of the proposed development including land owned by WALLACE and land on which

WALLACE and RODC held an option to purchase since 1993.

22.  WALLACE, on information and belief, states that the taking of this land was punitive

and in retaliation for the successful actions in the past by the Wallace family regarding the

wrongful taking of sand rights, the wrongful stockpiling and/or removal of fill dirt on the Wallace

property and the wrongful use of the alleged road easement.  Further, WALLACE states that this

taking was also instigated to further damage WALLACE in his development efforts so as to

increase the development value of property owned and developed by NEEL and damage his

relationship with his mother, a partner with WALLACE in WALLACE REAL ESTATE

COMPANY.  This action was supported by SAFFA, TCO and JAGE all of whom had a financial

as well as personal motive to stop WALLACE's proposed development of RIVER OAKS.

23.  WALLACE has previously brought an action in the U.S. District Court for the

Northern District of Oklahoma regarding the taking of the property.  However, WALLACE

dismissed said action at the suggestion of the defendant BIXBY and FRAZIER in a Motion to

Dismiss in which they alleged that his claims were not ripe in that WALLACE could and should

intervene in the state condemnation case.  After dismissal of the action without prejudice, Plaintiff

filed an application in the state trial court to intervene.  BIXBY then resisted the application

contrary to its prior position.  BIXBY, WILLIAMS and FRAZIER, while the application to

intervene was pending, have now apparently reached a private "oral" settlement agreement of the

11

condemnation case with TRUST COMPANY OF OKLAHOMA, through its officers and employees PAUL MINDEMANN and TOM WILKINS, and RONALD J. SAFFA, acting as interim co-trustees of the Lorice T. Wallace Irrevocable Trust of 1996. On information and belief, Plaintiffs state that BIXBY, WILLIAMS, TRUST COMPANY OF OKLAHOMA, PAUL MINDEM ANN, TOM WILKINS and RONALD J. SAFFA have reached a meeting of the minds regarding the taking of property, have agreed on an amount of compensation to be paid to the Lorice T. Wallace Family Limited Partnership for said taking and on March 23, 2001, obtained state district court approval for the adoption of the settlement agreement from the Honorable Gregory Frizzell, District Judge, in case number PT-2000-21 in the District Court of Tulsa County, Oklahoma. Judge Shallcross denied the Plaintiffs Motion to Intervene in the state condemnation case on April 26, 2001.

24. BIXBY and FRAZIER's efforts to induce Plaintiffs to dismiss their previous federal action and intervene in the state condemnation action were the result of a conspiracy and agreement among said parties defendant as more fully set out herein and the culmination of efforts to thwart the RIVER OAKS development and the sale of the property by LORICE T. WALLACE and her trusts to WALLACE, MADDOX and RODC.

25. All actions described above have been taken by the Defendants (except POE, the CORPS and BILINSKI) under color of law involving a continuing conspiracy among them to use the municipal corporate powers of the City of BIXBY to thwart WALLACE, his partners and business associates, in the development of RIVER OAKS.

26. Plaintiffs have completely exhausted their remedies in state district court and before the Oklahoma Supreme Court and now seek relief in the U.S. District Court alleging an illegal

12

conspiracy to deprive them of their Private Property Rights as guaranteed by the United States Constitution, Amendments 5 and 14, as hereinafter set forth.

II. JURISDICTION AND PARTIES

27. These actions arise under the 5th and 14th Amendments to the Constitution of the United States, under the Civil Rights Act of 1871, Title 42 U.S.C. § 1983, Title 28 U.S.C. § 1343 and under the doctrine of pendent state claims.

28. Plaintiff WALLACE is a resident of the State of Oklahoma. RIVER OAKS ASSOCIATES was a business solely owned and operated by WALLACE, the sole purpose of which was to develop RIVER OAKS as a residential golf course community. RIVER OAKS ASSOCIATES evolved into RIVER OAKS DEVELOPMENT CORPORATION (hereinafter RODC), a corporation incorporated under the laws of the State of Oklahoma having its principal place of business in Tulsa County, Oklahoma. WALLACE is the sole stockholder of RODC..

29. Plaintiff William E. Maddox (hereinafter MADDOX) is a resident of the State of North Carolina, presently residing in Asheville, N.C. In December of 1995 MADDOX entered into an agreement with WALLACE for the development of RIVER OAKS under the terms of which MADDOX was to receive a one-half interest in the developed property in exchange for his securing financing for the purchase, acquisition and construction associated with the golf course residential development.

30. Defendant TRUST COMPANY OF OKLAHOMA (hereinafter TCO) is an Oklahoma Corporation engaged in the business of managing assets held for the benefit of others with its principal place of business located in Tulsa County, Oklahoma, and within the jurisdiction of this court.

13

31. Defendants PAUL MINDEMANN and TOM WILKINS, (hereinafter MINDEMANN and WILKINS respectively) at all times involved in the claims expressed herein, were officers and employees of TCO, and were acting in that capacity and in the furtherance of the business interest of TCO. TCO, MINDEMANN and WILKINS acted at all times relevant herein as investment advisors to Lorice T. Wallace and, after November 3, 1999, acted as successor co-trustees to the Lorice T. Wallace Irrevocable Trust of 1996 and the Lorice T. Wallace Revocable Trust of 1974 as Restated on October 5, 1993 and Amended on February 12, 1998. The majority of the property involved in RIVER OAKS is presently owned 81% by the Lorice T. Wallace Family Limited Partnership and 19% by the Frank A. Wallace Trust of 1974 as amended. The Lorice T. Wallace Irrevocable Trust of 1996 is the general partner of the LTW Family Limited Partnership and the Lorice T. Wallace Revocable Trust is the majority (96%) interest holder in said partnership.

32. Defendant RONALD J. SAFFA, is a resident of Tulsa County, Oklahoma, and a licensed attorney and certified public accountant in Oklahoma. He, or members of his law firm, have previously simultaneously served as attorney for WALLACE and LTW and on information and belief, was instrumental in inducing LTW to surrender control of her trusts, and the property owned therein, under the guise of a plan to assist LTW in the distribution and financial management of her estate.

33. Defendant MARY ROMA JAGE is the sister of Plaintiff STEPHEN P. WALLACE, is a limited partner of the LTW- Family Limited Parntership through the Mary Roma Jage Irrevocable Trust of 1996, and is presently the limited guardian of the person of LORICE T.WALLACE. Mrs. Jage is a resident of Oakbrook, Illinois.

14

34. Defendant BANK ONE, N.A., (hereinafter BANK ONE) is a national banking association organized under the laws of the United States of America and having offices located in several states within the United States and specifically with offices located in the City of Tulsa, Oklahoma, as well as other counties within the state of Oklahoma.

35. Defendant UNITED STATES OF AMERICA, ex rel. the U.S. ARMY CORPS OF ENGINEERS, (hereinafter CORPS) is an agency of the government of the UNITED STATES of AMERICA.

36. Defendant RICHARD BILINSKI, (hereinafter BILINSKI) is sued in his individual capacity and in his official capacity as Project Manager of the Fry Creek Drainage Project on behalf of the CORPS.

37. Defendant BIXBY, is a municipal corporation and political subdivision of the State of Oklahoma.

38. Defendant JOE WILLIAMS is a resident of Tulsa County, Oklahoma, and was acting at all times involved in the claims expressed herein under color of state law as a city councilman and/or Mayor of BIXBY.

39. Defendant L.C. NEEL is a resident of Tulsa County, Oklahoma and was acting at all times involved in the claims expressed herein in concert with officials of the City of BIXBY to interfere with the contract rights of Plaintiffs.

40. Defendant PHIL FRAZIER is a resident of Tulsa County, Oklahoma, and was acting at all times involved in the claims expressed herein under color of state law and as a city attorney and municipal counselor for BIXBY.

### III. FACTUAL BACKGROUND OF COMPLAINTS

15

41. In 1976 Defendant BIXBY and L.C. NEEL fraudulently and wrongfully obtained property from the Wallace family adjacent to land which is the subject of this action for use as a public park for children.

42. Soon after acquiring the property, BIXBY and L.C. NEEL materially and substantially changed the use of the property from a public park to a sewer lagoon system financed by L.C. NEEL and his partners for his home developments within the area North of the Wallace land in that portion of the City of Bixby North of the Arkansas River. WALLACE alleges that BIXBY, acting through NEEL and former city attorney Charles Tomlins misrepresented and concealed their true intent to use the WALLACE property as a sewer lagoon when BIXBY acquired the property. Plaintiffs allege that this act was the origin of a continuing conspiracy initiated by L.C. NEEL, et al., to interfere with the development of the Wallace property. NEEL has attempted unsuccessfully to acquire the Wallace property many times over the period of time at issue.

43. In 1991 Plaintiffs began the development of the subject property for use as a golf course and residential community. Plaintiff WALLACE engaged the services of Poe and Associates, Inc., in assisting with the engineering development plans for RIVER OAKS and Pittman, Poe & Associates, an affiliated firm, for the master planning of the golf course and residential areas of the community.

44. In January 1993, Plaintiffs obtained approval of the BIXBY city council regarding zoning for the Planned Unit Development of RIVER OAKS, a master planned residential golf course community.

45. In 1992 through 1996, Plaintiff WALLACE was instrumental in obtaining funding for

the City of Bixby for construction of drainage facilities by the U.S. Army Corps of Engineers along the Fry Creek Channel. The purpose of WALLACE's participation in this project was to take RIVER OAKS out of the flood plain so that it could be used for residential development. The U.S. Army Corps of Engineers, acting through Richard Bilinski, and BIXBY officials fraudulently induced the Wallace family to allow construction through their tract rather than to the North of the Wallace property by promising that the drainage channel would take the Wallace property out of the 100 year flood area.

46. In October of 1993, WALLACE's plans for the development of RIVER OAKS came to an abrupt halt with the defeat of Mayor Janene McGuire and the return of Mayor WILLIAMS. On information and belief, WALLACE states that NEEL acting in concert with WILLIAMS, SAFFA, TCO and others within the city government of BIXBY breached their agreement regarding cooperation with funding a certain amendment to the development plans of the Fry Creek Drainage Channel. This change in position regarding the channel resulted in city officials with BIXBY notifying WALLACE that the approval of changes necessary for the incorporation of Fry Creek Drainage Channel into the plan for RIVER OAKS would not be approved unless he posted approximately $400,000 in an escrow account to pay for the change. This was part of the continuing plan and conspiracy to interfere with WALLACE's development of RIVER OAKS after the Corps and BIXBY had negotiated the Fry Creek Drainage Channel permanent easement to allow for a meandering channel. Further, the Fry Creek Drainage Channel failed to take the Wallace property out of the flood plain in violation of the agreement and against the express representations of the engineers of BIXBY and the U.S. Army Corps of Engineers.

47. At approximately the same time period, SAFFA was in the process of unduly

17

influencing LORICE T. WALLACE to alter the terms of the LORICE T. WALLACE Trust by restating the trust in lieu of a simple amendment which was her request. WALLACE alleges on information and belief that the purpose of this "restatement" rather than LTW's request for an amendment was to remove WALLACE from a position of successor co-trustee with BANK ONE and to replace them with SAFFA and TCO. SAFFA is a nephew of LORICE T. WALLACE and was serving as attorney and certified public accountant for WALLACE at the same time he directed and drafted legal documents for LORICE T. WALLACE which removed WALLACE and BANK ONE as successor co-trustees. WALLACE alleges that SAFFA breached his fiduciary and attorney/client relationship with both WALLACE and LORICE T. WALLACE by fraudulently concealing his intent to interfere with the WALLACE and MADDOX development of RIVER OAKS and to interfere with the relationship between WALLACE and LORICE T. WALLACE in the management and operation of the WALLACE REAL ESTATE COMPANY and the development of RIVER OAKS. These acts also furthered SAFFA and TCO's plan to remove WALLACE totally from his family business of real estate development and supplant him as the principal advisor to the LORICE T. WALLACE trusts and WALLACE REAL ESTATE COMPANY.

48. In October of 1993, WALLACE, who had been operating since May of 1992 under an informal oral agreement with LORICE T. WALLACE to provide the land to develop the RIVER OAKS property, entered into a formal agreement including the acknowledgment of an option to purchase the RIVER OAKS property then held by LORICE T. WALLACE through the LORICE T. WALLACE trust of 1974 and the FRANK A. WALLACE trust of 1974.

49. In November of 1993, Poe and Associates, Inc., filed a lien on the RIVER OAKS

18

property belonging to the Lorice Wallace and Frank Wallace Trusts. This lien was filed without any contractual relationship between said trusts and the engineering firm. This lien interfered with the development of RIVER OAKS and caused dissension among the Wallace family members.

50.  WALLACE believes that said lien was filed upon with the assistance of SAFFA or members of the SAFFA law firm who held an attorney client relationship with him and with the engineering firm, Poe and Associates, Inc. Reese Morrel, SAFFA's partner was the registered service agent for Poe and Associates, Inc.

51.  WALLACE owned ample land within the RIVER OAKS development to satisfy the outstanding claims of Poe and Associates, Inc., without resorting to the filing of liens against the property of the Lorice Wallace Trusts. The liens were subsequently discharged by the state court in CJ-95-3509, *Poe and Associates, Inc. v. Stephen P. Wallace, et al.*, in the District Court of Tulsa County, Oklahoma.

52.  In February of 1996, SAFFA, assisted by members and /or associates of the SAFFA law firm, unilaterally prepared the LTW Family Limited Partnership representing it to LTW as a means to control the family's property and minimize the impact of estate taxes on the Wallace family assets by the IRS. The "real purpose" in SAFFA's creation of the LTW Family Limited Partnership was to strengthen the dominion and control of SAFFA and TCO on Wallace family assets and extend the control for the next fifty years. Under the terms of the LTW Family Limited Partnership, SAFFA and TCO would become the successor co-trustees of a new entity, the LTW Irrevocable Trust, which was the general partner of the Family Limited Partnership. This relationship was to last until 2046 with the co-trustees to have unlimited discretion regarding the distribution of assets as well as generating substantial "fee" income to SAFFA and TCO for the

entire 50 year term.    The original trusts by FAW and LTW were to allow the corpus of the trusts

to flow to their children at 50, 55, and 60 years of age.  The questionable Restatement of October

1993 of the LTW Revocable Trust which already owned the real estate and property of LTW was

to hold a 96% interest in the Family Limited Partnership.  WALLACE was granted a small

(approximately .1%) limited partnership interest in the Family Limited Partnership in direct

contrast to the previously created trust terms by FAW and LTW in 1974 and as amended up to

Frank A. Wallace's death in 1990.  It was not FAW nor LTW's intent to alter the general terms

for the disposition of their assets upon their death or incapacity.  SAFFA convinced LTW sign

documents he prepared under the guise of financial planning when in reality SAFFA and TCO

were methodically assuming dominion and control of the sizable Wallace family estate.

53.  In 1997, while the appeal in the POE summary judgment in favor of LTW was

pending, SAFFA intensified his efforts to have WALLACE further removed by devising a plan to

wrongfully remove him from his similar position as successor trustee of the Frank A. Wallace

Trust that he held on the LTW trust prior to the fraudulent restatement in 1993.

54.  In May of 1997, SAFFA refused to cooperate in a real estate closing essential to the

tax free, section 1031, acquisition of property for RIVER OAKS until WALLACE resigned as

successor co-trustee of the Frank A. Wallace trust.  SAFFA had previously prepared three section

1031 tax exchanges for LTW for property in the RIVER OAKS development.  This refusal to act

until the resignation of WALLACE as successor trustee was part of the continuing conspiracy to

interfere with WALLACE's family relationships and the development of RIVER OAKS.

WALLACE resigned as a result of the "plan of action" created by SAFFA and TCO.  As soon as

the real estate deal was closed, WALLACE revoked his resignation the following day.

55. In February of 1998, SAFFA and TCO fraudulently advised LTW to execute an amendment to the LTW Revocable Trust which provided for control to pass to SAFFA and TCO "in the event of the incapacity of the Trustee." This amendment also held SAFFA and TCO harmless from any action taken by them including payment of their own litigation expenses from Wallace Trust Funds. This provision is a breach of fiduciary obligation and is legally presumed to be the product of undue influence pursuant to 60 O.S. § 175.57.

56. In December of 1997 WALLACE, and his counsel Joe Hull, requested LTW to retain James Sneed to get a "second opinion" of her estate. SAFFA met with LTW and in January of 1998 directed LTW to fire Sneed as soon as he had completed the review of the estate plan. SAFFA and TCO acted immediately to commence an attack on LTW through the use of psychotropic drugs delivered by SAFFA's brother George Saffa of Saffa Pharmacy.

57. As soon as the amendment referred to above was executed, SAFFA through his brother, George Saffa and Saffa Pharmacy, Patricia Hastings and an osteopathic physician, Dr. Carol Hanson, began giving LTW psychotropic drugs which affected her perception and mood. These drugs continued to be administered to LTW even though LTW became physically and psychologically weak, wheelchair bound and unable to care for herself. LTW's mental capacity was reduced and her physical health endangered due to the administration of a drug called "Depakote." Depakote is generally used to treat individuals with bipolar disorder and seizures. LTW had not been diagnosed with any such condition by any competent medical authority. These actions were taken to give the appearance that LTW was incapacitated. On February 12, 1998, Saffa had LTW execute an amendment to the LTW Revocable trust of 1974 restated in October of 1993, which provided that "in the event of the incapacity" of LTW, SAFFA and TCO could

21

remove her as trustee and take over as successor trustees.

58. Within the same period of time in early 1999, SAFFA and MINDEMANN, attempted to fraudulently convince Bank One that there were no assets in the FAW trust and that they should resign in favor of TCO and SAFFA.

59. WALLACE discovered this plot when he overheard SAFFA discussing it with Mindemann and one of his sisters, Patricia Hastings, at LTW's home in February of 1999. WALLACE contacted Bank One immediately and Bank One contracted with LTW to manage one-half of the liquid assets of the LTW Family Limited Partnership under heavy opposition by SAFFA, TCO, MINDEMANN and WILKINS. On November 1, 1999, Bank One served SAFFA and TCO with the written demand contracts of LTW to release one-half of the liquid assets of the LTW Family Limited Partnership to Bank One for their management and investment. Furthermore, all real estate transactions in the future were also to be divided 50/50 with Bank One.

60. On November 3, 1999, SAFFA and Patricia Hastings took LTW to see Dr. Carol Hanson for the purpose of forcing the resignation of LTW from the trusts which she created. WALLACE became aware of this plot and went to Dr. Hanson's office to see what was happening. On his arrival he discovered Dr. Hanson, Saffa and Hastings had LTW in a corner and surrounded her, demanding her resignation as trustee of her trusts. Ms. Hastings threatened LTW that if she did not resign, Hastings would move from Tulsa and not allow LTW to see her grandchildren. Saffa threatened to turn her estate over, quit working her trusts so that the IRS would take over her assets. Dr. Hanson kept stating, "Lorice you want to resign, don't you. You have to resign." Dr. Hanson told LTW she was losing her mind and couldn't handle her estate

22

anymore. Dr. Hanson and Saffa told her that she could not trust Stephen Wallace any more.
Saffa stated that "Steve didn't know what he was doing" and was trying to hurt her and that she
had to do this right now, immediately. After an extended period of time with Dr. Hanson, Ms.
Hastings and Mr. Saffa, threatening and berating her, LTW finally agreed to resign just to stop
their mental and verbal assault upon her. SAFFA, TCO and Hanson then put LTW in a
"lockdown" drug treatment center at Hillcrest Hospital for seven days. SAFFA, TCO and Dr.
Hanson then instructed Hastings to take LTW to Mayo Clinic in Minnesota to have LTW
declared incapacitated.

61. Upon the resignation of LTW as trustee of the Lorice T. Wallace Revocable and
Irrevocable Trusts, SAFFA and TCO became successor co-trustees of the trusts and controlled
the family limited partnership. On November 10, 1999, SAFFA informed WALLACE that his
option to purchase RIVER OAKS had expired and asserted that WALLACE no longer had any
interest in the property. SAFFA's motivation for that action was to retaliate against WALLACE
for his actions in promoting BANK ONE as a potential rival advisor to Lorice Wallace and to
further thwart the development of RIVER OAKS. It was always the desire of LTW that RIVER
OAKS be developed. The actions of SAFFA were detrimental to the trusts, caused loss of
revenue and resulted in a breach of the contract for sale of the property to Plaintiffs.

62. SAFFA and TCO in December of 1999 conspired with Patricia Hastings, Wallace's
youngest sister, to use an old power of attorney executed allegedly in 1993 to seize control of
Lorice Wallace's assets and place LTW in San Simeon Nursing Home in North Tulsa. Lorice
Wallace informed WALLACE that Hastings hoped to gain control of the LTW's home for herself
and her family through assisting SAFFA and TCO in this plot..

23

63. In December of 1998, Plaintiffs received information from David Fist, FAW & LTW's original real estate and trust attorney, that BIXBY wanted to acquire an additional fourteen acres, more or less, of land located within the RIVER OAKS development to expand the sewer lagoon system and use a street easement that had not been used for over 20 years. The BIXBY city council arbitrarily and capriciously voted on January 11, 1999, to condemn that portion of RIVER OAKS which is the principal subject of this case.

64. In November of 1998 and in February of 1999, Plaintiffs gave notice of their exercise of the option to purchase the remainder of the RIVER OAKS property and deposited $10,000 earnest money with Guaranty Abstract to begin proceedings to close the transaction..

65. Plaintiffs have resisted the taking of this land through the state court system and have exhausted all available effective state remedies for this illegal conspiracy and arbitrary and capricious taking prior to commencing this action for federal relief.

IV.  COUNT ONE - Substantive Due Process Claim

66. Plaintiffs adopt all factual allegations above.

67. Defendants BIXBY, WILLIAMS, NEEL, FRAZIER, acting in concert and in the furtherance of a conspiracy with other named defendants and others not named arbitrarily and capriciously elected to take the Wallace land located west of the existing lagoons even though sufficient suitable land was available to and already owned by BIXBY adjacent on the east side of the existing sewer lagoons. BIXBY's own engineers had originally planned the expansion to the east and had submitted that plan to the Oklahoma Water Resources Board and the Oklahoma Department of Environmental Quality for approval and funding of the sewer infrastructure. The Oklahoma Water Resources Board "approved" the plans and funding to construct the project with

24

the new lagoon located to the east of the existing lagoons and on property owned by BIXBY.

68. Plaintiffs allege said taking was malicious, arbitrary and capricious and in direct violation of their right to substantive due process protected by the 5th and 14th Amendments to the Constitution of the United States of America. The taking was maliciously motivated to continue the pattern of direct interference with the development of RIVER OAKS by the Defendants in their continuing illegal conspiracy. For all of these reasons, Plaintiffs were deprived of their Private Property and civil rights without due process of law.

69. Plaintiffs further allege that Defendants BIXBY, WILLIAMS and FRAZIER were acting under color of state law when they unlawfully deprived Plaintiffs of their property rights in a malicious, arbitrary and capricious manner in violation of 42 U.S.C. § 1983. All other named defendants were acting in concert and aiding and abetting BIXBY in its purpose to interfere with the development of RIVER OAKS.

70. The acts of each named Defendant and each employee, agent and representative of TCO, BIXBY, and BANK ONE in furtherance of the conspiracy are deemed to be the acts of, and are chargeable to and binding upon every other Defendant.

### V. COUNT TWO - Procedural Due Process Claim

71. Plaintiffs adopt all factual allegations above.

72. Plaintiffs further allege that they were omitted from the condemnation action as parties even though Defendants, BIXBY, WILLIAMS and FRAZIER knew that Plaintiffs had an interest in the subject property and were engaged in the development and funding of said property under an option agreement with the Lorice Wallace Family Limited Partnership negotiated by SAFFA to specifically tender "marketable title." The condemnation action limited the ability of

25

the LTW Family Limited Partnership to convey marketable title and interfered with the performance of the contract.

73. Plaintiffs state that the failure to maintain them as a parties by voluntarily dismissing them from the condemnation action was the result of an illegal and continuing conspiracy calculated to deprive Plaintiffs of their Private Property rights without due process of law and without a fair and full hearing. Plaintiff now seeks that hearing before this court having exhausted all available relief in state court. The condemnation action was settled by and between the defendants City of Bixby, Williams, Frazier and TCO, SAFFA, JAGE and the LTW Family Limited Partnership. Plaintiffs' Motion to Intervene was denied.

74. Plaintiffs and the Wallace family property will be irreparably damaged by the taking of this portion of their development property in that the fourteen acres and street easement wrongfully, maliciously, capriciously and arbitrarily taken by BIXBY occupy key positions in the golf course residential development. Use of this acreage as a sewer lagoon will have a detrimental and irreparable effect on the remainder of the development and render it useless for the purposes for which Plaintiffs intended when they contracted to purchase the property. BIXBY, WILLIAMS and NEEL will then have access to the Fry Ditch Easement for traffic and pedestrian use totally disrupting the proposed use of the property as a golf course.

VI. COUNT THREE - Breach of Contract, fraud and Constitutional violation

75. Plaintiffs adopt all factual allegations above.

76. Plaintiffs allege that Defendant U.S. Army Corps of Engineers (Corps), acting by and through Richard Bilinski, induced Plaintiffs to agree to the conveyance of certain property located within RIVER OAKS to the Corps for use in building the Fry Creek Drainage Project by

26

representing that the project would remove the RIVER OAKS property from the 100 year flood zone. Defendants Bixby, Corps and Bilinski knew, or should have known, at the time of the representation that it was false and misleading.

77. Plaintiffs detrimentally relied on said representation in agreeing to release the property required for the drainage project and allowing the conveyance by the Lorice Wallace Trusts to Defendants Bixby and the Corps.

78. Bixby, the Corps and Bilinski fraudulently misrepresented that the Fry Creek Drainage project would remove the remainder of RIVER OAKS from the 100 year flood zone and would aid in allowing the construction of RIVER OAKS.

79. On August 13, 14 and 15 of 1999, Plaintiffs attended a meeting with the Corps in which it was disclosed that RIVER OAKS had not been taken out of the 100 year flood zone.

80. Plaintiffs have been damaged by the failure of the Fry Creek Drainage project to remove the remainder of RIVER OAKS from the 100 year flood zone. Plaintiffs were damaged by the misrepresentation that said property would be removed from the 100 year flood zone in allowing the Fry Creek Drainage project to cross the land upon which Plaintiffs held an option.

81. Plaintiffs' loss of private property to the Corps by virtue of the actions and misrepresentations of Bixby, Bilinski and the Corps constitute a taking of private property without just compensation. True compensation for the taking of the land for the Fry Creek Drainage project was substantially the improvement to the remainder of the RIVER OAKS property resulting from its removal from the 100 year flood zone.

82. Plaintiffs property rights were taken in violation of the 5th and 14th Amendments to the United States Constitution.

27

83. Plaintiffs do not know the full amount of said damage but presently estimate it in the amount of $10,000,000.00.

## VII.  COUNT FOUR- Breach of Fiduciary and Breach of Contract

84. Plaintiffs adopt all factual allegations above.

85. WALLACE's fourth claim is against Defendants TCO, SAFFA and BANK ONE for violation by a trustee of a duty the trustee owes to the beneficiaries under 60 O.S. § 175.57 and for breach of contract for sale of the RIVER OAKS property.

86. In paragraph 59 Plaintiffs state that SAFFA, purporting to act on behalf of the LTW Family Limited Partnership, breached the option contract between Plaintiffs and the Lorice T. Wallace Family Limited Partnership by stating that the option had expired when in fact, Plaintiffs had commenced closing on the property by payment of escrow deposit and notice of exercise of the option on or before its expiration.  Said option remained open while the Family Limited Parntership attempted to clear the title by resolving the condemnation issues.  A copy of the option agreements are attaced hereto and made a part hereof as exhibit "A."

87. On April 30, 2001, SAFFA, TCO and attorneys purporting to act on behalf of LTW, and the LTW Family Limited Partnership entered into a settlement under the terms of which the condemnation of the property which is the subject of the action was completed.

88. The taking of said property was not for a Family Limited Partnership purpose and was agreed to in violation of 54 O.S. § 150.

89. The actions of SAFFA, TCO and BANK ONE set forth above were wilful, malicious and were accomplished in bad faith and with reckless indifference to the purposes of the trust or the interest of the beneficiaries and with no intent to confer any benefit on LTW, WALLACE, any

28

other beneficiary of the trusts or any of the limited partners.

## VIII.  RELIEF REQUESTED

Wherefore Plaintiffs demand judgment against all defendants as follows:

90.  COUNT ONE - Plaintiffs request an injunction against the continued violation of their constitutional and statutory rights and money damages for the wrongful taking of their property rights in an arbitrary and capricious manner and damage to the  proposed RIVER OAKS development in an amount exceeding $20,000,000.00.

91.  COUNT TWO - Plaintiffs requests an injunction against the continued violation of their constitutional and statutory rights by the taking of their property rights without providing for a pre or post deprivation due process hearing before a neutral decisionmaker.  Plaintiff also prays for monetary damages in an amount exceeding $20,000,000.00.

92.  COUNT THREE - Plaintiff WALLACE prays for damages against the defendants named in Count Three in an amount of approximately $10,000,000 with the actual amount sought to be determined during discovery.  This sum is sought as a result of the loss in value of the remaining property of RIVER OAKS after the wrongful taking of the Fry Creek Drainage channel land based upon the fraudulent misrepresentation that RIVER OAKS would benefit by being elevated above the 100 year flood zone.

93.  COUNT FOUR - Plaintiff WALLACE seeks actual and punitive damages against SAFFA, TCO and BANK ONE for breach of contract and breach of fiduciary obligation in allowing the taking of the property which is the subject of this action.

Wherefore, Plaintiffs demand judgment against all defendants, as set forth above and in the event Plaintiff prevails in this action, his costs and a reasonable attorney's fee pursuant to 42

29

U.S.C. § 1988 for the violations of civil rights.

Respectfully submitted,

Mitchell & Foley

By: _____
Robert L. Mitchell, OBA #6279
5500 N. Western Ave., Suite 100A
Oklahoma City, OK 73118
Telephone: (405) 767-0404
Facsimile:   (405) 767-0909

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF MAILING

I hereby certify that on this 13th day of August, 2001, I mailed a true and correct copy of the above and foregoing document with postage fully pre-paid to:

Phil Frazier, Esq.
FRAZIER & PHILLIPS
1424 Terrace Drive
Tulsa, OK 74104

James E. Poe, Esq.
COVINGTON & POE
111 W. 5th Street, Suite 740
Tulsa, OK 74103

William C. Kellough, Esq.
Paul J. Cleary, Esq.
BOONE, SMITH, DAVIS, HURST &
DICKMAN
500 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103

James C. Milton, Esq.
DOERNER, SAUNDERS, DANIEL &
ANDERSON
320 South Boston, Suite 500
Tulsa, OK 74103

James E. Weger, Esq.
JONES, GIVENS, GOTCHER & BOGAN
15 E. 5th Street, Suite 2750
Tulsa, OK 74103

J. Schaad Titus, Esq.
BARKLEY, TITUS, HILLIS &
REYNOLDS
2750 First Place Tower
15 East Fifth Street
Tulsa, OK 74103

30

John H. Lieber, Esq.
ELLER & DETRICH
2727 East 21st Street, Suite 200
Tulsa, OK 74114

Kenneth E. Crump, Jr., Esq.
Rodney H. Dusinberre, Esq.
CRUMP & PAGE
1437 South Boulder Ave., Suite 670
Tulsa, OK 74119

Robert L. Mitchell