ORIGINAL FILED

MAR 0 5 2003

MICHAEL L. WILLIAMS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT COURT

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

BEFORE THE HONORABLE TERRENCE L. MICHAEL, CHIEF JUDGE

| | |
|---|---|
| In Re: | ) Case No. 02-00073-M |
| | ) Chapter 7 |
| STEPHEN PAUL WALLACE, dba Wallace Real Estate Company, dba River Oaks Associates, dba Wallace Investments, | ) |
| Debtor. | ) |
| | ) |
| PATRICK J. MALLOY, III, Trustee, | ) A. P. 02-0197-M |
| Plaintiff, | ) |
| v. | ) MOTION of RONALD SAFFA and ) REECE MORREL for SANCTIONS ) AGAINST DEBTOR; MOTION of |
| STEPHEN PAUL WALLACE, Trustee for the Stephen Paul Wallace Irrevocable Trust, | ) PLAINTIFF for DEFAULT ) JUDGMENT ) |
| Defendant. | ) Tuesday, February 11, 2003 ) Tulsa, Oklahoma |

Appearances:

For the Plaintiff:          Malloy & Malloy, Inc.
                           Patrick J. Malloy, III, Attorney at Law
                           1924 South Utica, Suite 810
                           Tulsa, Oklahoma  74104-6515

For Debtor/Defendant:      Stephen Paul Wallace, pro se

For Movants Morrel         Morrel, West, Saffa, Craige & Hicks
and Saffa:                 By: Mark A. Craige, Attorney at Law
                           5310 East 31st Street, Suite 1100
                           Tulsa, Oklahoma  74135

Electronic Court           United States Bankruptcy Court
Reporter:                  Bobbie Smith
                           224 South Boulder, Suite 105
                           Tulsa, Oklahoma  74103-3015
                           (918) 699-4012

Certified Electronic       Palmer Reporting Services
Transcriber:               P. O. Box 30727
                           Stockton, California  95213-0727

          Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.



EXHIBIT

D-Part

1

2

## I N D E X

Hearing on the Complaint:

Opening Statement by the Trustee:          page   3
Opening Statement by the Debtor:           page   4
The Court's Findings on the Complaint:     page  10


Motions for Sanctions:                     page  10

Opening Statement on behalf of the Movants:  page  14
Opening Statement by the Debtor:             page  16

Witnesses:

| | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Ronald Saffa | | | | |
| By Mr. Craige: | 17 | | 37 | |
| By Mr. Wallace: | | 27 | | |

Exhibits:                                  Received in Evidence

Movants' Exhibit 1:                        page 19
Movants' Exhibit 4:                        page 20
Movants' Exhibit 3:                        page 25

Arguments:

Closing on behalf of the Movants:    page 38
Closing by the Debtor:               page 42


The Court's Findings of Fact and
Conclusions of Law:                  page 43

*Opening Statement by the Trustee*                                     3

1:03 o'clock p.m.

PROCEEDINGS

1  THE COURT:  Number 02-0197, Patrick J. Malloy,

2  Trustee, versus Stephen Paul Wallace, Trustee for the Stephen

3  Paul Wallace Irrevocable Trust; plaintiff's motion for default

4  judgment; and the motion of Ronald Saffa and Reece Morrel for

5  sanctions.

6          The Court notes the appearance of Mr. Wallace.

7          Are there other appearances?

8  MR. MALLOY:  The trustee is present, Your Honor.

9  THE COURT:  Thank you.

10  MR. CRAIGE:  Your Honor, Mark Craige for Ron Saffa and

11  Reece Morrel.

12  THE COURT:  Thank you.

13          Let's begin with the motion for default.  Mr. Malloy.

14  MR. MALLOY:  Yes, Your Honor.

15          OPENING STATEMENT by the TRUSTEE

16  MR. MALLOY:  This adversary was commenced seeking a

17  determination that the Stephen Paul Wallace Irrevocable Trust

18  was not, in fact, a trust and that the assets of that trust

19  constitute a property of the bankruptcy estate.

20          The original response filed by the def- -- Mr. Wallace,

21  that is, actually filed the original answer in this case, but

22  not in his capacity as a trustee.

23          On December 10 this Court directed Mr. Wallace in his

*Opening Statement by the Debtor*                                    4

1    capacity as trustee for the reference trust to file an answer

2    within ten days.

3              THE COURT:  Actually, it was 20, but —

4              MR. MALLOY:  Twenty days.  And no response was filed.

5              I then on January 7th wrote Mr. Wallace and advised

6    him that if he didn't file something within five days I was

7    going to file a motion for the default.  He still failed to file

8    an answer.  And I then filed a motion for a default.

9              THE COURT:  All right.  Thank you.

10             Opening, Mr. Wallace?

11             OPENING STATEMENT by the DEBTOR

12             MR. WALLACE:  This Court is aware and so is the

13   trustee of the allegations and the litigation that has been

14   going on due to the fraudulent conversion of my family's estate

15   by Saffa and The Trust Company.  These irrevocable trusts are

16   fraudulent in their nature.  I never had any access to them.  I

17   never created them.  I never had any input with them.

18             The fact that he put me as a trustee was his

19   ill-designed way of converting our family estate and my estate,

20   in particular.  He did so while he was my attorney and CPA, in

21   the breach of the — of his fiduciary duty.  And these

22   ~~irrevocable trusts stand only that Mr. Saffa has created them~~

23   for his own use and benefit.

24             I never received any statements from these trusts.  I

25   don't know what assets are in these trusts.  There was an

*Opening Statement by the Debtor*                                          5

1   irrevocable trust that was formed by my parents in 1974 that was

2   due to pay in 1994.  While Mr. Saffa was my attorney and CPA, he

3   conspired with David Fist and Reece Morrel and other — and Trust

4   Company of Oklahoma officials to disband that irrevocable trust.

5        It was never paid out to any of the four children nor

6   their scheduled A's, which Mr. Fist said now he has the trust

7   but he seemed to have lost the schedules.

8        And I propose to the Court if they know about this

9   fraud that is going on upon my family's estate that they need to

10  take action immediately.  And I notice the bankruptcy trustee of

11  the same.

12       These trustees have been terminated.  This Court is

13  aware of that.  In a — in a courtesy copy that was delivered to

14  the Bankruptcy Appellate Panel, the Provident Trust Company out

15  of Omaha, Nebraska are now the new trustees.  These — the former

16  interim trustees have been terminated.  They will not turn over

17  the assets.

18       As the Court notes, the document that they prepared

19  and the irrevocable trust states that they are to be removed

20  without a court proceeding.  To date they've spent over a

21  million dollars of the family's trust money trying to hide what

22  ~~D. R. Payne and Mike Freeman originally found out were in Ron~~

23  Style Limited (phonetic) off balance sheet problems.

24       Now we found out through the efforts of David Hour

25  (phonetic), the CPA that's now been retained by Provident Trust

*Opening Statement by the Debtor*                                          6

1  to look at what is happening to our estate, we have found that

2  we have a $14 million estate tax liability upon the death of my

3  mother.

4          And based on her condition now, which is terminal,

5  Saffa and Trust Company are still negating their duty to the

6  trust and their fiduciary duty, the same way that they've

7  conceived these irrevocable trusts.

8          And these irrevocable trusts are all set up on fraud,

9  having my mother sign documents that she thought was for estate

10 planning, which is now, we have found out through Jim Sneed

11 (phonetic) and from Provident — I mean from David Hour — that we

12 are subject to a $14 million estate tax liability of which we

13 have nine months to pay for it after my mother's death, at which

14 time they will move all her real estate assets to either the

15 principals that I asked — that I interview today on the stand or

16 other individuals that they have in their silent limited

17 partnerships.

18         And this is judicial notice to the Court that this

19 fraud is being perpetrated on the family.  And I respectfully

20 request that they do something about it and stay this matter

21 until Mr. Saffa and Trust Company turn over the documents and we

22 can have the audit with Dana Cole (phonetic) —

23         THE COURT:  What's the legal basis of your request for

24 a stay?  You should know; you've asked me dozens of times for a

25 stay.  What is the legal basis for your request for a stay?

*Opening Statement by the Debtor*                                    7

1    MR. WALLACE: My legal basis is that if you grant Mr.

2  Malloy's access to my irrevocable trust, that wipes me out

3  completely of my estate, when the people that did it have

4  committed criminal activity and criminal conversion against my

5  family's estate and against me, as well.

6    THE COURT: And the reason you're not required or the

7  trust is not required to respond to Mr. Malloy's pleading that's

8  been properly served is?

9    MR. WALLACE: I thought I responded to it. I was

10  amazed hearing it just now. I — when Mr. Mallow wrote me, I — I

11  believe I wrote — I filed something in response.

12    THE COURT: Do you have any file-stamped copy of

13  anything of files —

14    MR. WALLACE: Not with me today, but —

15    THE COURT: Well, there's nothing in the docket, sir.

16  There is not a single pleading on file in this adversary after

17  the — after this Court's Order of December 10, 2002. There is

18  nothing filed by you. And that order provided the trust 20 days

19  — it struck the answer and provided 20 days to further plead.

20  There is nothing —

21    MR. WALLACE: Has — has there been 20 days passed

22  since we were here last on this?

23    THE COURT: From December 10th to February 11th, yes,

24  sir, there have been 20 days passed.

25    MR. WALLACE: No. I mean when were here last on the —

*Opening Statement by the Debtor*                                    8

1        THE COURT:  The order was entered December 10th.  More

2    than 20 days have passed.  The only thing that was filed was a

3    request for leave to file an objection which I struck because it

4    was filed — and not filed in compliance with this Court's order

5    regarding filing restrictions.  That's it.

6        MR. WALLACE:  That's the document I'm referring to.

7        THE COURT:  It was —

8        MR. WALLACE:  That — that document was stricken from

9    the record.

10       THE COURT:  Yes, sir.

11       MR. WALLACE:  When I asked for leave of Court to file

12   it —

13       THE COURT:  I'm not going to debate this with you, Mr.

14   Wallace.  The order imposing the filing restrictions was simple,

15   direct, understandable, and is enforced by this Court.  And you

16   didn't comply with it.

17       So you bet, absolutely, sir, I struck that pleading.

18   I will strike every pleading that is filed that's not filed in

19   compliance with the rules and orders of this Court.

20       MR. WALLACE:  Okay.  Well, I'm here before you today

21   in oral argument to again ask you to stay this matter pending

22   the criminal allegations against my family's estate.  And you

23   have an affidavit from a CPA lawyer and an LLM taxation from a

24   New York University that this matter is a grave matter.  We have

25   a terminal condition of my mother that —

1        THE COURT:  What affidavit do you speak of, sir?

2        MR. WALLACE:  It's —

3        THE COURT:  Do you have any evidence you want to offer

4   today?

5        MR. WALLACE:  It's in the — the copy that you

6   received, my —

7        THE COURT:  What basis do you think something that —

8   you send me a copy of something you file with another court; how

9   does that become evidence of record in this action?

10       MR. WALLACE:  Well, it's with the Bankruptcy Appellate

11  Panel and — and you being the Judge in the under case would get

12  a copy.

13       THE COURT:  And how is that evidence?  It's not

14  marked.  It's not filed of record.  It's not filed anywhere of

15  record in this Court's proceedings.

16       MR. WALLACE:  Is the Court —

17       THE COURT:  Is it your assumption, sir, just because

18  you drop something off in the Clerk's Office with my name on it

19  that it's of record in evidence in this case?

20       MR. WALLACE:  Well, I think this case is important

21  enough and the magnitude of it, Your Honor, that — and

22  especially with the allegations that are before the Court right

23  now, that the Court would want to research this and make the

24  correct decisions before irreparable harm came to my estate and

25  my family's estate.

*The Court's Findings on the Complaint*                          10

1      THE COURT: All right. Thank you, sir. Anything
2   further?
3      MR. WALLACE: No.
4      THE COURT: For the record, the request for any sort
5   of stay of this action is denied. There have been no showing
6   that a stay is justified.
7      The Court — the Court finds that the complaint in this
8   action was filed on September 9, 2002. The complaint is clear
9   and concise and alleges that — it alleges the existence of the
10  Stephen Paul Wallace Irrevocable Trust, alleges that the debtor
11  has exercised exclusive use and control over the property of the
12  trust and has repeatedly violated the terms and conditions and
13  purposes of the trust. That, as a result, the trust is illusory
14  and is not, in fact, a spendthrift trust as a matter of law and
15  equity.
16      Thereafter, on or about September 20, 2002, a motion
17  was filed to dismiss this action. It's found at docket number
18  4. Make sure I get this correct.
19      The motion to dismiss was filed. That motion was
20  later withdrawn by pleading on October 15, 2002, which is in the
21  file at docket number 8.
22      ~~The Court did not allow the withdrawal, but held a~~
23  hearing on October 22, 2002 on the plaintiff-trustee's motion to
24  strike the answer and to dismiss the third-party complaint which
25  was attempted to be filed.

*The Court's Findings on the Complaint*                                    11

1        At the conclusion of those hearings — let me back up.

2        Hearings were held on December 4, 2002 on these

3   matters.  A transcript of those hearings is found in the court

4   file at docket number 24.

5        The Court issued its ruling granting the trustee's

6   motion, striking the pleading filed by Mr. Wallace because,

7   among other reasons, it was filed by him personally; and

8   providing Mr. Wallace an addit- — excuse me — providing the

9   trust an additional 20 days to answer or otherwise plead.  That

10  Order was reduced to writing and was entered on — bear with me;

11  I apologize — December 10, 2002 and is found in the docket — in

12  the file at docket number 22.

13       More than 20 days have elapsed from the date of that

14  entry of that order.  There has been no answer filed in this

15  adversary proceeding on behalf of the trust.

16       Accordingly, the well-pled factual allegations of the

17  complaint are treated as true.  The adversary proceeding seeks

18  to, for the record, pray — the trustee seeks, and I quote, "An

19  order directing that any and all distributions from the family

20  partnership be paid directly to the plaintiff-trustee on behalf

21  of this estate."

22       And the plaintiff, quote, "Prays for declaratory

23  judgment that the reference trust is not a valid trust,

24  spendthrift or otherwise, and that all of the assets of the

25  trust constitute property of this estate."

1       The trustee is entitled on the record before the Court

2   to that judgment.  The motion for default judgment is granted.

3   The trustee is directed to prepare and submit an appropriate

4   order within ten days.

5       Any questions regard the Court's ruling, Mr. Malloy?

6       MR. MALLOY:  No, Your Honor.

7       THE COURT:  Mr. Wallace?

8       MR. WALLACE:  I object, Your Honor.

9       THE COURT:  I asked you, sir, if you had any

10  questions.  Do you have any questions, sir, regarding the

11  ruling?

12      I'm not asking you to reargue.  I'm asking you if you

13  have any questions.

14      MR. WALLACE:  For the record, Your Honor, you're

15  stating that this irrevocable — irrevocable trust that Ron Saffa

16  and Trust Company prepared is not a valid trust?

17      THE COURT:  I am stating that you — the Stephen Paul

18  Wallace Irrevocable Trust is in default of its obligations under

19  the Federal Rules of Civil Procedure and the orders of this

20  Court to answer this complaint.  I am therefore entering a

21  default judgment against said trust and in favor of Mr. Malloy

22  as plaintiff and trustee for the relief which he requests.

23      MR. WALLACE:  But you didn't answer my question, Your

24  Honor.  I asked you —

25      THE COURT:  I don't intend to, sir.  That is what I

*The Court's Findings on the Complaint*                                    13

1   have done.  I have answered your question precisely as to what I

2   am doing and the basis for the ruling.

3          MR. WALLACE:  Well, you've already stated it was not a

4   valid trust.  I appreciate it.

5          THE COURT:  Mr. Wallace, we're going to take a recess.

6   And you're either going to apologize for that comment, or I'm

7   going to hold you in contempt.  You are not going to — be quiet

8   — you are not going to put words in my mouth on this record or

9   any other record, sir.  I have been exceptionally patient with

10  you today and every other day you have come into this court.

11         I have read pleadings where you have insulted this

12  Court, you have insulted the lawyers who appear, and you have

13  blamed everybody in the world that appears here for your

14  problems.  I am not going to have you stand at that lectern and

15  put words in my mouth.

16         You can retract that statement, or I will hold you in

17  contempt.  It's that simple.  We'll take a five-minute recess,

18  and you decide what you want to do.  I am directing you not to

19  leave this courtroom.

20         THE CLERK:  All rise.  Court is in recess.

21      (Brief recess taken from 1:20 p.m. to 1:24 p.m.)

22         THE COURT:  Mr. Wallace.

23         MR. WALLACE:  I retract the statement.

24         THE COURT:  Let me make it clear, Mr. Wallace.

25         The next time, if there is a next time, you attempt to

1    put words in my mouth or take any — or make any derogatory

2    comment about the federal courts, I will hold you in contempt.

3    Until you purge yourself of that contempt at that time, I want

4    to make this very clear to you, sir, you will be jailed.  I will

5    not tolerate this.

6            Motion of Ronald Saffa and Reece Morrel for sanctions.

7            Mr. Craige.

8            MR. MALLOY:  Your Honor, may I be excused?

9            THE COURT:  Yes, Mr. Malloy, you certainly may.

10       (Mr. Malloy exits the courtroom at 1:24 p.m.)

11            MR. CRAIGE:  Good afternoon, Your Honor.

12            THE COURT:  Good afternoon.

13            <u>OPENING STATEMENT ON BEHALF OF THE MOVANTS</u>

14            MR. CRAIGE:  Your Honor, it's our motion for sanctions

15    under Rule 11.  We have submitted a witness and exhibit list.

16    We've got a few exhibits and one witness to call.

17            I believe the motion pretty well speaks for itself as

18    far as the legal and factual basis for the motion that we seek.

19    And I don't want to make a big, long opening statement about it.

20            I think we're here today to show that the record in

21    this case is pretty clear in this adversary, that there was a

22    third-party complaint filed on October the 9th of '02.  We sent

23    a letter to Mr. Wallace with a copy of the proposed Rule 11

24    sanctions motion as per — and I'll refer to Rule 11.  It's

25    actually 7011 which incorporates FRCP 11.  I'm just going to

1  call that Rule 11.

2         As per that rule, we sent that motion asking him to

3  withdraw that third-party complaint.  He did not do so.  We then

4  filed a 12(b)(6) motion on the 6th of November; and this Court

5  granted that motion.  Mr. Wallace never even objected to the

6  motion to dismiss.

7         The 12(b)(6) motion seeks to dismiss a complaint when

8  it does not state a cause of action on its face.  As this Court

9  and we all know, that's a pretty low standard to meet, for the

10  most part.  And this Court granted our motion to dismiss,

11  finding that the complaint that had been filed against my

12  clients did not even allege a cause of action.  So then we filed

13  this motion for sanctions.

14         We seek the attorney's fees that my clients were

15  required to expend to defend this meritless claim that was

16  alleged against us, for my clients.

17         We also seek additional sanctions to try to deter Mr.

18  Wallace in some way or other from continuing this course of

19  conduct, as it continues today.  He stands here in court today

20  and again says he's getting ready to sue my clients again and

21  accuse them again of crimes and fraud and breach of fiduciary.

22  It just goes on and on and on.

23         The evidence that you'll hear from the stand in a few

24  moments will be from Mr. Saffa, that there's been some 40

25  lawsuits and different types of legal proceedings filed against

*Opening Statement by the Debtor*                                    16

1  him by Mr. Wallace, that every one of those lawsuits has either

2  been dismissed by Mr. Wallace or has been a judgment entered in

3  favor of Mr. Saffa, where he prevailed on those claims.

4         The majority of the time in those complaints Mr.

5  Wallace has never produced any evidence to support these

6  outlandish claims that he continues to make and continues to

7  make here today.

8         We believe a grant of Rule 11 sanctions is appropriate

9  in this case, not only for the attorney's fees but also for some

10 form of sanction to try to stop this kind of nonsense from just

11 going on and on and on, and continuing *ad infinitum* or *ad*

12 *nauseam*, whatever you want to call it.  But that's basically the

13 evidence we're going to put on.

14        The legal basis for our motion is set forth in our

15 brief.  And that's all I have for an opening.

16        THE COURT:  Thank you.

17        Opening statement, Mr. Wallace.

18                OPENING STATEMENT BY THE DEBTOR

19        MR. WALLACE:  In my previous testimony I've already

20 given the Court judicial notice of Mr. Saffa's termination as a

21 trustee of the family estate.  And I would object to any

22 sanctions put on me at this time until the Court gives me leave

23 to do the discovery and the audit that I need, at my expense, to

24 prove that these allegations are true.

25        THE COURT:  Presentation of evidence, Mr. Craige.

*Saffa - Direct/Craige*                                          17

1          MR. CRAIGE:  Your Honor, we — excuse me — we call Mr.

2    Saffa.

3          THE COURT:  Thank you.

4          Mr. Saffa, if you would come forward, please, stand

5    next to the witness chair and raise your right hand.  My Deputy

6    will administer the oath and you may then be seated.

7          RONALD J. SAFFA, MOVANTS' WITNESS, SWORN/AFFIRMED

8          THE WITNESS:  I do.

9          THE CLERK:  Thank you.

10         THE COURT:  Please be seated, sir.  Draw that

11   microphone a comfortable distance in front of you.  And if you

12   would state your name for the record, spelling your last name

13   for the benefit of our reporter.

14         THE WITNESS:  Ronald J. Saffa, S-a-f-f-a.

15         THE COURT:  Thank you, sir.

16         Mr. Craige.

17         MR. CRAIGE:  Thank you, Your Honor.

18                        DIRECT EXAMINATION

19   BY MR. CRAIGE:

20   Q.  Mr. Saffa, are you the same Ronald Saffa who was one of the

21   defendants in this adversary proceeding 02-0197?

22   A.  Yes, sir.

23   Q.  And were you served with that adversary — third-party

24   complaint that Mr. Wallace filed in this adversary complaint

25   wherein he made certain allegations and claims against you?

1   A.   Yes, sir.

2   Q.   And did we subsequently cause a letter to be sent to Mr.

3   Wallace demanding that he dismiss that complaint?

4   A.   Yes, sir.

5   Q.   And did he ever respond to that?

6   A.   No, sir.

7   Q.   Was a motion to dismiss — did I file a motion to dismiss on

8   your behalf?

9   A.   Yes, sir.

10  Q.   And that was sustained by the Court?

11  A.   Yes, sir.

12  Q.   Have you reviewed the motion for sanctions that we filed in

13  this case that's marked as Exhibit Number 1?

14  A.   Yes, sir.

15          MR. CRAIGE:  Your Honor, just for purposes of the

16  record I wanted to offer our motion as Exhibit Number 1.

17          THE COURT:  Exhibit 1 is offered.

18          Any objection, Mr. Wallace?

19          MR. WALLACE:  Yes, I have an objection.

20          THE COURT:  The basis of the objection, sir?

21          MR. WALLACE:  Again, just what I said earlier in my

22  allegations against Mr. Saffa.  This whole case is based upon

23  the fraudulent conduct of Mr. Saffa.

24          THE COURT:  That objection is overruled.  Exhibit 1 is

25  received.

*Saffa – Direct/Craige*                                           19

1     (Movants' Exhibit 1 received in evidence.)

2          MR. CRAIGE:   Thank you, Your Honor.

3   BY MR. CRAIGE:

4   Q.   Mr. Saffa, has — have you been involved in various matters

5   of litigation with Mr. Wallace?

6   A.   Yes, sir.

7   Q.   I wanted to direct your attention to the exhibit book there,

8   Exhibit Number 4.

9   A.   Yes, sir.

10  Q.   Now did you prepare this document?

11  A.   Yes, sir, I did.

12  Q.   Is that a summary of the some 40-odd legal proceedings that

13  you've been involved with with Mr. Wallace?

14  A.   Yes, sir.

15  Q.   These — this summary summarizes pleadings that have been

16  filed in court proceedings; is that correct?

17  A.   Yes, sir.

18  Q.   And the case numbers of those various cases are identified

19  in these items; is that right?

20  A.   Yes, sir.

21  Q.   Those documents are basically pleadings which they summarize

22  would have been pleadings that either Mr. Wallace filed or

23  pleadings that were served upon Mr. Wallace by opposing parties;

24  is that right?

25  A.   Yes, sir.

*Saffa - Direct/Craige*                                    20

1   Q.  So all the documents that would have been used to prepare

2   this summary have been available to Mr. Wallace; is that right?

3   A.  Yes, sir.

4   Q.  Does this summary fairly summarize the various matters of

5   litigation that are set forth therein?

6   A.  I believe it does, yes, sir.

7           MR. CRAIGE:  Your Honor, we offer Exhibit Number 4.

8           THE COURT:  Exhibit 4 is offered.  Any objection, Mr.

9   Wallace?

10          MR. WALLACE:  No.

11          THE COURT:  Exhibit 4 is received.

12      (Movants' Exhibit 4 received in evidence.)

13  BY MR. CRAIGE:

14  Q.  Mr. Saffa, what — in Exhibit Number 4 that's been admitted

15  now, what does this basically show us overall?

16  A.  Well, it shows numerous federal, state court proceedings

17  that Mr. Wallace has initiated against me and Trust Company, and

18  sometimes just me individually.

19  Q.  And what type of allegations does he make in those

20  complaints?

21  A.  Well, in one he sued me and The Trust Company for breach of

22  fiduciary duty, infliction of emotional distress, fraud, and

23  constructive fraud.  I've been sued in both the Western District

24  of Oklahoma and the Northern District for RICO violations,

25  conversion of assets.  I've been — The Trust Company and I have

*Saffa - Direct/Craige*                                          21

1  been sued in the state of Missouri for fraud, accounting of

2  assets.  I mean the list just keeps going and going.

3  Q.  Is it the same basic allegations, though, over and over

4  again?

5  A.  Yes, sir.

6  Q.  I direct your attention to item number 3 on your summary

7  there.  In that particular two cases in Tulsa County, were those

8  same types of allegations made in that case?

9  A.  Yes, sir.

10  Q.  And did you have a trial in that case?

11  A.  Yes, sir.

12  Q.  And who prevailed in that trial?

13  A.  The Trust Company and I did.

14  Q.  Okay.  And — and, to your knowledge, has any appeal been

15  lodged as of this date?

16  A.  I don't think so.

17  Q.  What about — are there any other particular items in there

18  that are sort of illustrative of the types of actions that have

19  been brought against you?

20  A.  Well, the Tulsa County case, he sued us for infliction of

21  emotional distress, breach of fiduciary duty, fraud.  He

22  wouldn't show up for his deposition.  We had to get a court

23  order to make him show up for his deposition.  We got close to a

24  trial; he filed bankruptcy.  Then we got the bankruptcy stay

25  lifted.

*Saffa - Direct/Craige*                                                22

1          Then filed to remove the cases to federal court, and

2    we got close to trial. He sued Judge Frizzell to try to stop

3    the case from going to trial. He dismissed his claims against

4    me and Trust Company shortly before trial. Then he told

5    Frizzell he fired his attorney. Frizzell wouldn't let Mitchell

6    get out of the case, and we went to trial on that day. And the

7    Court ruled in my favor.

8    Q. Has this same type of pattern occurred over and over?

9    A. Yes, sir. Over the last three years there's been constant

10   litigation, unwavering litigation. You know people coming by my

11   house, process service, dropping off lawsuits. Coming by my

12   office, dropping off lawsuits against me. Letters to CEO and

13   banks accusing me of fraud and looting. Documents to the

14   "O'Reilly Factor," Mayor LaFortune, John Ashcroft, the FBI,

15   Stanley Glance, Commissioner Bob Nick (phonetic). Just numerous

16   individuals, accusing me about every crime in the world.

17   Q. To this day has Mr. Wallace ever produced any evidence in

18   court to substantiate any of those claims?

19   A. No, sir.

20   Q. Now from these various types of litigation that have been

21   going on in Exhibit Number 4, have there been other courts that

22   have entered orders sanctioning Mr. Wallace in various manners?

23   A. Yes, sir.

24   Q. Now if I would, I direct your attention to Exhibit Number 2.

25   Is that an order for sanctions that was ordered against Mr.

*Saffa – Direct/Craige*                                          23

1   Wallace?

2   A.   Yes, sir.

3   Q.   Now what case was that in?

4   A.   That's where Robert Mitchell and Steve Wallace sued me and

5   The Trust Company alleging items that were previously cited in

6   state court on — we then turned over documents.  Those issues

7   were decided in state court.  The trust instruments were decided

8   in state court.

9        Eventually, you know, Judge Shaffer entered sanctions

10  finding that "Stephen Wallace and his attorney Robert Mitchell

11  had a demonstrated history of oppressive litigation behavior,

12  including the filing and dismissal of unfounded lawsuits,

13  causing the necessary expenditure of energy and resources in

14  defense of meritless claims, pursuing vexatious writ

15  applications, disqualification of trial judges whose rulings, I

16  guess, approved.

17       "In this proceeding plaintiff and Mitchell — Mitchell

18  continue to utilize one more legal form for the assertion of

19  false, outlandish accusations of random wrongdoing, even to the

20  extent of certain completely unfounded previously-decided

21  allegations that have been resolved by other courts, withdrawn,

22  or dismissed from other court proceedings, and Judge Shaffer

23  granted sanctions against both Robert Mitchell and Steve

24  Wallace."

25       MR. CRAIGE:  Your Honor, I have the original certified

*Saffa - Direct/Craige*                                              24

1 | copy, if the Court would like to see it, but I'd offer Exhibit

2 | Number 2.

3 |         THE COURT:  Exhibit 2 is offered.

4 |         Any objection, Mr. Wallace?

5 |         MR. WALLACE:  Yes, Your Honor.  That order has been

6 | appealed to the Oklahoma Supreme Court as of yesterday, and I

7 | just object.

8 |         THE COURT:  The objection is overruled.  Exhibit 2 is

9 | received.

10 |     (Movants' Exhibit 2 received in evidence.)

11 | BY MR. CRAIGE:

12 | Q.  Now, Your Honor, — I mean, I'm sorry.  Mr. Saffa, I direct

13 | your attention to Exhibit Number 3.

14 | A.  Yes, sir.

15 | Q.  Is that another sanction order that was entered against Mr.

16 | Wallace?

17 | A.  It was entered by Judge Kilpatrick in Mayes County, a

18 | permanent injunction from him filing any lawsuits to the

19 | defendants in the above case.  He took judicial knowledge and

20 | notice of other proceedings in this court, the filings of

21 | plaintiff's petition were unauthorized, false, fraudulent, and

22 | frivolous, and totally without any legal merit.  He gave a

23 | permanent injunction against Mr. Wallace from suing these

24 | defendants.

25 | Q.  Now the defendants in that case were parties other than

*Saffa - Direct/Craige*                                                  25

1  yourself; is that right?

2  A.  Yes, sir.

3  Q.  Okay.  But the Court in that case enjoined Mr. Wallace from

4  — from basically suing them again for the same thing?

5  A.  Yes, sir.

6       MR. CRAIGE:  Okay.  Your Honor, I'd offer Number 3.

7  Again I have the original certified copy if the Court would like

8  to see it, but I offer Number 3.

9       THE COURT:  I don't need to see it.  I think at the

10 conclusion of the hearing, though, I think the original

11 certified should be the official exhibit.

12      MR. CRAIGE:  That's fine.

13      THE COURT:  And that was 3.  Exhibit 3 is offered.

14 Any objection, Mr. Wallace?

15      MR. WALLACE:  No.

16      THE COURT:  Exhibit 3 is received.

17   (Movants' Exhibit 3 received in evidence.)

18 BY MR. CRAIGE:

19 Q.  Now, Mr. Saffa, on — attached to the motion for sanctions,

20 which was Exhibit Number 1, you've listed the timesheets of the

21 times that were spent by yourself and myself as far as the

22 attorney's fees that were spent to defend this case; is that

23 right?

24 A.  Yes, sir.

25 Q.  And are you asking the Court to award you that $2,365 plus

*Saffa - Direct/Craige*                                                        26

1  whatever time we bill out today?

2  A.  Yes, sir.

3  Q.  What other sanction are you asking this Court to bring you?

4  A.  I'd like some type of detriment so basically he'd quit suing

5  me.  For the last three years it's, you know, it's week after

6  week and month after month.  The process service coming by,

7  leaving pleadings with my children, letters to people, most of

8  the individuals accusing me of all types of crime.  I think

9  there's got to be some type of detriment to get him to cease and

10  desist from this type of conduct.

11  Q.  Are you also asking this Court to enter some sort of

12  punitive damage award?

13  A.  Yes, sir.

14  Q.  Now you've heard Mr. Wallace testify and you've seen his

15  pleadings that he's going to inherit several million dollars?

16  A.  Yes, sir.

17  Q.  And do you have any reason to dispute those items?

18  A.  No, sir.

19  Q.  So he would be able to pay some type of punitive damage

20  award at some point?

21  A.  He should, yes, sir.

22  Q.  Do you believe that would be something that would possibly

23  deter him from this type of cause of action in the future?

24  A.  I sure hope so.

25  Q.  Okay.  And that's what you're asking this Court to do?

*Saffa - Cross/Wallace*                                      27

1    A.   Yes, sir.

2    Q.   Would you also like this Court to enter some sort of an

3    injunction, similar to what was entered by the Court over in

4    Mayes County in our Exhibit Number 3?

5    A.   Yeah.   If — if the Court can do that, I would like it.

6             MR. CRAIGE:   Okay.   Your Honor, that's all I have.

7             Thank you.

8             THE COURT:   Thank you.

9             Cross-examination, Mr. Wallace.

10                      CROSS-EXAMINATION

11   BY MR. WALLACE:

12   Q.   Mr. Saffa, how did you become — strike that.

13            From 1987 to 1995 were you my attorney and CPA of

14   record?

15            MR. CRAIGE:   Objection; relevancy, Your Honor.

16            THE COURT:   The purpose of the question?

17            MR. WALLACE:   I'm trying to show a pattern here, Your

18   Honor, of — of Mr. Saffa, the conduct that he — under — under

19   color of family took advantage of that situation and changed all

20   the family trusts after my father's death.  And I need to show

21   if he thinks he shouldn't be sued any more for doing that, that

22   — that him being my attorney for seven years before he ever went

23   to work for my family, and then changing all the documents is

24   material to this case.

25            THE COURT:   I'll give you a little latitude, but we're

*Saffa - Cross/Wallace*                                            28

1   not going to go through and spend the day retrying or — well, at

2   this point the objection is overruled.

3            THE WITNESS:  Could you repeat the question?

4   BY MR. WALLACE:

5   Q.  Were you my attorney from 1987 to 1995?

6   A.  I was your attorney sometime, I don't even remember the

7   exact dates.

8   Q.  Did you prepare my — did you receive proceeds from a lawsuit

9   that your firm filed against Coldwell Banker?

10  A.  Our law firm received proceeds, yes, sir.

11  Q.  Um-hum.  And was it in excess — was the judgment in excess

12  of $650,000?

13  A.  We took a judgment against Coldwell Bankers.  I don't

14  remember the exact amounts, probably about 600,- — I think the

15  judgment was maybe a couple hundred thousand.

16  Q.  While you were my attorney of record, in 1993 you restated

17  the Lorice T. Wallace Trust; is that correct?

18  A.  I did restate the Lorice T. Wallace Trust, yes.

19  Q.  And in that trust, the original trust document, who were the

20  successor co-trustees of that trust?

21  A.  There was a numerous succession of trustees.  I don't

22  remember the exact names.

23  Q.  Are you telling the Court you don't remember the exact names

24  of the people in that trust?

25  A.  No, there were five or six people in that trust.

1   Q.   You're an accountant and CPA; is that correct?

2   A.   Yes.

3   Q.   Was I a successor trustee to that trust?

4   A.   I think you were down towards the bottom of the list.

5   Q.   If we were able to show the Court that I was at the top of

6   the list, would you retract that statement?

7   A.   I haven't got the document.  If you want to show the

8   document to me, let me look at it.  I'm going to the best of my

9   memory right now.  That document was done I think in 1979, and I

10  didn't do it.

11  Q.   The document, for the record, was — was done by my mother

12  and father in 1974.  Does that make — does that sound —

13  A.   It may have been done in 1974.  I don't even remember the

14  exact date.

15  Q.   So in 1993, let's say, I was at the bottom of the list.

16  Were you on the list at that time?

17  A.   In 1993?  Of the old — of the previous trust?

18  Q.   Yes.

19  A.   No.

20  Q.   Were you in the trust that you restated in 1993?

21  A.   Yes.

22  Q.   And was I deleted from that list?

23  A.   You were not in that restatement trust, no.

24  Q.   Would you call that breach of fiduciary duty?

25  A.   No.  That trust was done like your mother wanted to.  It was

*Saffa - Cross/Wallace*                                    30

1    reviewed by David Fist.  It's been reviewed by numerous people,

2    including Jim Sweeney.  Throughout the years your mother had

3    ample opportunity to make any changes she wanted in her trust

4    documents.  This issue was previously decided by a state court,

5    you know, and we keep going on with it.

6    Q.  The issues at hand right now with the $14 million estate

7    tax, do you plan on resigning from your post now that Provident

8    Trust has been named?

9    A.  If the Court determines that Provident Trust Company is the

10   successor trustee, yes.

11   Q.  Which Court are you speaking of?

12   A.  I'm talking about the state court which has jurisdiction

13   over the trust right now.

14   Q.  And which judge is that?

15   A.  Judge Frizzell.

16   Q.  Did you prepare the restatement of the 1993 trust?

17   A.  I believe I testified I did.

18   Q.  Do you realize in that statement that once the new successor

19   trustee is named, you are to resign without a court proceeding

20   at all?

21   A.  There's no more provisions in that trust.  First of all, the

22   assets aren't transferred until all the debt of the trust is

23   paid off.  I mean there's — that trust is numerous pages.

24   Q.  I didn't understand.  Until what is paid off?

25   A.  The indebtedness incurred by the trust.