*Saffa – Cross/Wallace*                                                31

1    Q.  The indebtedness.  Could you explain what that indebtedness

2    incurred by the trust is?

3    A.  I'm talking about attorney fees and any other expenses of

4    the trust.

5    Q.  Incurred in what proceedings?

6    A.  What — well, these proceedings here.  You know, where The

7    Trust Company and I keep getting sued.

8    Q.  But you're not using your funds, are you, to pay for the

9    representation?

10   A.  The — the trust — the trust is paying the expense of this

11   litigation.

12   Q.  So what indebtedness, if the trust is paying for your — all

13   your litigation expenses, does — what indebtedness does the

14   trust have?

15   A.  Well, attorney fees haven't been paid for six months now.

16   Q.  Wilma Jage (phonetic) as guardian — limited guardian of the

17   person of Lorice Wallace delivered to you a — and James Milton a

18   demand for a $25,000 disbursement as per the trust guardian

19   instrument.  Do you all plan to pay that?

20   A.  I'm not aware of what you're talking about.

21   Q.  If there is a trust document submitted to Trust Company and

22   yourself for the annual $25,000 gift per child, will you

23   disburse that payment?

24   A.  We'd seek court approval.

25   Q.  From which Court?



EXHIBIT
D-Pat2

*Saffa - Cross/Wallace*                                                    32

1    A.   Judge Frizzell.

2              THE COURT:  I'm going to stop a little of this on my

3    own —

4              MR. WALLACE:  Okay.

5              THE COURT:  — because what's at issue here are

6    allegations that were made by the — by Mr. Wallace back in

7    October of this year — of 2002.  Pardon me.  And what the

8    parties may do in the future has nothing to do with the validity

9    of those allegations.

10             MR. WALLACE:  I apologize.  I'll get to that point,

11   Your Honor.  May I proceed?

12             THE COURT:  You may proceed.

13   BY MR. WALLACE:

14   Q.   Mr. Saffa, you — you drafted the — excuse me.  Let's go back

15   in the history.  The 1974 trusts were set for 20 years.  Do you

16   recall that?

17   A.   I didn't do those trusts.

18   Q.   Do you have any idea what happened to those irrevocable

19   trusts?

20   A.   No.

21   Q.   In forming the new irrevocable trusts that you formed in —

22   was it 1996?

23   A.   I didn't do those trusts, either.

24   Q.   Oh, I see.  Who did those?

25   A.   Paul Watson.

*Saffa - Cross/Wallace*                                                    33

1   Q.  In relationship to your office, where is his office?

2   A.  Paul has got his own law firm and shares space with us.

3   Q.  What is he like — as I recall, he's two doors down from you

4   in your suite?

5   A.  He's on the same floor we are.

6   Q.  What was your purpose in forming these irrevocable trusts?

7   A.  Paul Watson formed those irrevocable trusts.  I didn't form

8   them.  He also did the family partnership.

9   Q.  And you had no — you're telling the Court today you had no

10  input in forming those trusts?

11  A.  No.  Paul Watson did those trusts.

12  Q.  What is your understanding of an irrevocable trust?

13         MR. CRAIGE:  Now I'll object to the relevancy of that,

14  Your Honor.

15         THE COURT:  Sustained.

16         MR. WALLACE:  Did you sustain it, Your Honor?  I

17  didn't hear you.

18         THE COURT:  Yes, I did, sir.  The objection is

19  sustained.

20  BY MR. WALLACE:

21  Q.  Could you tell the Court a little bit about Mr. Hodgson's

22  background and his credentials?

23         MR. CRAIGE:  And I will object to that as totally

24  irrelevant, Your Honor.

25         THE COURT:  Sustained.

1         MR. WALLACE:  Your Honor, I'm trying to get to the

2    point of the validity of these trusts.  Why were they formed if

3    they weren't valid.  And that's all I'm asking Mr. Saffa, is —

4         THE COURT:  What does the counsel who drafted them's

5    qualifications have to do with anything?

6         MR. WALLACE:  Well, if these — if these trusts are

7    penetrable and — and on their face not — are not spendthrift,

8    then the attorney that drafted them himself is in breach of

9    fiduciary —

10        THE COURT:  And what's at issue here is whether you

11   should be sanctioned for your pleadings in October of last year,

12   no more, no less.  What — how do the two connect?

13        MR. WALLACE:  Well, the two connect, Your Honor,

14   because if — if the counterclaims that were made by myself, —

15   which have since been stricken from the record; is that correct?

16        THE COURT:  They have been denied.  The case —

17        MR. WALLACE:  Been denied.

18        That if these trust instruments were prepared and paid

19   for by funds from my family's trust, with the name on them of

20   being irrevocable trusts, which gives them a separate, distinct

21   nature, how could these trusts now, that were prepared at the

22   direction of Ron Saffa with Mr. Hodgson, be penetrable and

23   nonspendthrift.  And that's what I'm trying to ask Mr. Saffa:

24   How can those happen if he had Mr. Hodgson design these.

25        Mr. Hodgson is, as I understand it, a prominent

*Saffa – Cross/Wallace*                                                35

1    attorney in estate planning.  And if he did this on his own or

2    did he do it at the direction of Ron Saffa, so that these trusts

3    now — I have been a trustee of a trust that I've had no hand in

4    preparing.  I've no hand in any of the distribution of any of

5    the assets.  I know about none of the assets in the trust —

6            THE COURT:  That's enough.  The objection is

7    sustained.  The allegations at issue here in the third-party

8    complaint are criminal conspiracy to convert property and

9    apparently to inflict some sort of drugs on — and emotional

10   stress on someone.  Those are the issues, not the legal

11   qualifications of who may have drafted the trust.

12   BY MR. WALLACE:

13   Q.  Mr. Saffa, is your brother a pharmacist?

14   A.  Yes.

15   Q.  Is he the Wallace family pharmacist for some time?

16   A.  He was your mother's pharmacist for some time.

17   Q.  And did he provide the Depakote drug to Mrs. Wallace?

18   A.  He provided the prescriptions written by doctors to your

19   mother.

20   Q.  And he's been a pharmacist — a pharmacist for how long?

21   A.  Numerous years.

22   Q.  In that capacity as your brother and as a pharmacist, do you

23   think he'd inflict intentional harm against his aunt?

24   A.  My brother loves your aunt.  He'd never do anything to harm

25   to — to your mother.

1   Q.   Do you think those drugs had an effect on her incapacity?

2   A.   I'm not a doctor.   I don't know what drugs you're talking

3   about.

4   Q.   On November 3rd, 1999 were you in Dr. Carol Hansen's office

5   when I entered the — the building?

6   A.   Yes.

7   Q.   And what were you doing there?

8   A.   Dr. Hansen asked me to come by for a family meeting.

9   Q.   Was I supposed to be invited to that meeting?

10  A.   My understanding, you were invited.   You showed up.

11  Q.   And do you recall the — the incident of — of my mother's

12  resignation during that family meeting?

13  A.   Yes.

14  Q.   And how was that brought about?

15  A.   Dr. Hansen was worried about your mother's health because

16  you were going over there shouting and screaming at her, trying

17  to get her to sign documents.   And she wanted to know how to get

18  your mother out of the loop of things.   One suggestion was she

19  resign, that maybe you'd leave her alone.

20  Q.   And upon her resignation who became the successor?

21  A.   The Trust Company and I became successor trustees.

22  Q.   You don't see any conflict of interest in your capacities to

23  date?

24  A.   No.

25              MR. WALLACE:   That's all I have, Your Honor.

*Saffa - Redirect/Craige*                                    37

1       THE COURT:  Thank you.

2       Anything further, Mr. Craige?

3       MR. CRAIGE:  Just a couple of follow-up questions,

4   Your Honor.

5                   REDIRECT EXAMINATION

6   BY MR. CRAIGE:

7   Q.  Did you direct Mr. Hodgson to prepare these trusts?

8   A.  No, sir.

9   Q.  To your knowledge, has your brother, the pharmacist, ever

10  prescribed any drugs that weren't — or administered any drugs

11  that weren't prescribed by a doctor?

12  A.  No, sir.

13  Q.  Has anyone ever produced any evidence to substantiate

14  anything to the contrary of that, to your knowledge?

15  A.  No, sir.

16      MR. CRAIGE:  That's all I have.

17      THE COURT:  Thank you.

18      Anything further, Mr. Wallace?

19      MR. WALLACE:  No, Your Honor.

20      THE COURT:  Thank you very much, Mr. Saffa.  You may

21  step down.

22      (Witness excused.)

23      THE COURT:  Any further evidence, Mr. Craige?

24      MR. CRAIGE:  No further evidence, Your Honor.  We

25  rest.

*Closing Argument on behalf of the Movants*                                38

1    THE COURT:  Evidence, Mr. Wallace?

2    MR. WALLACE:  None.

3    THE COURT:  Closing, Mr. Craige.

4    <u>CLOSING ARGUMENT ON BEHALF OF THE MOVANTS</u>

5    MR. CRAIGE:  Your Honor, I filed this Rule 11 motion

6    and took pause about doing it.  I think I've filed maybe two

7    other Rule 11 motions since I've been in practice.  It is not

8    something that I do lightly or consider, you know, flippantly at

9    all.

10    The purpose of Rule 11 is to require parties who come

11    in to court to abide by some minimum standard as far as pleading

12    things that have some factual basis in law or in fact.  It says

13    that when a person files a pleading, they have to — when they

14    sign it, they're making an assertion that the factual

15    allegations are warranted by the facts or by the law, and that

16    it's some sort of — basically that's a good claim of some sort.

17    When a party fails to abide by that rule then this

18    Court has the jurisdiction and obligation to consider sanctions

19    in that setting.  In this case we have a pleading that was filed

20    by Mr. Wallace.  The rule requires us to write a demand letter,

21    which we did.  And there was never any response to that.  Mr.

22    Wallace didn't withdraw the motion.  We filed a 12(b)(6) motion,

23    which — which this Court then granted.  The 12(b)(6) motion on

24    its face says that the case didn't even allege a cause of

25    action, so it was dismissed.

1    So we have then I think the legal basis for a Rule 11

2  sanctions motion. And were it not for the history of litigation

3  by Mr. Wallace, I don't think I would have even filed this

4  motion. But here we have a continuous pattern of conduct, as

5  demonstrated by our Exhibit 4, where Mr. Wallace sues people,

6  sued Mr. Saffa and sued Mr. Morrel.

7    They have a trial. We prevail on the merits. Files

8  the same claims again, dismisses them. Files them, dismisses

9  them. Have another trial, prevail again. He files, and it just

10  goes on and on and on and on.

11    There's been findings by this Court in your previous

12  orders where you may find that Mr. Wallace has a pattern of

13  engaging in filing frivolous pleadings. There have been

14  findings by other courts in the exhibits we introduced where

15  those types of conduct repeat themselves over and over and over

16  again.

17    We've heard Mr. Wallace stand at this very podium

18  today and tell this Court that he continues, he's going to

19  continue to sue Mr. Saffa for the very same things all over

20  again. He's stood right here and told me that. He is not done

21  suing us yet, for the same things.

22    When it comes right down to it, he never produces any

23  evidence to support, just like he hadn't today. Just like he

24  did with Mr. Malloy, or Mr. Grimm, or anything else that's been

25  brought into this court. When it comes right down to the li

*Closing Argument on behalf of the Movants*                                    40

1    clog (phonetic), he never produces anything to support these

2    outlandish allegations that he makes.

3          He's accused Mr. Saffa of fraud, of crimes, of RICO

4    violations, of every kind of panoply of horrible things you can

5    imagine including, you know, subjecting his aunt to psychotropic

6    drugs, and somehow Mr. Ron Saffa did that. And the evidence of

7    that is that his brother is a pharmacist who prescribed

8    prescription drugs. That's the evidence. That's all he's ever

9    produced. There's nothing about that that has any merit

10   whatsoever.

11         You think of everything he alleges, it just goes on

12   and on in the same way. It's — it's time to try to do something

13   to stop that, and I don't know how we stop it. Because of the

14   way the court system in America works, the filing restrictions

15   order that this Court has entered has — has slowed it down

16   substantially. It doesn't stop Mr. Wallace from going to other

17   courts and filing the same types of lawsuits.

18         We continue to file motions for sanctions in those

19   courts. But I believe this Court could enter an injunction

20   similar to the one that was entered in Exhibit Number 3 against

21   Mr. Wallace. It's the same kind of deal there where he was

22   suing the defendants in that case for the same thing over and

23   over again. It's the very same type of pattern, so we're not

24   the only ones he does this to.

25         And you look at the Court's findings in that case, and

1    he files, you know, baseless, meritless claims. And he just

2    continues to do so. And you have a judgment, and it doesn't

3    stop him. He just goes and files the same lawsuit over again.

4         So that type of an injunction I think would be

5    appropriate in this case. And I think under Rule 11 you can

6    issue an appropriate order. It says you can — it's pretty broad

7    what you can do to sanction someone. So I think you can issue

8    that kind of an order in this case. I think it's appropriate.

9    At a minimum we ought to be entitled to recover the attorney's

10   fee we spent dealing with this frivolous thing that he filed in

11   this adversary proceeding.

12        And I know it's a — it's a pretty big thing to ask for

13   in the context of a motion for sanctions. But, Your Honor, if —

14   if you don't do something to stop Mr. Wallace from doing this,

15   it's just going to go on and on and on. There's been hundreds

16   of thousands of dollars spent defending these ridiculous

17   lawsuits that he files over and over and over again. And if you

18   don't do something to stop him from doing it, it's just going to

19   keep going.

20        And so I think we've shown that sanctions are

21   appropriate in this case. He didn't file any objection to this

22   motion. He didn't put on any evidence in opposition to it. So

23   I think we're entitled to sanctions motions being granted. I

24   think we're entitled to attorney's fees. I think we ought to

25   have some kind of punitive damage award to try to deter him from

*Closing Argument by the Debtor*                                    42

1    this.  And we ought to have some kind of injunctive relief to

2    try to stop this kind of nonsense from going on.

3            Thank you.

4            THE COURT:  Thank you.

5            Mr. Wallace.

6                  CLOSING ARGUMENT BY THE DEBTOR

7            MR. WALLACE:  Your Honor, Mr. Craige is an officer of

8    the Court, and I believe he understands that this Court's

9    jurisdiction is strictly on my bankruptcy.  You're not the

10   caretaker of what I feel I need to do to protect the interests

11   of my family.  And I think Mr. Craige is reaching, asking for

12   this Court to exercise jurisdiction over activities that are

13   beyond the scope of what — this Bankruptcy Court and the estate.

14           Everything is tied up in the estate.  Like I said,

15   there's a bankruptcy within a bankruptcy.  There's — any funds

16   that I expend to seek justice and use of the courts and access

17   to the courts is between myself and Mr. Saffa.

18           I wouldn't burden you with that responsibility.  You

19   have other things to do.  And I would just conclude by saying

20   without an audit or without a BR 2004 to prove the allegations

21   that I have, I'm — I'm clueless and —

22           THE COURT:  Then what are you doing making the

23   allegations, Mr. Wallace?

24           MR. WALLACE:  Well, Your Honor, they were — they were

25   founded in a — in a forensic fraud auditor, one of the premier

*The Court's Findings of Fact and Conclusions of Law*                    43

1   fraud auditors in Oklahoma City, D. R. Payne.  And it's in the

2   record.  It's filed October 15th of 2001.  Of the — of the ten

3   items that show potentially fraudulent conduct on the — on

4   behalf of Mr. Saffa and Mr. — and The Trust Company of Oklahoma

5   officials.

6          If we didn't have that, Your Honor, I wouldn't — and

7   that's in the record, in the Western District — I wouldn't

8   proceed to pursue this endeavor.  But I — I don't know what else

9   I can do except carry on and — and I'm asking the Court to — to

10  limit its scope to what it is — has before it and deny their

11  motion for sanctions, and injunctions, or whatever else they've

12  asked for.

13         THE COURT:  Thank you.

14         The Court makes the following findings of fact and

15  conclusions of law and ruling.

16         <u>FINDS OF FACT, CONCLUSIONS OF LAW, AND RULING</u>

17         THE COURT:  The Court finds that issues of whether

18  Rule 11 sanctions should be imposed in an adversary proceeding

19  that is before this Court constitute core proceedings, as that

20  term is defined under 28 United States Code Section

21  157(b)(2)(A).

22         The Court further finds that this bankruptcy case has

23  been referred to this Court by General Order of the United

24  States District Court for the Northern District of Oklahoma, as

25  has this adversary proceeding.  And this Court has jurisdiction

*The Court's Findings of Fact and Conclusions of Law*                    44

1   and authority to enter its findings, conclusions, and judgment.

2        The Court makes the following findings of fact:

3        On or about October 9th, 2002, Stephen Paul Wallace

4   filed a pleading in this adversary proceeding entitled, "Answer

5   and Third-Party Complaint."  The third-party complaint listed

6   Ronald Saffa, Reece Morrel, and David Fist as third-party

7   defendants.

8        Paragraph 5 of that complaint, Mr. Wallace alleged,

9   and I quote that, "Ronald Saffa, Reece Morrel, and David Fist

10  co-conspired to criminally convert the debtor's share of the

11  Wallace Family assets by deceit and embezzlement."

12       Paragraph 6, Count 2, entitled "Breach of Fiduciary,"

13  states, and I quote that, "Ronald Saffa, Reece Morrel, and David

14  Fist co-conspired to criminally convert the debtor's share of

15  the Wallace Family assets while in employment of the Wallace

16  Family and debtor."

17       And, finally, Count 3, entitled, "Infliction of

18  Emotional Distress and Psychotropic Drugs," states, and I quote

19  that, "Ronald Saffa, Reece Morrel, and David Fist criminally

20  conspired to divide and conquer the members of the Wallace

21  Family against debtor and drugged debtor's mother, and inflicted

22  duress on debtor and debtor's mother-son relationship and that

23  of the debtor as a general partner in Wallace Real Estate

24  Company."

25       The third-party complaint was later dismissed upon

*The Court's Findings of Fact and Conclusions of Law*                    45

1  motion of the third-party defendants.

2       The Court finds on the basis of the record before it

3  today that there is not one item of evidence offered to support

4  these allegations.  Mr. Wallace has offered no evidence in that

5  regard.

6       The Court also finds that the allegations, to put it

7  mildly, are serious.  To allege that someone has intentionally

8  inflicted or injected some sort of a drug into another person is

9  nothing this Court takes lightly.

10      The Court further finds that on or about December 30,

11 2002 Defendants Saffa and Reece Morrel filed a motion for

12 sanctions against Mr. Wallace, that prior to the filing of that

13 motion they complied with the appropriate provisions of

14 Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 by

15 informing Mr. Wallace in writing of their intention to file the

16 motion to dismiss unless the allegations were timely withdrawn,

17 and they were not.

18      The Court adopts and incorporates by reference its

19 findings of fact entered in Case Number 02-0073, the underlying

20 Chapter 7 case of Mr. Wallace, that are found in its memorandum

21 opinion imposing filing restrictions against Mr. Wallace.

22      The Court has reviewed the Movant's Exhibit 1,

23 specifically that portion of the exhibit which deals with the

24 fees and expenses incurred in this matter with respect to the

25 motion for sanctions.  The Court expressly finds those fees and

*The Court's Findings of Fact and Conclusions of Law*                46

1  expenses are reasonable.

2         The Court further findings, based upon the evidence

3  before it, that Mr. Wallace is no stranger to litigation with

4  Mr. Saffa, having filed some 40 separate actions.

5         The Court also finds, based upon the record before it,

6  that not one single time has Mr. Wallace prevailed in any way,

7  shape, or form on the merits of any of those actions.  The Court

8  bases its finding upon the testimony of Mr. Saffa as well as the

9  contents of Exhibit 4.  Those are my basic findings of fact.

10         As I'm sure the parties can appreciate in a bench

11  ruling of this nature, it's possible if not likely that

12  additional findings of fact will inadvertently be placed in my

13  conclusions of law.  Any misplaced findings of fact are

14  incorporated into the Court's findings of fact by this

15  reference.

16         Federal Rule of Civil Procedure 11(a), as well as —

17  make sure I get this right — Bankruptcy Rule 9011 state, and I

18  quote, — this is Rule (b) — or subsection (b) — "Representing to

19  the Court a pleading, written motion, or other paper, an

20  attorney or unrepresented party is certifying that to the best

21  of the person's knowledge and information and belief formed

22  after an inquiry reasonable under the circumstances is not being

23  presented for any improper purpose."

24         I go on, "The claims, defenses, and other legal

25  contentions therein are warranted by existing law or by a

*The Court's Findings of Fact and Conclusions of Law*    47

1    nonfrivolous argument for the extension, modification, reversal

2    of existing law, or the establishment of new law.  The

3    allegations or other factual contentions have evidentiary

4    support or if specifically so identify, are likely to have

5    evidentiary support after a reasonable opportunity for further

6    investigation or discovery.  And the denials or factual

7    contentions are warranted on the evidence or as specifically so

8    identified are reasonably based on a lack of information and

9    belief."

10         It's interesting to note in subsection (3), talking

11   about allegations and other factual contentions, it says, "They

12   must have evidentiary support or they must be so identified to

13   have evidentiary support after a reasonable opportunity for

14   further investigation."

15         The third-party complaint has no such restriction.  It

16   doesn't say it's going to be based on what I might find out in

17   the future or what the party filing the pleading might find out

18   in the future.  It's supposedly based on facts available at that

19   time.

20         There is no evidence in the record to indicate that

21   those actions are properly based in fact — or those allegations

22   are properly based in fact.

23         Under Rule 11, subsection (c) the Court is authorized

24   to impose sanctions.  Included in those sanctions in subsection

25   (c)(1) is that a Court may award to the party prevailing on the

*The Court's Findings of Fact and Conclusions of Law*                           48

1  motion the reasonable expenses and attorney fees incurred in

2  presenting or opposing the motion.

3          The Court finds a violation of Federal Rule of Civil

4  Procedure 11 and Bankruptcy Rule 9011 to have taken place here.

5          The Court finds the allegations contained in the

6  third-party complaint were made without any due regard to their

7  factual basis or whether any factual basis existed.

8          The Court finds on the basis of the evidence before it

9  there is absolutely nothing in the record to indicate that any

10 sort of factual investigation was undertaken prior to the

11 allegations being made.

12         That being decided, it's left to the Court to

13 determine what form of a sanction is appropriate.  The movants

14 would ask me to issue an order basically enjoining Mr. Wallace

15 from making similar allegations against Mr. Saffa, and I presume

16 as well against Mr. Morrel, in any court virtually in the land.

17 I'm not sure that I have the power to do that.  I'm not sure it

18 would stop anything if I entered such an order.

19         It seems to me that it is left to each Court and each

20 Judge to control his or her docket as they see -- as they see

21 fit.  As I noted in the order issuing and instituting filing

22 restrictions, there is no such thing as a right to unlimited

23 access to the courts.  There are rules and those rules need to

24 be followed.

25         When I look at a sanction, the purpose of the sanction

1  is deterrence. And as the Supreme Court ruled, and I'm trying

2  to remember the case, I cited it in — I think it's *BMW against*

3  *Gore*, but it's cited in my *Divney* opinion (phonetics), sanctions

4  are to be the minimum necessary to deter conduct.

5         And I believe in the *BMW* case the Supreme Court said

6  at most a punitive damage or sanction award should not be more

7  than ten times the actual amount of damages to fall within the

8  range of reasonableness.

9         Based upon Mr. Wallace's current financial condition,

10 and I'm not going to speculate about what might happen in the

11 future, a large award is a piece of paper for people to use to

12 chase other people. I also feel that I'm free to revisit the

13 sanctions award or impose additional sanctions if the first set

14 of sanctions don't serve the deterrent effect. And at that

15 point the number can be much greater.

16        The Court awards, whether you want to call them

17 sanctions, whether you want to call them fees, I'm not really

18 that concerned, the Court awards the movants the sum of $3,000

19 in judgment against Mr. Wallace. Said judgment is not to be

20 realized from property of the bankruptcy estate.

21        The basis of the fee award — the basis of the award,

22 quite frankly, is the fees submitted by the movants in Exhibit

23 1, together with the Court's calculation of the time they have

24 spent here today, which is probably, if anything, low, since

25 they have been here continuously since eleven o'clock. So the

1  award is $3,000.

2       The Court does not impose any further restrictions of

3  filing of Mr. Wallace.  The filing restrictions imposed by this

4  Court for pleadings in this case remain in full force and

5  effect.

6       And the Court notes that, to the best of its

7  knowledge, in this court there have been no filings in violation

8  of that order or that have caused additional problems for the

9  parties.  Filings that have been made in violation of that

10  order, they have been summarily stricken by this Court.

11       And, let there be no doubt, the Court will continue to

12  summarily strike pleadings submitted by Mr. Wallace that do not

13  comply with the terms and provisions of the filing restrictions

14  entered by order of this Court unless and until an Appellate

15  Court tells me that those — that order is of no force and

16  effect.  And since to the best of my knowledge that order was

17  not appealed, I don't think that is likely to happen.

18       The judgment is for $3,000.  Mr. Craige, you are to

19  prepare — you are directed to prepare and submit the appropriate

20  order.  The order should not attempt to summarize the findings

21  and conclusions, but merely state that they were read into the

22  record in open court.

23       That concludes the matter set for hearing at eleven

24  o'clock.  This Court is in recess.  The parties are excused.

25       The court will reconvene at 2:30 with the matters set

1  at that time.

2         THE CLERK:  All rise.

3     (The hearing was adjourned at 2:15 o'clock p.m.)

4                    —o0o—

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California        )
                           )    SS.
County of San Joaquin      )

 

 

     I, George Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am not a party to nor in any way interested in the outcome of this matter.

     I am a Certified Electronic Reporter by the American Association of Electronic Reporters and Transcribers, Certificate No. 00222. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

 

                      *George Palmer*

                      George Palmer
                      Palmer Reporting Services

                      Dated March 1, 2003

State of California )
                    )    SS.
County of San Joaquin )

I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of Oklahoma, Clerk of the Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am not a party to nor in any way interested in the outcome of this matter.

I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer
Palmer Reporting Services

Dated March 2, 2003