STATE OF ILLINOIS    )
                    ) SS.
COUNTY OF DU PAGE    )

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL COURT
## DU PAGE COUNTY, WHEATON, ILLINOIS

STEPHEN PAUL WALLACE, an individual,    )

            Plaintiff,    )

VS.    )

PATRICK S. JAGE, an individual;    )
WINDY CITY PARTNERS, L.L.C., an Illinois    )
Limited liability company; *Ronald J Saffa*    )
*on individual*    Defendants.    )

2003CH001896

Status Date: 04/27/04

Assigned To: 2005

**FILED**

Dec 30, 2003 - 16:11 PM

*[signature]*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

### COMPLAINT AND PETITION FOR ACCOUNTING

COMES NOW, Stephen P. Wallace ("Stephen"), and for him claims against Patrick S.

Jage ("Patrick"), Windy City Partners, L.L.C., ("Windy City"), and Ronald J. Saffa

("Saffa") alleges and states:

### PARTIES

1. Stephen is an individual residing in Tulsa County, Oklahoma.

2. Patrick is an individual residing in Du Page County, Illinois.

3. Windy City is an Illinois limited liability company.

4. Saffa is an individual residing in Tulsa County, Oklahoma.

5. All actions and alleged fraud was conducted in Du Page County and therefore

    jurisdiction is proper in Illinois.

6. Patrick, Windy City, and Saffa have allegedly gained dominion over personal

    property that is the subject of this action through the Defendants' actions

1


EXHIBIT
E

originating in Du Page County, State of Illinois.  Venue is therefore proper and claims are in excess of $50,000.

## I.  BACKGROUND

7.  In 1974, the Lorice T. Wallace Revocable Trust and the Frank A. Wallace Trust were created by Stephen's parents, with Stephen as a beneficiary.

8.  Patrick is married to Stephen's sister, Mary Roma ("Roma") and both are seeking a divorce in Du Page County in Case No. 02-D-2794.

9.  Patrick formed Windy City which Roma claims a 50% interest.

10. Saffa is a cousin of Roma and Stephen and has acted as their tax attorney during all applicable times involved in this action for Illinois and IRS filings.

11. In 1993, Saffa restated the Lorice T. Wallace Revocable Trust, inserting himself as successor trustee.  He never advised Roma and Stephen of the Restatement of Trust naming himself as successor trustee when Patrick was named as a successor trustee.

12. Saffa drafted amendments to Lorice T. Wallace Revocable Trust and never advised Roma and Stephen of the change in these trusts in 1993 and in 1996 prepared a new irrevocable trust for Roma and Stephen with Saffa as successor trustee when there were already irrevocable trusts formalized for Roma and Stephen in 1974.

13. Pursuant to the terms of the 1974 trust agreements established by Mrs. Wallace and her late husband, Frank Wallace, the Wallace's provided that upon his death and/or her resignation that their son, Stephen Wallace and Patrick would become the co-trustees.

2

14. From time to time, Saffa acted as Mrs. Wallace's tax advisor and attorney in relation to the various family trusts and the family limited partnership.

15. It was never Mrs. Wallace's intent or desire that Saffa be inserted as trustees of any of the Wallace family trusts.

16. Saffa was only able to insert himself as trustee based upon Mrs. Wallace's reliance and trust in Saffa and Trust Company as a fiduciary, who represented to Mrs. Wallace that he was preparing estate-planning documents.

17. Mrs. Wallace never desired to change any trust to Saffa but only did so upon detrimental reliance and trust in Saffa as Mrs. Wallace's fiduciary and tax counsel.

18. Saffa was only inserted as co-trustees by the Wallace trust based upon misrepresentations and Mrs. Wallace's trust and reliance upon Saffa as a fiduciary and tax counsel under the guise of estate planning after Frank's death in 1990.

19. It was never Mrs. Wallace's intent or desire to change any of the trusts but only did so because of her reliance and trust in Saffa and Trust Company.

20. On November 3, 1999, Mrs. Wallace, under the influence and duress of Saffa, Dr. Carol Hanson and Patricia Hastings, resigned as trustee of the Lorice T. Wallace Revocable Trust. Saffa became co-trustee upon Wallace's forced resignation along with the Trust Company of Oklahoma.

21. On information and belief, immediately after Saffa and Trust Company became successors trustees, Saffa and Trust Company advised Patricia Hastings, Wallace's youngest daughter, to initiate proceedings in the District Court in and

3

Case 1:06-cv-01284-RBW    Document 18-14    Filed 11/27/2006    Page 5 of 24

for Tulsa County to have Mrs. Wallace declared incapacitated, as Saffa's brother, a pharmacist, inflicted psychotropic drugs into Mrs. Wallace to induce her incapacity at the direction of the Defendants.

22. Saffa, Trust Company, Patricia Hastings and their attorneys worked in collusion to have Mrs. Wallace declared incapacitated on May 9, 2000.

23. The sole reason for the actions of Trust Company, Saffa, their attorneys and Patricia Hastings was that under the terms of Mrs. Wallace's trust, if she is declared incompetent, she may not amend her trust agreements and appoint a trustee other than Saffa or Trust Company.

24. Saffa and Trust Company made material misrepresentations to Stephen, Roma and Mrs. Wallace as to the purpose of the guardianship proceedings that Trust Company and Ron Saffa directed Patricia Hastings to file against their client and her mother.

25. Trust Company and Saffa also directed the preparation of a limited attorney-in-fact agreement that was executed in 1998 prior to Mrs. Wallace undergoing back surgery. The attorney-in-fact agreement was not to last any longer than Mrs. Wallace's back surgery procedure.

26. After Mrs. Wallace executed the attorney-in-fact agreement, either Saffa or Trust Company backdated the attorney-in-fact agreement to 1993.

27. After Saffa and Trust Company forced Mrs. Wallace's resignation as co-trustee of the Wallace trust, upon information and belief, Saffa and Trust Company directed Patricia Hastings to convert all of Mrs. Wallace's bank accounts and personal assets by use of the "phony attorney-in-fact".

4

28. After Saffa and Trust Company initiated the guardianship against Mrs. Wallace, Mrs. Wallace, through her attorneys, wrote Saffa and Trust Company and instructed them not to spend her money or trust money to pay for the attorneys who were appearing allegedly for Patricia Hastings and seeking rulings and judgments adverse to Mrs. Wallace, Roma and Stephen's interest.

29. On March 13, 2000, The Honorable Robert Perugino announced from the bench that Mrs. Wallace had the right to make her own decisions and was not adjudicated incompetent.

30. On the evening of March 13, 2000, Wallace exercised the power reserved in her as the grantor of the trust and executed an amendment altering the Lorice T. Wallace Revocable Trust. The amendments removed Saffa and Trust Company as trustees and replaced them with her son, Stephen P. Wallace, her daughter Mary Roma Wallace Jage and Bank One, and Illinois based bank holding company.

31. On March 15, 2000, Saffa responded that Saffa and The Trust Company of Oklahoma would spend Mrs. Wallace's money in any way they felt, despite the wishes and desires of Mrs. Wallace and Roma.

32. Saffa and Trust Company refused to turnover Mrs. Wallace's assets and on April 5, 2000, Mrs. Wallace sued Saffa and Trust Company for fraud, embezzlement, conversion of her assets, in Tulsa County, Case No. CJ-2000-1684.

33. On May 9, 2000, Roma became the Limited Guardian of the Person of Mrs. Wallace and exercised all her powers and communication from her home in Du Page County, Illinois.

5

E
X
H
I
B
I
T
~
2
~
2
0
0
6

34. Saffa, Patrick and Trust Company communicated with Stephen and Roma via the U.S. Mail, interstate wire and banking contacts, telephone and interstate fax regarding Roma's and Stephen's vested interest in the Wallace Family Trusts and Limited Partnership that were prepared monthly and mailed to Du Page County and have done so continuously during Roma's current divorce proceeding.

35. Patrick was Stephen's stockbroker and a financial advisor.

36. Meanwhile Patrick had formed Windy City as an off-share hedge fund for investment banking purposes which Roma claims a 50% interest in as marital property. (See Affidavit as Exhibit A)

## FIRST CLAIM

37. Stephen's first claim is against Defendants for conversion of Stephen's assets that Patrick has allegedly laundered for Saffa, et al..

38. Stephen realleges all material allegations contained hereinbefore.

39. Mrs. Wallace amended her trust agreement replacing Defendants with Bank One, Stephen Wallace, and Mary Roma Wallace Jage as trustees,

40. In 2002, Roma, as Mrs. Wallace's guardian, gave notice to Defendants to relinquish the trust assets to Provident Trust Company of Omaha, Nebraska, into Provident's client trust account at the Northern Trust of Illinois.

41. Defendants, Saffa and Patrick have refused to turn over Stephen's trust assets to Provident Trust and refused to honor the amended trust agreement terminating Saffa and Trust Company.

42. Defendants, Saffa and Trust Company, in an alleged interstate collusion with Patrick and Windy City, have further spent trust assets against Stephen's express

direction and upon information and belief have continued to spend trust assets since their position of trustees was terminated by retaining (9) law firms to suppress Stephen and Roma's efforts to terminate them, accruing approximately $2 million in fees in their collusion effort.

43. Defendants have exercised unauthorized interstate dominion over Stephen's trust assets, thus converting Stephen's trust assets for Defendants' own use and benefit, using off-balance sheet ENRON style limited partnerships, and off-shore banking accounts.

44. Wherefore, Stephen is entitled to recover actual and punitive damages resulting from the Defendants' conversion of her assets as follows:

   a. actual damages in an amount equal to the value of the funds and property converted;

   b. punitive damages;

   c. attorney fees; interest and costs as provided by law and;

   d. such other relief, either at law or in equity, as the court deems just.

## SECOND CLAIM

45. Stephen's second claim is against the Defendants for imposition of a constructive trust.

46. Stephen realleges all material allegations contained hereinbefore.

47. Defendants have, upon information and belief, taken Stephen's trust assets to which Defendants were not entitled for Defendants' own use and benefit via interstate wire and bank fraud including criminal I.R.S. tax evasion.

7

48. Wherefore, Stephen prays that the Court impose a constructive trust and order a forensic audit on all accounts maintained by Defendants for the keeping or disposition of Stephen's trust assets, and any property held in the name of the Defendants, to the extent any consideration for such property originated from Stephen's trust assets by the Dana Cole & Co. (Exhibit B).

### THIRD CLAIM

49. Stephen's third claim is against the Defendants for injunctive relief.

50. Stephen realleges all material allegations contained hereinbefore.

51. Stephen is entitled to a provisional injunction immediately upon commencement of this action, to a temporary injunction against the Defendants, restraining the Defendants from removing, disposing of, or interfering with any of the assets subject to the constructive trust, including but not limited to Stephen's trust assets, and all accounts, personal property, and real property of the Defendants to which the trust assets contributed in any manner whatsoever.

52. The misappropriated assets belonging to Stephen are controlled by the Defendants; and, absent an injunction freezing those assets, conducting a forensic audit and restraining the Defendants from removing, disposing of, or interfering with those assets. Stephen's assets would suffer immediate and irreparable harm, especially the real property which is unique and irreplaceable.

53. Stephen has filed the required notarized verification, and the Court may determine an adequate surety bond, to be filed with the court clerk, securing any damages the Defendants may sustain, including reasonable attorney fees, if it were finally decided that the injunction ought not to have been granted.   Because the

8

Case: 4:06-cv-03214-LSC-PRSE    Document #: 40    Date Filed: 11/15/2006    Page 19 of 25
Case 1:06-cv-01264-RBW    Document #8-14    Filed 11/27/2006    Page 9 of 24

9

Defendants merely allege right to the trust assets as trustees, not beneficial owners, Stephen submits that any damages from an injunction to the Defendants would be nominal as he is now a vested beneficiary with his mother's death on May 31, 2003.

54. Wherefore, Stephen requests that this Court enter a provisional injunction immediately upon commencement of this action and a temporary injunction against the Defendants restraining the Defendants from removing, disposing of, or interfering with any of Stephen's assets and such other equitable relief to which Stephen shows he is entitled, including but not limited to Windy City in Defendants elaborate collusion scheme.

## FOURTH CLAIM

55. Stephen's fourth claim is against Defendants for breach of fiduciary in their alleged asset laundering scheme.

56. Stephen realleges all material allegations contained hereinabove.

57. Defendants, as interim trustees of Stephen's assets, owed a fiduciary duty to the trust and its beneficiaries as well as to Roma and her.

58. Defendants breached their fiduciary duty by:

    a.  Using Stephen's assets for self-gain and self-interest purposes;

    b.  Using Stephen's assets to fund litigation against Stephen attempting to have Stephen forfeit his assets for challenging the egregious behavior of Defendants, which is willful, wanton with criminal consequences should the forensic audit confirm the allegation made in this Complaint.

    c. Using Stephen's assets contrary to the express wishes of Stephen as communicated to Defendants, and contrary to Stephen's irrevocable 1974 trust and assets which have disappeared and allegedly laundered by Defendants.

    d. Refusing to surrender Stephen's assets to the rightful trustee, Provident Trust Company at their client trust account at Northern Trust of Illinois.

59. Wherefore, Stephen is entitled to recover actual and punitive damages against Defendants for their breach of fiduciary duty.

## FIFTH CLAIM

60. Stephen's fifth claim is against Defendants for intentional infliction of emotional distress.

61. Stephen realleges all material allegations contained hereinabove.

62. All Defendants have knowingly caused severe emotional distress to Stephen and family members by using his own trust assets to fund litigation against him and have fraudulently attempted to use the divorce court to convert Roma's and her children's assets, **under color of law**, via interstate contact as Saffa has made multiple trips to Du Page County to conspire with Patrick and Windy City.

63. Defendants' conduct was outrageous and severe.

64. Defendants' conduct has been malicious, wanton, willful, intentional and with reckless disregard for Stephen's life, liberty and her pursuit of happiness.

65. Defendants' conduct has been life threatening to Stephen who has continued to have chest pains and emotional nightmares.

Case: 4:06-cv-03214-LSC-PRSE    Document #: 40    Date Filed: 11/15/2006    Page 12 of 25
Case 1:06-cv-01284-RBW    Document 78-14    Filed 11/27/2006    Page 9 of 24

11

66. Wherefore, Stephen is entitled to actual and punitive damages for Defendants' intentional infliction of emotional distress.

### SIXTH CLAIM

67. Stephen's sixth claim is against Defendants for fraud and Constructive Fraud.

68. Stephen realleges all material allegations contained hereinbefore.

69. Defendants acting in concert obtained a power of attorney from Mrs. Wallace through misrepresentations and then backdated the power of attorney.

70. In 1998 Mrs. Wallace was scheduled for back surgery. On information and belief, Saffa drafted a power of attorney in Patricia Hastings, Mrs. Wallace's youngest daughter, and misrepresented its effect to Mrs. Wallace unbeknownst to Stephen. Mrs. Wallace desired, and was misled to believe, that the power of attorney would be in effect only during her brief back surgery and post-operative recovery.

71. Saffa and Patrick intentionally misled Mrs. Wallace and Stephen.

72. Mrs. Wallace relied on Saffa and Patrick's misrepresentation and would not have executed the power of attorney had she been informed of its durable nature which Mrs. Wallace did terminate in writing.

73. On information and belief, Saffa and Trust Company instructed Patricia Hastings to remove funds from Mrs. Wallace's personal bank accounts and converted it to Saffa, Patrick and Hastings's use, thereby damaging and depleting assets owned by Stephen.

74. Wherefore, Stephen is entitled to actual and punitive damages as a result of Defendants' fraud and misrepresentation via interstate contact and document delivery.

11

**JURY TRIAL DEMANDED**

Dated this ___30___ day of December, 2003.

Respectfully submitted,

Stephen P. Wallace
6528 E. 101st, D-1 #304
Tulsa, OK 74133
(918) 694-1870

Verification

I swear or affirm that the preceding allegations are true and correct to the best of my

knowledge.

Stephen P. Wallace

STATE OF ILLINOIS        )
                         ) SS.
COUNTY OF DU PAGE        )

SUBSCRIBED and SWORN to
Before me this 30th day of
Dec        2003.

Notary Public

"OFFICIAL SEAL"
Judy Kaye Chamberlin
Notary Public, State of Illinois
My Commission Expires Oct. 22, 2007

STATE OF ILLINOIS )
) SS.
COUNTY OF DU PAGE )

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT DU PAGE COUNTY, WHEATON, ILLINOIS

IN RE THE MARRIAGE OF )
)
MARY ROMA JAGE, )
)
    Plaintiff, )
)
    vs, )  No. 02 D 2794
)
PATRICK S. JAGE, )
)
    Defendant. )

### AFFIDAVIT

Comes now Stephen P. Wallace, brother of Mary Roma (Wallace) Jage, and swears or affirms that I have actual knowledge of the following event to the best of my recollection and knowledge of the following events:

1. Affiant attended Loyola University, Chicago during the same period as Patrick S. Jage and became fraternity brothers in 1970;

2. Patrick visited Affiant in 1980 for Thanksgiving in Roma's and Affiant's hometown, Tulsa, Oklahoma, and Patrick commenced courtship of Roma thereafter;

3. In 1983 Patrick and Roma married and thereafter lived in Highland Park, Illinois; Littleton, Colorado and finally in Oak Brook, Illinois wherein Patrick held various executive positions with multiple securities firms;

4. Patrick formed Windy City Partners L.L.C. while employed at Peregrine Financial in the Chicago Loop, due to Peregrine Financial contacts with off-shore investors

1



for hedge-fund opportunities and Windy City Partners L.L.C., the newly formed hedge-fund whose stock was closely held by Patrick and Roma Jage;

5. Affiant would confer often with Patrick about the significant deposits Patrick represented to Affiant, totaling $5 million dollars lump-sum opening deposit and multiple other deposits totaling approximately $8 million before Patrick refused to engage in conversation thereafter and commenced business relations and joint social events in Oak Brook with Ronald J. Saffa;

6. Affiant has sold over $20 million of Affiant's Family real estate between 1990 and 1998 which deposits have allegedly been criminally converted by Ronald J. Saffa, et al., including Patrick entrapping the Wallace Family Estate with off-shore/off-balance sheet financing of ENRON style fraud, embezzlement and IRS/State Income Tax evasion;

Affiant is willing to testify to alleged schemes between Windy City Partners, L.L.C., (Patrick) and Ronald J. Saffa, interim trustee of Roma's and Affiants Family Estate, and in **ADVERSE POSSESSION** of Roma's and Affiant's Family Estate.

I swear or affirm that the above Affidavit is the Truth, the Whole Truth and nothing but the Truth, so help me God.

STATE OF ILLINOIS )
                   ) SS.
COUNTY OF DU PAGE  )

Stephen Paul Wallace

SUBSCRIBED and SWORN to
Before me this 30th day of
Dec. 2003.

Notary Public

"OFFICIAL SEAL"
Judy Kaye Chamberlin
Notary Public, State of Illinois
My Commission Expires Oct. 22, 2007

2

# DANA F. COLE & COMPANY, LLP
### CERTIFIED PUBLIC ACCOUNTANTS
1248 O STREET, SUITE 500
LINCOLN, NEBRASKA 68508

December 8, 2003

Mr. Stephen P. Wallace
6528 East 101st, D-1, #304
Tulsa, OK 74133

Dear Stephen:

This letter will serve to confirm our understanding and agreement whereby you have retained our firm of certified public accountants to perform a forensic audit for certain trusts and a partnership established by Lorice T. Wallace or her deceased husband, Frank A. Wallace. This will outline the services you have asked our firm to perform and the terms under which we propose to do that work. We ask that you read this letter carefully because it is important to both you and our firm that we all understand what can reasonably be expected from our work. We want you to know the limitations of the services you have asked us to perform. If we have misunderstood your needs and requirements, just let us know.

This letter constitutes an agreement between Stephen P. Wallace and Dana F. Cole & Company, LLP, to perform a forensic audit for the entities listed below for the period December 31, 1989, or the inception of the entity, to December 31, 2003, and subsequent periods, if applicable. Our work may be very limited or unnecessary with regard to some of the entities listed. However, this determination will have to be made as the work progresses.

1. Frank A. Wallace Family Trust established at the death of Frank A. Wallace
2. Lorice T. Wallace Trust of 1974, as amended and Restated October 5, 1993, and amended on February 12, 1998
3. Lorice T. Wallace Irrevocable Trust of 1996 which serves as the general partner of the Lorice T. Wallace Family Limited Partnership
4. Lorice T. Wallace Irrevocable Trust of 1992, also known as the "Insurance Trust"
5. Lorice T. Wallace Family Limited Partnership
6. Stephen Paul Wallace Irrevocable Trust – 1974
7. Mary Roma Wallace Irrevocable Trust – 1974
8. Patricia Wallace Patton Irrevocable Trust – 1974
9. Lisa Frances Wallace Irrevocable Trust – 1974

Nebraska

Kansas

Missouri

Wyoming

www.danacole.com

Principal Office:
1248 O Street, Suite 500
Lincoln, NE 68508
402/479-9300
Fax 402/479-9315

EXHIBIT

_B_

Case: 4:06-cv-03214-LSC-PRSE    Document #: 40    Date Filed: 11/15/2006    Page 17 of 25
Case 1:06-cv-01284-RBW    Document 18-14    Filed 11/27/2006    Page 16 of 24

16

Mr. Stephen P. Wallace
December 8, 2003
Page two

10. Stephen Paul Wallace Irrevocable Trust - 1996
11. Mary Roma Wallace Jage Irrevocable Trust - 1996
12. Patricia Wallace Hastings Irrevocable Trust - 1996
13. Michael Patrick Jage Irrevocable Trust
14. Samuel George Jage Irrevocable Trust
15. William Paul Hastings Irrevocable Trust
16. Nicholas A. Hastings Irrevocable Trust
17. April W. Hastings Irrevocable Trust
18. Erica Marie Hastings Irrevocable Trust
19. Lorice P. Hastings Irrevocable Trust

Our firm's services will include the investigation, restoration and/or analysis of accounting information and records of the entities specified in the forgoing paragraph. We will study and examine the trust documents and partnership agreement submitted to us. Our services will include examination of all available financial and business records obtained from the trustee of the trusts and managing partner of the partnership, statements and correspondence from financial institutions holding trust assets, tax records, real estate records, closing statements for real estate transactions, and statements of business records from third parties receiving any benefit or thing of value from dealing in or with trust and/or partnership property. We will be performing a specific engagement that will not be in accordance with generally accepted accounting principles, but will be forensic in nature and will result in our opinion overall as part of our report. We may upon your specific request conduct an examination in accordance with generally accepted auditing standards of any complete financial statements submitted for any of the entities included as part of our work. This decision will be based solely on our determination that the statements are intended as conforming to generally accepted accounting principles and not primarily conforming simply to the trust document. We will apprise you promptly if any such financial statements are furnished to us.

Our work in this engagement will begin within a reasonable time from the date our engagement is approved and funded. It should be noted that a substantial body of material must be gathered and furnished before work can proceed at an economical pace. We do not normally include document or material requests until our engagement has been approved. However, at your request, we include the attached listing, identified as Exhibit "A", as an initial request for documents and material. We will have many additional requests for material as the work progresses. Also, prior to beginning our work, we request a complete statement from any family member or trustee setting forth in detail any suspected fraud, acts of fraud, misappropriations, improprieties, defalcation or loss due to improper, negligent or willful acts known or suspected.

Your purpose in having us perform this forensic audit is to determine whether or not there has been any mismanagement or misappropriation of assets or other improprieties that would constitute a breach of fiduciary duties and/or applicable statutory or common law. You understand that this examination covers more than a decade in time and involves a number of trustees, attorneys and others.

You understand that we will not perform an audit of either the financial statements of the trusts and partnership named above or any other personal financial statements. Consequently we will not express an

Mr. Stephen P. Wallace
December 8, 2003
Page three

opinion or other form of assurance on those or any financial statements. As mentioned above with reference to our comments regarding generally accepted accounting principles, it must be noted that we are engaged for a forensic audit. As noted if we find complete financial statements prepared in accordance with generally accepted accounting principles, we will advise you and will be prepared to provide you with a financial audit of the entity upon your specific request. We will provide one or more exit conferences identifying any issues and resolving minor irregularities, if any, and we will provide a report listing the method of conducting the audit and findings or recommendations for corrective action, if necessary.

You have asked us to perform a forensic audit for the entities named above. Any written reports or documents which we may prepare are to be used only for the purpose of this engagement and may not be published or used for any other purpose without our prior written consent. We cannot and do not predict results or final developments in this matter.

In the course of our forensic audit, we may request information, consultation or documents from your attorney, any family attorney or any attorney or trustee who has served the family or any family entity or other entity. Any attorneys or individuals who provide information or documents or other material or counsel may bill you for payment.

We understand that your attorney may also wish to engage us to assist him by providing testimony concerning our work in this matter. We understand that any work performed pursuant to such engagement, as well as information disclosed to us pursuant to the preceding paragraph, will be subject to the rules of discovery.

In order to perform our duties and responsibilities pursuant to the matters for which you are retaining us, you will need to provide or arrange to have provided to us for examination the books, records, tax returns, papers, and documents for the entities identified previously in this letter and the supplemental document request attached. We will make further requests for specific documents as the work progresses. This engagement may also include other steps deemed necessary as determined during the course of this assignment. In addition, we shall participate, as necessary, in conferences with your attorney as well as conduct or participate in interviews of other persons as deemed necessary. You understand that we have no authority, right or ability to obtain or secure documents or information from those in possession of such material. We will need to rely on your ability to produce material or information requested.

Our fees for this work will be at our regular hourly rates for the individuals involved, plus direct out-of-pocket expenses. Our fees are not contingent upon the outcome of this case. Payment for services is due when statements are rendered. Monthly billings will be submitted as work progresses and expenses are incurred. It is our understanding that you agree that the cost of this audit shall be paid by you as a vested beneficiary of the Frank A. Wallace Family Trust established at the death of Frank A. Wallace and the Lorice T. Wallace Trust of 1974, as amended and restated October 5, 1993, and amended on February 12, 1998, and as a limited partner of the Lorice T. Wallace Family Limited Partnership.

Billings become delinquent if not paid within 60 days of the invoice date. If billings are not paid within 60 days of the invoice date, at our election, we will stop all work until the account is brought current, or

Case: 4:06-cv-03214-LSC-PRSE    Document #: 40    Date Filed: 12/15/2006    Page 19 of 25
Case 1:06-cv-01264-RBW    Document #: 40    Date Filed: 12/15/2006    Page 19 of 24

18

Mr. Stephen P. Wallace
December 8, 2003
Page four

we will withdraw from this engagement. You acknowledge and agree that we are not required to continue
work in the event of your failure to pay on a timely basis for services rendered as required by this engage-
ment letter. You further acknowledge and agree that in the event we stop work or withdraw from this
engagement as a result of your failure to pay on a timely basis for services rendered as required by this
engagement letter, we shall not be liable to you for any damages that occur as a result of our ceasing to
render services. In the event any statement or invoice rendered by us to you is not paid within 60 days of
the date of the invoice, then a late charge shall be accrued on the unpaid amount at the rate of 1% per
month from that date until paid.

We require a retainer of $25,000 prior to starting work. This retainer will be applied to the final billing as
presented. Any retainer in excess of the final billing will be refunded. This retainer is not intended to be
an estimate of the total cost of the engagement. The retainer will be deposited into our general account
and may be commingled with our other funds. No interest shall accrue or be paid on the funds held as a
retainer. You have requested that we furnish you with a maximum fee for the entire engagement. You
must understand the complexity of this engagement does not allow us to provide an intelligent estimate of
the total fees. We can, however, advise that if our fees for services reach the amount of $150,000, we will
advise you regarding the continuing work to be done and provide an estimated cost for the remaining
services.

As part of our agreement to provide accounting services in this matter, we will notify you if any of the
following events occur:

- The exhibition or surrender of any documents or records prepared by or submitted to us in a manner
  not expressly authorized by you;
- A request by anyone to examine, inspect, or copy such documents or records;
- Any attempt to serve or the actual service of any court order, subpoena, or summons upon us that
  requires the production of any such documents or records.

It is our policy to keep work papers related to this engagement for ten years. Upon the expiration of the
ten year period and after reasonable notice to you that the work papers will be destroyed, you agree that
we shall be free to destroy our work papers. Notice shall be deemed to be reasonable if given by U.S.
mail postage prepaid to your last known address whether actually received or not. It is your responsibility
to keep us informed of your current address at all times.

When records are returned, it is the responsibility of the entity to retain and protect the records for pos-
sible future use, including potential examination by any government or regulatory agencies with regard to
any disputes which might arise.

If any dispute arises among the parties hereto, the parties agree first to try in good faith to settle the
dispute by mediation administered by the American Arbitration Association (or other association) under
its Rules for Professional Accounting and Related Services Disputes, before resorting to litigation. Costs
of any mediation proceeding shall be shared equally by all parties.

Case 1:06-cv-01264-RBW    Document #8-10    Filed 11/27/2006    Page 20 of 24

18. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Mary Roma Wallace Irrevocable Trust, 1974, since inception.

19. Original Trust Agreement for the Patricia Wallace Patton Irrevocable Trust, 1974, including any subsequent amendments, restatements, or other modifications to same.

20. Complete tax returns for the Patricia Wallace Patton Irrevocable Trust, 1974, since inception.

21. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Patricia Wallace Patton Irrevocable Trust, 1974, since inception.

22. Original Trust Agreement for the Lisa Frances Wallace Irrevocable Trust, 1974, including any subsequent amendments, restatements, or other modifications to same.

23. Complete tax returns for the Lisa Frances Wallace Irrevocable Trust, 1974, since inception.

24. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Lisa Frances Wallace Irrevocable Trust, 1974, since inception.

25. Original Trust Agreement for the Stephen Paul Wallace Irrevocable Trust, 1996, including any subsequent amendments, restatements, or other modifications to same.

26. Complete tax returns for the Stephen Paul Wallace Irrevocable Trust, 1996, since inception.

27. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Stephen Paul Wallace Irrevocable Trust, 1996, since inception.

28. Original Trust Agreement for the Mary Roma Wallace Jage Irrevocable Trust, 1996, including any subsequent amendments, restatements, or other modifications to same.

29. Complete tax returns for the Mary Roma Wallace Jage Irrevocable Trust, 1996, since inception.

30. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Mary Roma Wallace Jage Irrevocable Trust, 1996, since inception.

31. Original Trust Agreement for the Patricia Wallace Hastings Irrevocable Trust, 1996, including any subsequent amendments, restatements, or other modifications to same.

32. Complete tax returns for the Patricia Wallace Hastings Irrevocable Trust, 1996, since inception.

33. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Patricia Wallace Hastings Irrevocable Trust, 1996, since inception.

34. Original Trust Agreement for the Michael Patrick Jage Irrevocable Trust, including any subsequent amendments, restatements, or other modifications to same.

35. Complete tax returns for the Michael Patrick Jage Irrevocable Trust since inception.

36. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Michael Patrick Jage Irrevocable Trust since inception.

37. Original Trust Agreement for the Samuel George Jage Irrevocable Trust including any subsequent amendments, restatements, or other modifications to same.

38. Complete tax returns for the Samuel George Jage Irrevocable Trust since inception.

39. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Samuel George Jage Irrevocable Trust since inception.

40. Original Trust Agreement for the William Paul Hastings Irrevocable Trust, including any subsequent amendments, restatements, or other modifications to same.

41. Complete tax returns for the William Paul Hastings Irrevocable Trust since inception.

42. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the William Paul Hastings Irrevocable Trust since inception.

43. Original Trust Agreement for the Nicholas A. Hastings Irrevocable Trust, including any subsequent amendments, restatements, or other modifications to same.

44. Complete tax returns for the Nicholas A. Hastings Irrevocable Trust since inception.

45. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Nicholas A. Hastings Irrevocable Trust since inception.

46. Original Trust Agreement for the April W. Hastings Irrevocable Trust, including any subsequent amendments, restatements, or other modifications to same.

47. Complete tax returns for the April W. Hastings Irrevocable Trust since inception.

48. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the April W. Hastings Irrevocable Trust since inception.

49. Original Trust Agreement for the Erica Marie Hastings Irrevocable Trust, including any subsequent amendments, restatements, or other modifications to same.

50. Complete tax returns for the Erica Marie Hastings Irrevocable Trust since inception.

51. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Erica Marie Hastings Irrevocable Trust since inception.

52. Original Trust Agreement for the Lorice P. Hastings Irrevocable Trust, including any subsequent amendments, restatements, or other modifications to same.

53. Complete tax returns for the Lorice P. Hastings Irrevocable Trust since inception.

54. Complete copies, with enclosures, of all bank, brokerage and trust account statements for the Lorice P. Hastings Irrevocable Trust since inception.

55. Copies of any Power of Attorney given by any Wallace family member for any purpose to any person.

56. Copies of any resignations, replacements, substitutions, elections or other documentation relating to the change of trustees or co-trustees of any of the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership.

57. Copies of contracts, agreements or other documentation to support all asset sales from any of the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership to any party.

58. Documentation supporting the transfer of assets from any of the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership to any party.

59. Documentation to support any distributions made by any of the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership to any beneficiary, partner or any third party.

60. Complete copy of the Last Will and Testament of Frank A. Wallace prior to his death in 1990.

61. Copy of the Last Will and Testament of Lorice T. Wallace, 1974, original and all amendments

62. Any and all documentation regarding the assets of the Wallace Family Limited Partnership, including:
   a) Irrevocable standby letter of credit booked at cost and market basis of $1.00
   b) Note Receivable of $320,000 due Farris Saffa
   c) Note Payable of $320,000 due to Bank of Oklahoma
   d) Two Notes Receivable of $1.0 Million each
   e) Real Estate recorded at cost & market basis of $1.00
   f) Identity of account owner of account #3419-01-04 at the Trust Co. of Oklahoma and documentation to support all transfers to that account
   g) Copies of all statements for account #3419-01-04 at Trust Co. of Oklahoma since inception
   h) Identity of account owner of account #032032120445 and copies of all statements for such account since inception

63. Copies of any and all outside appraisals, valuations or other analyses prepared regarding the assets of any of the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership.

64. Copies of any financial statements prepared, compiled, reviewed or audited by any Certified Public Accountant, Public Accountant, internal auditor, or in-house accountant for the Wallace Revocable or Irrevocable Trust, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership.

65. Copies of any correspondence, agreements or other documentation discussing the formation of the Wallace Family Limited Partnership.

66. Copies of any correspondence, agreements or other documentation from Lorice T. Wallace granting authority to any person to form the Wallace Family Limited Partnership.

Case: 4:06-cv-03214-LSC-PRSE    Document #: 40    Date Filed: 11/15/2006    Page 23 of 25
Case 1:06-cv-01264-RBW    Document 16-14    Filed 11/27/2006    Page 22 of 24

23

67. Documentation to support the allocation of partnership ownership in the Wallace Family Limited Partnership at inception.

68. Documentation to support the changes made in partnership ownership during tax year 1998.

69. Any overpayment or refunds from the IRS or State Taxing Authorities for overpayment of taxes for any of the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership.

70. Personal federal and state income tax returns for Lorice T. Wallace from 1990 through 2002.

71. All Trust Company of Oklahoma (as trustee or property manager) documents relating to the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership and any partner of the Wallace Family Limited Partnership, including, but not limited to, memorandums, letters, emails, phone records or any other electronic or written material.

72. All Saffa (as trustee or property manager) documents relating to the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership, any partner of the Wallace Family Limited Partnership or any Wallace family member, including but not limited to, correspondence, memorandums, emails, diaries, phone records, or any other electronic or written documentation.

73. A summary of all income, receipts or transactions related to the Wallace Revocable or Irrevocable Trusts, the Wallace Family Limited Partnership or any member of the Wallace Family Limited Partnership.

74. Copies of all statements, including enclosures, since January 1990, or inception, for the following bank accounts:
    a) Bank of America, account #32031036688
    b) BancFirst, account #552252777
    c) BancFirst, account #572000727
    d) Bank of America, account #2861709797
    e) Bank of America account #2861709690
    f) Bank of America, account #2865057432.
    g) Bank of America, account #33032050064
    h) BancFirst, account #572006161
    i) Bank One, account #7000242400

75. Any Letter Agreements, wills, or other documents purporting to dispose of the assets of Lorice T. Wallace from February 1974 to present. Specifically, there is a mention of a letter and a will in the Amendment No. One to the Restatement of the Lorice T. Wallace Revocable Trust, the Amendment is dated February 12, 1998.

76. All trust documents, accounts and records of any and all kinds whether above mentioned or not.

77. All documents that mention Stephen P. Wallace. Specifically, but not limited to any document that refers to a trust which names him as beneficiary, contingent or otherwise.

78. All documents which purport to summarize the status of the trust or estate of Lorice T. Wallace or any entity she had any interest in.

Case 1:06-cv-01264-RBW    Document 18-14    Filed 10/27/2006    Page 23 of 24

24

FILED 11/2/2004

79. Any and all "joint defense" agreements by and between any party related to the Trusts above mentioned or any of the family entities above mentioned.

80. All original or amended trust documents must include Schedule A or a proper identification of any and all assets contributed to or placed in the trust initially or at a later date.

81. All working papers of D. R. Payne & Associates, P.C. relating to any of the above.

Case: 4:06-cv-03214-LSC-PRSE    Document # 40    Date Filed: 11/15/2006    Page 25 of 25
Case 1:06-cv-01204-RBW    Document 18-14    Filed 10/27/2006    Page 29 of 52

25

Mr. Stephen P. Wallace
December 8, 2003
Page five

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the
significant terms of our engagement. If you have any questions, please let us know. If you agree with the
terms of our engagement as described in this letter, please sign the enclosed copy and return it to us along
with your check for $25,000. This letter will continue in effect until canceled by either party. The
enclosed copy is for your records.

Yours truly,

*[signature]*

DANA F. COLE & COMPANY, LLP

This letter correctly sets forth the understanding of Stephen P. Wallace.

By: *[signature]*

Stephen P. Wallace, vested beneficiary of the
Frank A. Wallace Trust established at the death
of Frank A. Wallace and the Lorice T. Wallace
Trust of 1974, as amended and Restated October 5,
1993, and amended on February 12, 1998. Limited
partner of the Lorice T. Wallace Family Limited
Partnership

*[signature]*

"OFFICIAL SEAL"
Judy Kaye Chamberlin
Notary Public, State of Illinois
My Commission Expires Oct. 22, 2007