IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LISA F. WALLACE,                          )
an incapacitated person,                  )
by and through her next friend,           )
STEPHEN P. WALLACE,                       )
                                          )
                    Plaintiff,            )
v.                                        )        CASE No. 00CV-1086E(M)
                                          )
THE DEPARTMENT OF HUMAN                   )
SERVICES OF THE STATE OF                  )
OKLAHOMA,                                 )
ex rel., JOHN/JANE DOE, in their          )
official capacity as District Supervisor  )
for Tulsa County, Oklahoma; and           )
                                          )
PATRICIA WALLACE HASTINGS,                )
Individually and as Curatrix of           )
Lisa F. Wallace, and                      )
RONALD J. SAFFA, individually,            )
                                          )
                    Defendant.            )

**F I L E D**

JAN - 4 2001

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## GUARDIAN *AD LITEM'S* MEMORANDUM BRIEF IN
## SUPPORT OF JURISDICTION

There are two statutes which provide a federal cause of action for the plaintiff,

Lisa F. Wallace, 42 U.S.C. §1983 and 42 U.S.C. §1985(3).

**42 U.S.C. §1983**

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

Exhibit



EXHIBIT

**1**

In *Thomas S. v. Morrow*, 781 F.2d 367 (3rd Cir. 1986) the guardian of Thomas S.

was sued for having placed him in various institutional settings which did not meet his

needs. The complaint alleged that these actions by the guardian of Thomas denied him

his substantive due process rights secured by the Fourteenth Amendment for having

imposed upon him a degree of restraint on his liberty that was inconsistent with

professional judgement. On appeal, the guardian challenged the ruling of the trial court

urging that he was not a state actor under §1983. The Court of Appeals for the third

Circuit held:

> The "under color of state law" requirement of §1983, is satisfied if
> the deprivation is caused by the exercise of some privilege created
> by State or by a rule of conduct imposed by the State or by a person
> for whom the State is responsible. In this case the guardian's
> authority over Thomas is a right or privilege created by the State. By
> statute, the essential purpose of guardianship is to replace an
> individual's authority to make decisions with the authority of a
> guardian when the individual does not have adequate capacity to
> make such decisions.

*Thomas S.*, 781 F.2d at 376.[1]

Without the authority given to her by the State of Louisiana, Patricia Hastings

---

[1]     The only case which has been found in this Circuit where this question was raised
was *Taylor v. Gilmartin*, 686 F.2d 1346 (10th Cir. 1982). In *Taylor* the plaintiff was appointed a
"temporary" guardian. The Circuit never reached the question of whether the guardian was a
state actor subject to suit under §1983. First, before the district court ruled, the guardian had
been voluntarily dismissed from the case. The court also found that the Order of Guardianship
which was used in this instance was void. Oklahoma had no procedure to allow the appointment
of a guardian for Taylor who was not disabled and there was no provision under state law for a
temporary guardian to be appointed under such circumstances. Having found that the
guardianship order was void from the beginning, the court did not examine the issue further.

Wallace would not have the ability to hold Lisa against her will, keeping her from living in Tulsa near her family and forcing her to return to Louisiana. It is the legal authority conferred upon her by the state court in Louisiana, which she asks this Court to recognize and defer to. That makes her a state actor and accountable under §1983.

Within her realm, Patricia Wallace is as much of a state officer as any other. In fact, there is perhaps no other official who exercises as great of discretion over another person as those appointed as guardian of a person judged to be incompetent. No other state officer could presume to determine where a fellow citizen could live or to decide to incarcerate them in a far away institution. It is only because of the power granted to her by the court in Louisiana that Patricia Wallace claims the right to exercise such control over her sister.

It is also important here to recognize that in performing her task, Patricia Wallace is not acting without state support even beyond the assistance which she receives by virtue of her state court appointment as guardian. As guardian it is her decision to keep her ward in a placement funded by state and federal funds provided under the medicaid program. This is not merely a private action, government intervention is woven throughout it.

When Patricia Wallace Hastings acts to force Lisa Wallace to reside out of the State of Oklahoma and keeps her in an institution which is not meeting her needs, she is invoking her authority as a state appointed guardian.

The second requirement of §1983 is that federal rights be denied under the color of

state law. The rights at issue here are provided both by the Fourteenth Amendment and

by federal statute. In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28

(1982) the Supreme Court recognized that persons with developmental disabilities retain

the right to be free from bodily restraint. "Indeed, liberty from bodily restraint always has

been recognized as the core of the liberty protected by Due Process Clause from arbitrary

government action." *Youngberg*, 457 U.S. at 316. Building upon this right, the Supreme

Court found:

> [Th State] may not restrain residents [in institutions] except when to the
> extent professional judgement deems this necessary to assure such safety or
> to provide needed training.

*Youngberg*, 457 U.S. at 324.

While the right to receive needed training in the least restrictive environment

became clear in *Youngberg*, Congress has not been silent on the matter. In 42 U.S.C.

§15009 set forth the following rights for persons with developmental disabilities:

> IN GENERAL - Congress makes the following findings respecting the
> rights of inidividuals with developmental disabilities:
> (1)     Individuals with developmental disabilities have a right to
>         appropriate treatment, services, and habilitation for such disabilities .
>         . .
> (2)     The treatment, services, and habilitation for an individual with
>         developmental disabilities should be designed to maximize the
>         potential of the individual and should be provided in the setting that
>         is least restrictive of the individual's personal liberty.

It is not consistent with our view of human rights that the state can appoint a

person to take these rights away. Guardians are not unrestrained in their power over those

whom they are appointed to serve. A guardian cannot order that medication be

administered to their ward suffering from mental illness. Before medications can be

forcefully administered the ward has a right to a hearing before a judge. A guardian

cannot waive due process rights and commit their ward to a prison or a mental hospital.

Again, before a mental patient is placed in a hospital or a criminal behind bars, they must

be taken before a judge. When a guardian attempts to use the authority granted to them

by the state to accomplish such objectives, they violate the rights of their ward and are

accountable in federal court for that action §1983.

## 42 U.S.C. §1985(3).

In passing the civil rights acts following the Civil War, Congress well understood

that dangers to liberty did not only flow from the renegade actions of state officers.

Events made it clear to legislatures that private individuals who had banded together,

could also serve to deny people their liberty. From this understanding came 42 U.S.C.

§1985(3). It provides in its relevant parts:

> If two or more persons in any State or Territory conspire, . . . for the
> purpose of depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal privileges and
> immunities under the laws . . . ; in any case of conspiracy set forth in this
> section, any act in furtherance of the object of such conspiracy, whereby
> another is injured in his person or property, or deprived of having and
> exercising any right or privilege of a citizen of the United States, the party
> so injured or deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one or more of the
> conspirators.

When Holy Angels, Ronald Saffa, and Patricia Hastings Wallace joined together to

keep Lisa Wallace away from her family and in a state funded placement which is not

meeting her needs, they violated §1985(3).  *Taylor v. Gilmartin, supra.*

In *Taylor* the plaintiff was taken by his family and placed in the control of a group of "deprogrammers" who claimed to have the ability to break people away from what they had determined to be "cults."  In this case the plaintiff had taken up residence in the monastery of the Blessed Virgin Mary.  He was taken by the "deprogrammers" first to Akron Ohio where he was kept in a motel for a week.  During this time he was treated to a variety of abuses.  He was deprived of sleep, threatened, had his clothes torn off him, cold water thrown on him, and denied medical treatment for a variety of physical complaints.  He was then taken from Akron and moved to Phoenix, Arizona where he was kept for another week, until his escape.

The Tenth Circuit found that defendants had conspired to "deprive the victim of important rights - his liberty, his freedom, his right to practice his religion, among other rights" and on this basis concluded that they had violated §1985(3).

Two years later, the circuit court revisited §1985(3) and reaffirmed its holding:

> As to private conspiracies, the Court has thus held that §1985(3) protects
> rights under the Thirteenth Amendment and the right to travel guaranteed
> by the Federal Constitution, also certain equal protection rights not limited
> by the constraints of the Fourteenth Amendment as to state action.

*Wilhelm v. Continental Title Company,* 720 F.2d 1173, 1176 (10th Cir. 1983).  Under this statute, the Tenth Circuit protects Lisa Wallace's right to travel, or more particularly her right to be with her family.

The Third Circuit would go further and find that the conspiracy of defendants not

only passes the line when they seek to deny the plaintiff her right to travel freely, they

also cross the line when they act to deny her equal protection of the law due to her

disabilities. *Lake v. Arnold*, 112 F.3d 682 ( 3rd Cir. 1997). The plaintiff in *Lake* was

mentally retarded and married. Her parents, apparently concerned about her becoming

pregnant, took her to the hospital and without her consent, had a tubal ligation performed

on her. She sued the hospital and her parents for having conspired to deny her rights.

Looking to the history of mistreatment of persons with developmental disabilities, the

Court held:

> To ensure that private conspirators do not strip other citizens of the equal
> protection of the laws, we must be particularly concerned with those
> discrete and insular minorities who have traditionally borne the brunt of
> prejudice in our society.

*Lake,* 112 F.3d at 687. The Third Circuit found that the plaintiff, due to her

developmental disabilities was the victim of an illegal conspiracy under §1985(3). The

Tenth Circuit has not gone so far.

While the Court of Appeals for the Tenth should rethink its limitations on

§1985(3), under the circuit's present rulings, it still falls upon this Court to act to protect

the rights of Lisa Wallace to reside in Tulsa with her family, where she can secure the

training and program which needs in the least restrictive environment.

## CONCLUSION

After a preliminary review of its jurisdiction, this Court should find that it does

have jurisdiction to hear this matter. Upon so finding, the Court should order that Lisa

Wallace be provided a temporary program by the Oklahoma Department of Human

Services until this matter can be heard on its merits. Further, the Court should set a

discovery schedule which will allow the plaintiff an opportunity to fully prepare a case

relating to the lack of adequate treatment of the plaintiff at Holy Angels.

Respectfully submitted,

Patricia W. Bullock, OBA #9569
BULLOCK & BULLOCK
320 South Boston, Suite 718
Tulsa, Oklahoma 74103-3783
(918) 584-2001
(918) 582-7302 (facsimile)

**GUARDIAN AD LITEM**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was hand-delivered on this 4th day of January, 2001 to counsel for Lisa Wallace, DHS, Patricia Hastings, and Ron Saffa.

Patricia W. Bullock