No. 102,931

FILED
SUPREME COURT
STATE OF OKLAHOMA

MAY 1 2 2006

MICHAEL S. RICHIE
CLERK

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

In the Matter of the Guardianship of Lisa Frances
Wallace, an incapacitated person.

---

## APPELLANT'S BRIEF IN CHIEF

---

Appeal from Tulsa County District Court
Case No. PG-2002-225
Honorable Ronald L. Shaffer

---

*Guardianship*

---

Joan Godlove, OBA No. 10563
2121 South Columbia, Suite 500
Tulsa, Oklahoma 74114-3519
Telephone: (918) 744-0201

Attorney for Appellant Mary Roma
Wallace Jage, individually and as
next friend of Lisa Frances Wallace,
an incapacitated person

EXHIBIT
5

## INDEX

**SUMMARY OF THE RECORD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Beverly v. Wal-Mart Stores, Inc.,* 2000 OK CIV APP 45, 3 P.3d 163 . . . . . . . . . . . . . . . . . . . . 7

*Harrill v. Penn,* 1929 OK 492, 273 P. 235 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sadler v. Watkins,* 1934 OK 550, 36 P.2d 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sasseen v. State Board of Equalization,* 1961 OK 152, 363 P.2d 252 . . . . . . . . . . . . . . . . . . . 6

*Schoenfeld v. Blair,* 1961 OK 258, 366 P.2d 414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Torres,* 2004 OK 12, 87 P.3d 572 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Towne v. Hubbard,* 2000 OK 30, 3 P.3d 154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 Okla. Stat. § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 7

12 Okla. Stat. § 2017(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 Okla. Stat. § 2404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Okla. R. Prof. Conduct 1.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PROPOSITION I

**Because the District Court did not give Lisa Frances Wallace
statutorily-required notice of the "continued" hearing on the
Supplemental Petition, it was not vested with jurisdiction to
appoint a Guardian of her Estate and its Order is "void"** . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Colby v. Jacobs,* 1936 OK 836, 179 Okl. 170, 64 P.2d 881 . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*In re Mize's Guardianship,* 1943 OK 321, 193 Okl. 164, 142 P.2d 116 . . . . . . . . . . . . . . . 15, 16

*Martin v. O'Reilly,* 1921 OK 155, 200 P. 687 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*McElroy v. Pegg,* 167 F.2d 668 (10th Cir. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Taylor v. Gilmartin,* 686 F.2d 1346 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tiger v. McCallom,* 1922 OK 192, 214 P. 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Towne v. Hubbard,* 2000 OK 30, 3 P.3d 154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

30 Okla.Stat. § 3-106(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

30 Okla.Stat. § 3-106(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

30 Okla.Stat. § 3-110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

30 Okla.Stat. § 3-110(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**PROPOSITION II**

**Because the Court did not fully comply with the statute that
governs "waiver" of the requirement that the subject of the
proceeding be present at a hearing, it lacked jurisdiction to
appoint a Guardian of the Estate of Lisa Frances Wallace** . . . . . . . . . . . . . . . . . . . . . . . . 17

*Martin v. O'Reilly,* 1921 OK 155, 200 P. 687 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Taylor v. Gilmartin,* 686 F.2d 1346 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . 17

30 Okla. Stat. § 3-106(A)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

30 Okla. Stat. § 3-106(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**PROPOSITION III**

**Because the Court did not make the inquiries mandated
by applicable provisions of 30 Okla. Stat. § 3-107, it was
not vested with jurisdiction to appoint a Guardian of the
Estate of Lisa Frances Wallace** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Guardianship of Deere,* 1985 OK 86, 708 P.2d 1123 . . . . . . . . . . . . . . . . . . . . . . 19

*Towne v. Hubbard,* 2000 OK 30, 3 P.3d 154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

30 Okla. Stat. § 3-106(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

30 Okla. Stat. § 3-106(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

30 Okla. Stat. § 3-107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

30 Okla.Stat. § 3-107(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

30 Okla.Stat. § 3-107(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

30 Okla.Stat. § 3-107(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tiger v. McCallom,* 1923 OK 192, 214 P. 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## SUMMARY OF THE RECORD

This special proceeding for appointment of a Guardian of the Estate of Lisa Frances Wallace, who has Down's Syndrome, was initiated by Patricia Wallace Hastings on August 16, 2005. [R. 200-01, Supplemental Petition for Appointment of Guardian of Estate ["Supplemental Petition"] at pp. 1-2]. Ms. Hastings is a sister of Lisa Frances Wallace ["Lisa"] and the third of four children of Frank A. and Lorice T. Wallace, who died in 1990 and 2003, respectively. [R. 219, Affidavit of Stephen P. Wallace ["Wallace Aff."] at 1]. Appellants Mary Roma Wallace Jage and Stephen P. Wallace[1] are Lisa's other siblings and were named by Mrs. Wallace as the persons who were to "determine the visitation rights to Lisa Frances Wallace, should this become an issue in contention between my children" in a document she executed on March 13, 2000. [R. 369, Transcript of hearing on Supplemental Petition (Dec. 1, 2005), Wallace Exh. 2, Instrument Altering Trust at p. 1].

Real parties in interest in this guardianship proceeding, like the guardianship proceeding they initiated against Mrs. Wallace in December 1999 in Ms. Hastings' name, appear to be Ronald J. Saffa ["Saffa"] and Trust Company of Oklahoma ["TCO"], whom Mrs. Wallace removed as trustees of her revocable and irrevocable trusts on March 13, 2000, immediately after Judge Robert Perugino found, on the record in that guardianship proceeding, that she had not been adjudicated to be incapacitated and could, therefore, make her own decisions. [R. 212-13, Motion of Stephen P. Wallace for Order Requiring James E. Poe to Produce Proof . . . of Authority Under Which he Filed Supplemental Petition . . . and for a Stay of Proceedings ["Wallace's Motion"] at 1-2; R. 219, Wallace Aff. at 1; R. 369, Transcript of hearing on Supplemental Petition, Exh. 3 at 2 (Dec. 1, 2005)].

James E. Poe, the lawyer who has represented Ms. Hastings in this guardianship proceeding also initiated the 1999 guardianship proceedings against Mrs. Wallace, as well as an action designed

---

[1] After filing the Petition in Error on behalf of appellants Stephen P. Wallace and Mary Roma Jage, the undersigned attorney was granted leave to withdraw as counsel for Mr. Wallace. *See* Order, Appeal No. 102,931 (filed April 27, 2006). She did not seek withdraw as Ms. Jage's attorney.

to overturn her removal of Saffa and TCO as co-trustees of the Lorice T. Wallace revocable and irrevocable trusts. Mr. Poe continues to represent Saffa in related litigation involving trusts that Frank and Lorice Wallace created more than thirty years ago ["the Wallace trusts"]. [R. 369, Transcript of hearing on Supplemental Petition at 6-8, 14, 15 (Dec. 1, 2005)]. Between 2000 and March 2004, Mr. Poe, Saffa, their law firms, and the firm that represents TCO applied for attorney fees totaling $1.3 million for services rendered in litigation related to Mrs. Wallace and/or the Wallace trusts. Trust assets that could have otherwise been distributed to the Wallaces' children as beneficiaries of the Wallace trusts were used to pay these and subsequently-billed attorney fees. [R. 369, *id.* at 7-8].

On September 23, 2005, the Court entered an Order setting the Supplemental Petition for hearing at 9:30 a.m. on September 29, 2005. [R. 204, Order at 1]. It also signed a Notice of Hearing directed to Lisa Frances Wallace. [R. 205, Notice of Hearing on Supplemental Petition for Appointment of Guardian of Estate at 1]. In addition to informing Lisa of the time and date of the hearing, this Notice informed her of her legal rights as the subject of a guardianship proceeding, that is --

You have a right to attend the hearing. You may confront and cross-examine all witnesses and present your own witnesses. You have the right to request that your hearing be closed to the public. You may request that an expert be appointed to examine you and, if the Judge believes that an examination is necessary, the Judge will order an evaluation done.

You have the right to hire an attorney of your choice to represent you. If you do not hire an attorney and you wish to be represented by an attorney at the hearing, the Court will appoint one for you. You may request the appointment of an attorney orally or in writing prior to the hearing or at the hearing. If you are able, you will be required to pay the cost of an attorney appointed by the Court. [R. 205, *id.*].

That same day, the Court signed a second Notice of Hearing that was directed, though not by name, to other "interested parties" listed on the Supplemental Petition, i.e., Mary Roma Wallace Jage, Stephen P. Wallace, individuals employed by the Department of Human Services, James C. Milton, and James E. Weger, who were identified as "Attorney for Lisa Frances Wallace Supplemental Special Needs Trust" and "Attorney for Frank Wallace Trust," respectively. [R. 206, Notice of Hearing on

Supplemental Petition for Appointment of Guardian of Estate at 1]. This Notice concluded with the statement that at the hearing, "any persons interested may appear and show cause, if any, why such appointment should not be made." [R. 206, *id.*]. A court minute dated "08/23/2005" states "ORDER FOR HEARING, NOTICE OF HEARING TO LISA WALLACE AND NOTICE OF HEARING ENTERED." [R. 207, OCIS Case Report, docket, PG-2002-225].

Copies of the Notices addressed to the "interested parties" were mailed on August 24, 2006. [R. 208-09, Affidavit of Mailing at 1-2]. Approximately two weeks later, Mr. Poe personally served the other Notice on Lisa Frances Wallace. [R. 210-11, Affidavit of Service of Notice at 1-2].

Steve Wallace was the first of Lisa's siblings to "show cause" why Ms. Hastings should not be appointed as Guardian of Lisa's Estate, at least not until after evidence was presented as to the identity of the "real party [or parties] in interest." [R.212-29, Wallace's Motion at 1-6 & Exh. A-Exh. D]. This motion, expressly authorized by 5 Okla.Stat. § 5, was filed on September 23, 2005 and supported by evidence that Saffa, who had drafted amendments to Mrs. Wallace's trusts after Mr. Wallace's death, had been the driving force behind PG-99-556, the 1999 guardianship proceeding, and played a role in fraudulently inducing his cousin, Mary Roma Jage, to sign an "agreed order" in PG-99-556 that rendered "void" the document Mrs. Wallace signed on March 13, 2000, that removed Saffa and TCO as co-trustees of her Revocable Trust. [R. 219, Wallace Aff. at 1; R. 225-26, Affidavit of Mary Roma Wallace Jage ["Jage Aff."] at 1-2].

Ms. Jage also "show[ed] cause" why the requested appointment of Patricia Wallace Hastings as Guardian of the Estate of Lisa Frances Wallace should be denied, i.e., another Tulsa County District Judge had previously found, as a matter of fact, that it would be a "conflict of interest" for any of Lisa's siblings, including Ms. Hastings, to serve in a similar position of trust inasmuch as each is a beneficiary of the Lisa Trust and/or the restated or reformed "Lisa Frances Wallace Supplemental Needs Trust." [R. 232-33, Objection of Mary Roma Wallace Jage to Patricia Wallace Hastings'

3

Petition for Appointment of Guardian of Estate for Lisa Frances Wallace ["Jage Objection"; R. 220-23, Final Order as to Certain Issues, PT-2003-46 at 2].

When Steve Wallace checked the Court's "out" box on Tuesday, September 27, 2005, he found a note attached to copies of the file-stamped Motion and proposed Order placed in its "in" box four days earlier. The remark on that note – "Judge will not sign" – is tantamount to an implicit denial of Wallace's Motion which asked the Court to require proof of Mr. Poe's Authority. [R. 239-59, Affidavit of Stephen P. Wallace ["Second Wallace Aff."] at 1 & Exh. A - Exh. A-3]. The next day, Wallace filed an emergency motion for a stay. [R. 234-304, Emergency Motion for Order Staying Proceedings on Supplemental Petition ["Emergency Motion for Stay"] at 1-3 & Exh. A-Exh. C]. Relief sought by this motion was an Order (1) staying all proceedings, including the September 29, 2005 hearing, until issues raised by Wallace's Motion had been finally determined and (2) requiring Mr. Poe to produce evidence of the authority under which he filed the Supplemental Petition, including but not limited to documentary evidence establishing the identity of the person or entity that is paying or has paid attorney fees and costs billed by his law firm for services rendered or purportedly rendered on behalf of Patricia Wallace Hastings since December 1, 1999, in any case involving Mrs. Wallace and/or the Wallace trusts. [R. 236, Emergency Motion for Stay at 3].

Rather than entering the emergency "Stay" that Wallace had requested, the Court implicitly denied his request. However, after holding an *in camera* conference on September 29, 2005, it continued the hearing on Ms. Hastings' Supplemental Petition from that date to 9:30 a.m. on December 1, 2005. [R. 320, Order Continuing Hearing at 1]. No minute concerning the Court's continuance of the September 29, 2005 hearing is reflected on the docket. [R. 364, OCIS Case Report, docket, PG-2002-225].

Ms. Hastings subsequently filed a written Objection to Wallace's Motion, the full text of which reads as follows:

Guardian, Patricia Wallace Hastings, herewith objects to the Motion of Stephen P. Wallace filed September 23, 2005, to require Guardian's counsel to produce proof of authority for representation, in that the record documents already positively reflect such authority. Specifically, the original Petition for Appointment of Guardian filed April 29, 2002, is signed and verified by the Petitioner/Guardian along with her counsel, James E. Poe. Additionally, the Supplemental Petition filed August 16, 2005, is signed and verified by Patricia Wallace Hastings, as Guardian of the Person, and also by Mr. Poe as her attorney of record.

The Motion of Stephen Wallace, on its face, is insufficient to support the application or to authorize a Title 5, O.S. Section 5 inquiry. [R 306-07, Reply of Stephen P. Wallace to Guardian's Objection to Motion for Order Requiring Proof of Poe's Authority ["Wallace's Reply"] at 2-3 (quoting Hastings' Objection)].

Wallace's Reply to Ms. Hastings' Objection noted pertinent facts and cited additional authority supporting Wallace's Motion, including controlling Oklahoma law:

Rather than producing counter-affidavits refuting the **now-admitted fact that Ronald Saffa, not Patricia Wallace Hastings, was the driving force behind PG-99-556,** the guardianship proceeding filed against Lorice T. Wallace [footnote 2] or copies of fee agreements establishing the existence of an attorney-client relationship between James E. Poe and Patricia Wallace Hastings, the person on whose behalf Mr. Poe has purportedly appeared in this guardianship proceeding, attorney Poe filed a paper titled Guardian's Objection to Stephen Wallace Motion.

[Footnote 2: Each and every fact set out in the affidavits filed in support of Wallace's 5 O.S. § 5 Motion is to be taken as true since Mr. Poe, Mrs. Hastings, Ronald J. Saffa, James M. Milton, and/or other persons with personal knowledge of the relevant facts failed to file counteraffidavits refuting those facts. *See State v. Torres,* 2004 OK 12, ¶ 29, 87 P.3d 572, 586 & n.52 (in motion practice, only facts affirmed by affidavit need to be countered by counter-affidavits).]

\* \* \*

The fact that Patricia Wallace Hastings has "signed and verified" the Petition for Appointment of Guardian . . . or the Supplemental Petition . . . does not establish the existence of an attorney-client relationship. Nor does that fact establish that Patricia Wallace Hastings, rather than her cousin, attorney Ronald J. Saffa, is the real party-in-interest in, as well as the "driving force behind," these guardianship proceedings.

Oklahoma law mandates that "[e]very action **shall** be prosecuted in the name of the real party in interest." *See* 12 Okla.Stat. § 2017(A) (emphasis added); *Schoenfeld v. Blair,* 1961 OK 258, ¶¶ 7-8, 366 P.2d 414, 414 (statutory requirement that actions be brought in name of real party in interest is satisfied where there is **compe-**

*tent evidence* to show that plaintiff has right to receive and control fruits and benefits of litigation) . . . .

Mr. Poe has yet to disclose who has paid his firm's fees for "professional services" purportedly rendered on behalf of Patricia Wallace Hastings during the pendency of this guardianship proceeding or during the pendency of PG-99-556. . . .

Attorney Poe's conclusory argument that "[t]he Motion of Stephen Wallace, on its face, is insufficient to support the application or to authorize a Title 5, O.S. Section 5 inquiry," ignores, and, therefore, tacitly admits the correctness of the following arguments:

> Evidence movant Stephen P. Wallace has offered to rebut [the rebuttable presumption that a lawyer is authorized to appear for the person he is representing in court] should be sufficient to challenge the presumed authority of James E. Poe to act for Patricia Wallace Hastings in this case. Among other things, TCO's pattern and practice of using lawyers in the manner described in footnotes 2 and 3, *supra,* to accomplish its goals supports an inference that TCO has paid Poe's legal fees in this and other cases where he has entered his appearance for Ms. Hastings. *See* 12 Okla.Stat. § 2404(b). Saffa's admission that he, not Patricia Wallace Hastings, was the driving force behind the 1999 guardianship proceeding filed against Lorice Wallace gives rise to an inference that he played a role in Poe's filing the Supplemental Petition in this case . . .

> Other evidence that is relevant to the issue of Poe's authority to appear for Ms. Hastings, namely, the existence or non-existence of a fee agreement, is unavailable to the movant without discovery. If such an agreement exists and has existed since 1999, it should be produced.

*Compare* Wallace 5 O.S. § 5 Motion at p. 4 *with Sasseen v. State Board of Equal.,* 1961 OK 152, ¶ 5, 363 P.2d 252 (where no attempt is made to refute argument in earlier filed brief, the Supreme Court of Oklahoma will regard its correctness as conceded). [R. 305-07, Wallace's Reply at 1-2 & n. 2 (emphasis in original)].

Wallace's Reply also raised "conflict-of-interest" issues which differ from those presented by the Jage Objection:

> Serious "conflict of interest" questions are raised by Mr. Poe's failure to submit an affidavit of his "supposed client" attesting to the fact that he is *representing her* in this action and implicitly attesting to the fact that in doing so, Mr. Poe *is furthering Ms. Hastings' best interests and those of Lisa Wallace, NOT the clearly conflicting financial interests of attorney and purported co-trustee Ron Saffa,* whom Mr. Poe also represents, or Mr. Poe's own financial interests. *See* Okla. R. Prof. Conduct ["ORPC"] 1.7, which is titled "Conflict of Interest: General Rule" . . . .

Whether Mr. Poe has told Patricia Wallace Hastings of the *inherent conflict* in his purportedly representing her and Lisa Wallace and Saffa in inextricably-related matters involving the Frank A. Wallace and Lorice T. Wallace trusts or explained *his own financial interests* in the representation are unanswered questions. Whether Mr. Poe has urged Ms. Hastings to consult other counsel about these "conflicts" and whether he has obtained her "informed consent" are other questions that may not be answered unless this Court sets the pending motion for an evidentiary hearing.

            * * *

Among material facts Mr. Poe and his client, Ron Saffa, as fiduciaries, may not have disclosed to Ms. Hastings are those set forth in a brief purportedly filed on behalf of Bank One in PT-2003-46 on March 15, 2004:  . . . at that time, legal fees and costs exceeded $1.3 million.

Upon learning that money diverted from the Wallace trusts to pay the attorney fees and costs of Messrs. Poe, Saffa, Milton, and Weger could have been distributed to her as a beneficiary of those trusts, Ms. Hastings may choose to disavow Mr. Poe's representation in this case and in PG-99-556. [R. 307-09, Wallace's Reply at 3-5].

Briefing on Wallace's Motion was completed on November 4, 2005, with the filing of his Reply. Note of this fact was made in a written request to set that motion for an evidentiary hearing. [R. 311-12, Request of Stephen P. Wallace to Set Motion Requiring Proof of Poe's Authority for Evidentiary Hearing ["Wallace's Request for Evidentiary Hearing"] at 1]. Separate, but related, reasons for conducting such a hearing were identified in the body of this Request:

[1] Because the attorney who is the subject of Wallace's 5 O.S. § 5 Motion failed to produce competent proof of his authority to represent his purported client, Patricia Wallace Hastings, the Court is entitled to rely on the negative presumption that documents that could have been, but were not, produced contain unfavorable infor- mation. *See Sadler v. Watkins,* 1934 OK 550, ¶ 12, 36 P.2d 760, 763 (where party fails to present evidence within his power to produce, presumption is that evidence, if offered, would be unfavorable); *Harrill v. Penn,* 1929 OK 492, 273 P. 235, 237 (syllabus 2) (willful suppression of documentary evidence properly gives rise to pre- sumption that documents, if produced, would be injurious to those who were hindering investigation of facts); *cf. Beverly v. Wal-Mart Stores, Inc.,* 2000 OK CIV APP 45, ¶ 3, 3 P.3d 163, 165 (adverse presumption arises where person willfully attempts to suppress evidence; such conduct indicates consciousness that case or defense is lacking in merit). [2] Setting the matter for evidentiary hearing would enable the Court to base its decision on evidence, rather than an evidentiary presumption.

[3] "Although it is principally a lawyer's responsibility when undertaking a representation to settle questions regarding possible conflicts of interest, a court may

                        7

also consider the question, when it is appropriately raised . . . ." *Towne v. Hubbard,* 2000 OK 30, ¶ 15, 3 P.3d 154, 159. [4] Questions about serious "conflicts of interest" were raised in the Reply Stephen P. Wallace filed on November 4, 2005. [5] Those questions should not be resolved in a factual vacuum, but only after Mr. Poe and Ms. Hastings have had an opportunity to be heard on the record. [R. 311-12, Wallace's Request for Evidentiary Hearing at 1-2 (bracketed numbers added)].

Ms. Hastings did not respond to Wallace's Request for Evidentiary Hearing. [R. 365, OCIS Case Report, docket, PG-2002-225]. Though there was ample time to set the "conflict-of-interest" issue, as well as related issues concerning the identity of the real party in interest and whether Saffa was the driving force behind the current guardianship proceeding, for hearing on December 1, 2005, the Court did not rule on Wallace's Request between November 7, 2005, the date it was filed, and the date of the "continued" hearing on Ms. Hastings' Supplemental Petition. [R. 365, *id.*].

Before the December 1, 2005 hearing went "on the record," the Court conducted a brief *in camera* conference with counsel. During that conference, Mr. Poe presented the Court with a proposed Order which memorialized its having previously continued the hearing from September 29, 2005 to December 1, 2005. [R. 369, Transcript of Proceedings on Supplemental Petition at 4 (Dec. 1, 2005). Consequently, the Court did not sign that Order until shortly before the formal hearing on Ms. Hastings' Supplemental Petition began on December 1, 2005. [R. 320-21, Order Continuing Hearing; R.365, OCIS Case Report, docket, PG-2002-225].

Because Mr. Poe had not presented the proposed Order Continuing Hearing, together with appropriate Notices, to the Court for its consideration and approval during the intervening two month period, Notices of the "Continued" Hearing directed to Lisa Frances Wallace and other "interested parties" that were comparable to those entered on August 23, 2005, were never signed or entered by the Court. [R. 365, OCIS Case Report, docket, PG-2002-225]. Consequently, the record does not reflect that Mr. Poe served Lisa Frances Wallace with a notice of the December 1, 2005 hearing, by certified mail or otherwise, or that notices of the "continued" hearing were mailed to other "interested

8

parties" in accordance with applicable law. [R. 364-65, *id.*]. Indeed, the Order Appointing Ms. Hastings as Guardian of Lisa Wallace's Estate confirms that the **only** notice Ms. Hastings gave to the subject of the proceeding was the "personal notice to Lisa Frances Wallace on September 8, 2005." [R. 317, Order Appointing Guardian of Estate at 1]. In other words, Lisa did not receive notice, much less "proper notice," of the December 1, 2005 hearing on the Supplemental Petition.

Ms. Hastings was present at the December 1, 2005 hearing on her Supplemental Petition. [R. 369, Transcript of Proceedings on Supplemental Petition at 3, 22-23 (Dec. 1, 2005)]. Lisa Frances Wallace, the subject of the guardianship proceeding, was not. Toward the end of the December 1, 2005 hearing, after stating that it would sign an Order appointing Ms. Hastings as Guardian of the Estate of Lisa Wallace, if Mr. Poe drew such an order, the Court declared that Lisa's "presence [at the hearing] will be waived," but did not identify a reason justifying its decision. [R. 369, *id.* at 22-23]. Language to that same effect, but more expansive in nature, appears in the Order which Mr. Poe had prepared before the hearing, and the Court signed minutes later -- that is

> By reason of information provided to the Court including previous psychological evaluation documentation heretofore submitted, and pursuant to 30 O.S. § 3-106(B), the Court determined that the physical presence of Lisa Frances Wallace at said hearing should be and is waived in accordance with comments on the record. [R. 317-19, Order Appointing General Guardian of Estate at 1].

All of the "comments on the record" concerning the "waiver" issue, including several exchanges between Ms. Hastings' lawyer and the Court, are quoted below:

> MR. POE: Your Honor, I have [a proposed order appointing Ms. Hastings as the guardian of the estate], and I did also include in it, in that it was the same provision made earlier, the statute I think requires that the Court speak to the question of whether the attendance of the ward is necessary, and as we established earlier, Lisa Frances Wallace has severe mental retardation with Down's syndrome, has a mental capacity, as determined by the psychologist, and appearing in the earlier record, between two and three years. It would be disruptive to have her present and hearing the proceedings such as this. So we're asking that the Court include in the order a provision that her physical presence is waived and --

> THE COURT: I believe we waived it in the previous hearing.

9

MR. POE: You did, Your Honor. I think it simply has to be stated on the record that it is waived and the reason for it.

THE COURT: Well, her presence will be waived, and do you have that in the order here —

MR. POE: Yes, I do, Your Honor.

THE COURT: All right. [R. 369, Transcript of Proceedings on Supplemental Petition at 22-23 (Dec. 1, 2005)].

The only other statement in the record relevant to the "waiver" issue is a written, but unsworn, statement of opinion by Ms. Hastings' lawyer:

[1] The nature of this hearing, i.e. Guardian's request for appointment also as General Guardian of the Estate, is entirely beyond the Ward's capacity to understand and [2] her interests are best served by an order waiving the requirement for attendance. [R. 230-31, Application for Waiver of Appearance at Hearing at 1 (bracketed numbers added)].

Rather than offering evidence to establish an asserted need to expand the scope of the guardianship, Mr. Poe first noted that Ms. Hastings had been appointed "as guardian of the person of Lisa Frances Wallace, an incapacitated person . . . in June of 200[2]." He then made note of a series of what were asserted as facts, without first being sworn as a witness:

There wasn't really any estate that required the appointment of a guardian [a]t that time.

Subsequent to that, and more recently, one of the trusts that exists for benefit of the ward has in fact purchased real estate, and the title is in the trust but they have also conveyed a life estate for the life of Lisa to Ms. Hastings as the guardian.

* * *

There's not other assets of the ward at this point other than what she had before, which was her social security, and then this life estate that stands in the name of the guardian. [R. 369, Transcript of Proceedings on Supplemental Petition at 2 (Dec. 1, 2005)].

Wallace, as an "interested person" represented by counsel at the December 1, 2005 hearing, reiterated what he had said in papers that had been filed on September 23, 2005, September 28, 2005, November 4, 2005, and November 7, 2005, to "show cause" why the appointment of Patricia Wallace

10

Hastings, as Guardian of the Estate of Lisa Frances Wallace, should not be made. [R. 369, *id.* at 5-16 & Exh. 1- Exh. 4]. Pertinent excerpts from counsel's oral argument are quoted below:

> [W]e have reason to believe that either . . . Mr. Saffa himself, or one of the Wallace trusts, the Frank or the Lorice Wallace Trusts, are in fact paying Mr. Poe's attorney fees to represent Ms. Hastings in this proceeding here today. And to the extent that funds are being expended beyond the scope of any authority Mr. [Saffa] or Trust Company of Oklahoma have to fund litigation, purportedly on behalf of Patricia Wallace Hastings, [that litigation] would, in fact, under Oklahoma law, be a nullity because you have to have the real party in interest appearing in the courtroom to advance whatever position that individual or entity wants . . . . [R. 369, *id.* at 5].

> * * *

> [O]n November [7]<sup>th</sup>, . . . we had asked the Court to set an evidentiary hearing so that relevant evidence could be heard on whether or not there is a conflict of interest between Mr. Poe's representing Patricia Wallace Hastings in these proceedings and his representing Mr. Saffa in other proceedings, and whether in fact there is a direct conflict between Mr. Poe and his client here, Patricia Wallace Hastings, because Mr. Poe and his firm ha[ve] reaped substantial benefits over the past five years in attorney fees that have all been taken out of trusts that Mrs. Hastings is a beneficiary of. And, in fact, in papers filed in one of the cases before Judge Frizzell on March 15, 2000, Bank One, in a brief that Bank One's lawyer signed, the statement is made that . . . .

> to date, which is 20 months ago, already $1.3 million had been approved for attorney fees. [W]e think Mrs. Hastings needs to know, and needs to be able to find out if she was informed that roughly $400,000 that could have gone to her has [ ] gone to pay attorneys for people that we believe Mrs. Wallace removed as trustee[s] of her trusts in 2000. [R. 369, *id.* at 6-8].

> We have asked that this matter related to this conflict of interest, which appears to us to be a conflict that cannot be waived by Mrs. Hastings, but presents a conflict such that Mr. Poe, representing Mr. Saffa, and in his own right as a partner of his firm, reaping financial benefit from this, that we need to be able to get that on the record . . . .

> We think that this is an [important] issue . . . and that to proceed and allow Mr. Poe to try to get this Court to appoint . . . Ms. Hastings to this position would be getting the cart, with all due respect, before the horse. [R. 369, *id.* at 8].

> [I]t's in Mr. Poe's interest to continue to see that Patricia Wallace Hastings and her siblings are not given the proceeds of these trusts that their parents set up in 1974, and, instead, a million and a half dollars has already gone to pay attorney fees for people who have come in and put themselves in the position of controlling this money for five years.

11

[T]he representation is made in a proposed order that Mr. Poe presented us this morning about this guardianship to the effect that Patricia Wallace Hastings is a fit person to fill the role that they are asking this Court to appoint her to. We submit that there are major questions. Factual questions that have to be explored. [R. 369, *id.* at 10-11].

[W]e need - - this Court to look into this conflict of interest issue, get it resolved, and then get on to the merits and put on evidence . . . and find out if Patricia Wallace Hastings has in fact carried out her duties, limited though they may be, for her sister in an appropriate fashion . . . .

What I have marked as Wallace Exhibit No. 2 is titled "Instrument Altering Trust." It's a 2-page document . . . that Mrs. Wallace executed on March 13, 2000, after Judge Robert Perugino had found on the record in a guardianship proceeding that Mr. Poe filed allegedly on behalf of Patricia Wallace Hastings in an attempt to get Lorice Wallace declared incapacitated. And on March 13, 2000, the same day Mrs. Wallace executed the Instrument Altering Trust, Judge Robert Perugino, in the guardianship proceeding initiated, purportedly, at the request of Patricia Wallace Hastings, made findings. This is part of a sealed record. But those findings appear on page 2 of this exhibit, Wallace Exhibit 3. And this is what . . . Judge Robert Perugino said from the bench. And on the first page of that, this notes the appearance of Mr. James Poe, attorney of record – attorney at law [f]or the petitioner, Patricia Wallace Hastings. . . . . Mr. Poe heard Judge Perugino make this statement: "Now, with all due respect to Ms. Wallace, Ms. Wallace, you have not been determined to be incapacitated. At this point you still, ma'am, have the right to make your own decisions." That same day Mrs. Wallace executed this Instrument Altering Trust. This document made it clear that if any questions about the visitation rights of Lisa Frances Wallace came into dispute between her children, she did not want Patricia Wallace Hastings involved in that.

Mr. Poe, acting as the attorney for Mr. Saffa, and, purportedly, Trust Company of Oklahoma . . . went into . . . Judge Perugino's court. They misled Mary Roma Wallace, made her believe that the only way she could be named guardian of her mother – limited guardian of her mother, instead of Patricia Wallace Hastings, who Mrs. Wallace clearly did not want involved in her care, or in the care of her Down's syndrome sister Lisa Frances Wallace. Mr. Poe goes in, Mr. Saffa and the Trust Company of Oklahoma, James Milton, tell Mary Roma Wallace Jage, who is trying to protect her mother, that the only way you can be appointed limited guardian for your mother is if you sign a document which says that everything your mother signed between . . . the day the guardianship was initiated against her and the date of that agreed order is void, you will not be appointed guardian of your mother. And we'll get Patricia Wallace Hastings instead.

These lawyers, Ronald Saffa, the nephew of Mrs. Wallace, who drafted amendments for Mrs. Wallace's trust agreements, made revisions, inserted himself as trustee of those trusts. Major conflict of interest. Never advised her to go seek independent counsel. Mr. Saffa starts this guardian[ship] – or tries to get Mrs. Lorice Wallace

declared incapacitated so she can't amend the trust documents he wrote so that she could remove him as trustee. Mr. Saffa – Mr. Saffa then has his attorney, Mr. Poe, challenge this document in a case they file as former trustees of her trust. They have been removed but they go in and tell a judge, a former partner of Mr. Poe's, we don't think Mrs. Wallace has the capacity to do this. Mr. Poe sat in that courtroom before Judge Perugino where he made this specific finding that Mrs. Wallace was not incapacitated . . . . Addressing Mrs. Wallace at this point, March 13, the same day she executed the Instrument Altering Trust, "You still, ma'am, have the right to make your own decisions."

Mary Roma Wallace Jage signed an affidavit . . . September 17, 2005, and in that affidavit she recites how Mr. Saffa, her cousin, and how Mr. Jim Milton, attorney for Trust Company of Oklahoma, tell her that she cannot be appointed limited guardian of her mother, who does not want Patricia Wallace Hastings involved at all, either with herself, with her business affairs, or with . . . her daughter Lisa Frances Wallace. Mary Roma Wallace Jage in that affidavit relates what Saffa had said to her, what Milton had said to her. They're representing their own interests and the interest of Trust Company, which were totally adverse to the interests of Patricia Wallace Hastings. As well as Lorice Wallace. As well as Steve Wallace. As well as Mary Roma Wallace Jage. Misled her, got her to sign a document which voided the Instrument Altering Trust. Without that fraud, collusion, clear disregard for their obligations as attorneys admitted to practice in this state, they mislead Mary Roma Wallace Jage. She signs this document. And she not only basically . . . reinstalls people that Mrs. Wallace had the right to remove as trustees on March 13th, but she did in fact, as a matter of law, and under express provisions in her trust agreement, she had the right to amend. [R. 369, *id.* at 12-16 & Exh. 3, Exh. 4].

Mr. Poe "interrupt[ed]" this "show cause" argument to make the following assertion and ask the Court to give a "limiting instruction" to counsel:

[W]e are so far afield from anything relevant to this case that I move that all of this be stricken and that we proceed to the issues at hand, and counsel be instructed to address only that which is pertin[ent] to the hearing for which we are here today. [R. 369, *id.* at 16].

The Court acceded to part, but not all, of the request Mr. Poe made purportedly on Ms. Hastings' behalf, when it made the following statement from the bench, then allowed counsel to respond:

THE COURT:  Well, we need to confine it to that because you're going off onto a whole bunch of other things that don't really have anything to do with the hearing today. [R. 369, *id.* at 16].

13

MS. GODLOVE: Your Honor, the hearing has to do, with all due respect, according to the proposed order, with whether Patricia Wallace Hastings ia a suitable and proper person to represent – or to be appointed full guardian over her sister Lisa. What I have submitted to this Court is evidence showing why, among other things, without even testimonyh from her, why she is not a fit and proper person. I think I have presented evidence showing that there is a direct conflict of interest between Mr. Poe and his purported client. A conflict which arises out of his representing . . . Ronald J. Saffa. His participation in procuring a signed document from – a signature on an agreed order that's the subject of that affidavit of Mary Roma Wallace Jage. . . . I think we have made a prima facie case for showing why the conflict of interest issue needs to be the subject of an evidentiary hearing . . . . And we would ask the Court simply continue this hearing to a date to be set once we give the Court notice of the Supreme Court's ruling. And if it is not so inclined to do that, we would ask the Court to set a date, complete the information left blank on the proposed order that was submitted to this Court on November 7th, 2005, asking this Court to set the matter for an evidentiary hearing that would address the issue of whether Mr. Poe can properly represent Mrs. Hastings, and also address the – further develop evidence on the conflict of interest issues.

I believe that every document that I have asked to be marked as an exhibit in this case and that I now offer as evidence and would ask that they be attached to the transcript of this hearing, that every one of those documents has a direct bearing on whether this Court, after hearing the evidence, could properly find that Mrs. Hastings is a suitable and proper person to be appointed the guardian of her sister Lisa Frances Wallace. [R. 369, *id.* at 16-18].

At the urging of Ms. Hasting's counsel that it "should proceed to the issue of is there reason that [Ms. Hastings'] appointment should be expanded to include guardian of the estate," the Court agreed and noted on the record that it didn't "see any problem in just going ahead and appointing [Ms. Hastings] as the guardian of the estate." [R. 369, *id.* at 22]. The Court then signed the Order Mr. Poe had drafted. [R. 317-19, Order Appointing General Guardian of the Estate at 1-2].

The statement in the first paragraph of the Order that "[p]roper notices have been given" is contradicted by the record. Nothing in the transcript of the December 1, 2005 hearing supports the statement in the second numbered paragraph on the first page of the Order that "[t]he Court judicially notice[d] all matters heretofore set forth and determined in the Order on Petition for Appointment of Guardian dated June 13, 2002." Nor was evidence introduced that would warrant the Court's making factual findings regarding Lisa's "continuing" incapacity or her "continuing" need for 24-hour care.

14

## PROPOSITION I

### <u>Because the District Court did not give Lisa Frances Wallace statutorily-required notice of the "continued" hearing on the Supplemental Petition, it was not vested with jurisdiction to appoint a Guardian of her Estate and its Order is "void."</u>

"The appointment of a guardian for an incompetent is a statutory proceeding, and, in order to vest a county court of this state with jurisdiction to appoint a guardian for an alleged incompetent, it is necessary that a petition be filed in said court as required by [statute], and that notice be given to the alleged incompetent person as therein provided; and an order appointing such guardian for an alleged incompetent, where such petition has not be filed and notice given, as in the statute provided, is void." *Tiger v. McCallom,* 1922 OK 192, 214 P. 194, 195 (syllabus); *accord, Taylor v. Gilmartin,* 686 F.2d 1346, 1351 (10th Cir. 1982) (Oklahoma law is settled that the appointment of a guardian is uniquely a creature of statute; in the absence of full compliance the court lacks jurisdiction and the order is void) (citing *Tiger v. McCallom* and *Martin v. O'Reilly,* 1921 OK 155, 200 P. 687); *McElroy v. Pegg,* 167 F.2d 668 (1948), where the Tenth Circuit summarized Oklahoma law on this issue as follows:

> In the case of *In re Mize's Guardianship,* 193 Okl. 164, 142 P.2d 116, an order had been made appointing a guardian for Elnora Mize, an alleged incompetent. The record did not disclose that personal service was made upon Elnora Mize. She personally appeared at the hearing on the petition for the appointment of the guardian and had joined in such petition. The court held that Sec. 851, *supra,* requires that notice of the time and place of the hearing shall be served personally upon the alleged incompetent not less than five days before the time appointed for the hearing, that failure to personally serve notice was not cured by the personal appearance of the alleged incompetent at the hearing, and that the order of appointment was void. In *Martin v. O'Reilly,* 81 Okl. 261, 200 P. 687, the court held *that the requirement that notice of the hearing on the application for the appointment of a guardian be personally served upon the alleged incompetent was jurisdictional and that an order appointing a guardian, where no personal service was made upon the alleged incompetent, was void* and subject to collateral attack. In *Colby v. Jacobs,* 179 Okl. 170, 64 P.2d 881, the could held that *the requirement that notice of the hearing on the application be personally served upon the alleged incompetent was jurisdictional and, without the service of such notice, the court acquired no jurisdiction* to make an adjudication of incompetency or *to appoint a guardian.*

167 F.2d at 670-71 (emphasis added).

15

Here, as in *Colby, Martin, McElroy, Mize,* and *Tiger,* the record does not reflect that notice of the December 1, 2005 hearing on the Supplemental Petition was served on Lisa Frances Wallace as prescribed by law. *See* 30 Okla. Stat. § 3-106, which provides in pertinent part:

> A. In ***all hearings*** conducted pursuant to Article III of the Oklahoma Guardianship and Conservatorship Act, an individual who is alleged to be or found to be an incapacitated . . . person ***shall*** have a right to:
>
> 1. Notice as provided in Section 3-110 of this title . . .
>
>          * * *
>
> B. The requirement of notice to the subject of the proceeding ***shall not be waived.*** . . .

(Emphasis added); *see also Towne v. Hubbard,* 2000 OK 30, ¶ 17 n. 34, 3 P.3d 154, 162 ("provisions of 30 O.S. 1991, § 3-106 require that notice be given of all hearings conducted pursuant to Article III of the Oklahoma Guardianship and Conservatorship Act [and] tie the requisite notice to the provisions of § 3-110").

Section § 3-110 (A)(1) of the Oklahoma Guardianship and Conservatorship Act provides that "[t]he court ***shall*** cause notice to be served of the time and place of the hearing on the petition requesting appointment of a guardian for an incapacitated person or partially incapacitated person on . . . the subject of the proceeding . . . ."

Given the lack of notice of the time and place of the "continued" hearing on the Supplemental Petition on Lisa Frances Wallace, the subject of the guardianship proceeding, express provisions of applicable Oklahoma statutes which are couched in mandatory terms, and well-settled decisional law on the issue, it follows that the District Court was not vested with jurisdiction to appoint Patricia Wallace Hastings as Guardian of the Estate of Lisa Frances Wallace. Therefore, the Order Appointing General Guardian of the Estate, which was entered on December 1, 2005 and purports to make such an appointment is "void."

16

## PROPOSITION II

### Because the Court did not fully comply with the statute that governs "waiver" of the requirement that the subject of the proceeding be present at a hearing, it lacked jurisdiction to appoint a Guardian of the Estate of Lisa Frances Wallace.

Absent full compliance with statutes governing the appointment of a guardian, the court lacks jurisdiction and any order it enters that appoints a guardian for an alleged incompetent is void. *See Taylor v. Gilmartin,* 686 F.2d 1346, 1351 (10th Cir. 1982) (construing Oklahoma law). What was said under Proposition I about a court's failure to have a statutorily-mandated notice served on the subject of a guardian-ship proceeding holds equally true where a court fails to fully comply with express terms of a statute which allows the requirement that the subject of a guardianship be present at a hearing to be waived under certain circumstances. *See Martin v. O'Reilly,* 1921 OK 155, 200 P. 687.

In *Martin,* the Oklahoma Supreme Court held that where a county court sitting in probate appointed a guardian for an alleged incompetent on the same day that the petition was filed, without notice, and without the alleged incompetent having been produced before the court, or it being shown that that individual was unable to attend, and without a full hearing and examination upon the petition, its order appointing a guardian is void and, therefore, subject to collateral attack. 1921 OK 155, 200 P. 687, 690-91 (syllabus). As the *Martin* court noted, where it "can reasonably be done, the presence [at the hearing] of the party charged is indispensable." 200 P. at 691.

The concept of "waiver," as it relates to guardianship proceedings, differs from the concept of "waiver" in the context of ordinary civil proceedings. Whether "waiver" of the right of the subject of a guardianship proceeding to be present at a particular hearing is appropriate is a matter to be determined by the court, not a right that is easily lost of forfeited, or a matter left to the whim of a third party, including a guardian. *See* 30 Okla.Stat. § 3-106, which provides in pertinent part:

> A. In *all hearings* conducted pursuant to Article III of the Oklahoma Guardianship and Conservatorship Act, an individual who is alleged to be or found to be an incapacitated . . . person *shall* have a right to:

17

       \* \* \*

       2. be present at such hearings . . .

       \* \* \*

       B. . . . . The requirement that the subject of the proceeding be present at a hearing *may be waived only for good cause shown. The court shall make inquiries to determine whether there is sufficient cause to waive the right to be present.* Whenever the requirement that the subject of the proceeding be present is waived, the court *shall make a finding on the record [1] as to the reason the subject of the proceeding is not present* at the proceeding and *[2] the alternatives which were considered* to enable the subject of the proceeding to be present.

(Emphasis and bracketed numbers added).

      A cursory review of the transcript of the December 1, 2005 hearing on the Supplemental Petition filed by Ms. Hastings should convince this Court that there was less than full compliance with the mandatory terms of 30 Okla.Stat. § 3-106(B).

      Rather than raising the "waiver" issue at the outset of the hearing, Ms. Hastings' lawyer waited until the hearing was almost over before he said anything about the fact that Lisa was not present at the hearing. After Mr. Poe noted that he had included a provision in the proposed Order Appointing General Guardian of the Estate to the effect that the ward's physical presence is waived, the Court said that it believed it had been waived in the previous hearing and that "her presence will be waived." No finding was made on the record during the hearing as to (1) the reason that Lisa Frances Wallace was not present at the proceeding or (2) the alternatives which were considered to enable her to be present. Nor can it be said that the Court made any "inquiries to determine whether there is sufficient cause to waive the [ward's] right to be present."

      Appellant respectfully submits that, in keeping with the Oklahoma Supreme Court's holding in *Martin v. O'Reilly* and well-settled Oklahoma law that full compliance with applicable guardianship statutes is required before jurisdiction vests to appoint a receiver, this Court should find that there was not substantial, much less full, compliance with express provisions of 30 Okla.Stat. § 3-106(B), then hold that the Order Appointing General Guardian of the Estate is void.

## PROPOSITION III

### Because the Court did not make the inquiries mandated by applicable provisions of 30 Okla. Stat. § 3-107, it was not vested with jurisdiction to appoint a Guardian of the Estate of Lisa Frances Wallace.

"One of the historic liberties which is protected by the due process clauses of the Constitution of the United States and the State of Oklahoma is the right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security. Appointment of a guardian results in a massive curtailment of liberty, and it may also engender adverse social consequences. The guardian becomes the custodian of the person, estate and business affairs of the ward; the guardian dictates the ward's residence; the ward's freedom to travel is curtailed; and the ward's legal relationship with other persons is limited." *In re Guardianship of Deere*, 1985 OK 86, 708 P.2d 1123, 1125-26.

The court's observation in *Deere* that "[t]he guardian becomes the custodian of the person" takes on added significance when viewed in light of provisions pertaining to

(1) the right of individuals who are the subject of guardianship proceedings to be present at all hearings, a right recognized by 30 Okla. Stat. § 3-106(A)(1);

(2) the requirement that such individuals be present at all hearings unless the court makes certain inquiries, as well as particularized findings on the record which are set out in 30 Okla.Stat. § 3-106(B); and

(3) inquiries the court is directed to make and explanations it must give regarding appointment of counsel for such individuals under 30 Okla.Stat. § 3-107.

Unless Oklahoma courts are required to fully comply with 30 Okla.Stat. § 107(C), whether "appointment of counsel" ever becomes an issue in a particular guardianship proceeding will likely be determined by whether the subject of the proceeding is "present" at the hearing or whether, as in this case, the guardian and/or guardian's attorney elects not to have the subject of the proceedings "present" at the hearing. Section § 3-107(B) governs the first of these scenarios; it provides:

If the subject of the proceeding *is present* at the hearing on the petition and *is not represented by counsel* at said hearing:

19

1. The court shall explain on the record:

    a. the purpose and potential consequences of the proceeding; and

    b. *the right to be represented by counsel upon request* and that if the subject of the proceeding wishes to be represented by counsel, the court will appoint an attorney to represent the subject of the proceeding at the hearing on the petition.

2. Following such explanation the court *shall inquire* of the subject of the proceeding whether he wishes to have an attorney appointed.

    a. *If the subject of the proceeding requests the appointment of an attorney, the court shall appoint an attorney.*

    b. *If the subject of the proceeding does not request the appointment of an attorney and the court is in doubt as to whether the subject of the proceeding is capable of making an informed decision regarding the appointment of an attorney and the court determines that it is in the best interest of the subject of the proceeding to be represented by counsel, the court shall appoint an attorney for the subject of the proceeding,* or if the court determines that the appointment of counsel is not in the best interest of the subject of the proceeding, the court shall not appoint an attorney.

    c. If the subject of the proceeding does not request the appointment of an attorney and the court determines that the subject of the proceeding is capable of making an informed decision regarding the appointment of an attorney, the court shall not appoint an attorney.

3. The court may make the explanation and inquiry required by this subsection, regarding the purpose and potential consequences of the proceeding and the appointment of an attorney, *prior to the hearing* on the petition. At the hearing on the petition the court shall include on the record the facts related to said explanation and inquiry, the determinations made by the court with respect thereto and the reasons for such determinations.

30 Okla. Stat. § 3-107(B) (emphasis added).

In situations, like that presented here, Section 3-107(C) governs, but may not be applied. It provides:

If the subject of the proceeding is *not present* at the hearing on a petition alleging him to be an incapacitated or partially incapacitate person and *is not represented by counsel* and the court has not made the explanation and inquiry as provided by paragraph 3 of

20

subsection B of this section, *the court shall make sufficient inquiry to determine affirmatively whether it would be in the best interest of the subject of the proceeding to appoint counsel to represent the subject of the proceeding at the hearing on the petition.*

> 1. *If the court determines that it is in the best interest of the subject of the proceeding to be represented by counsel, the court shall appoint an attorney.*

> 2. If the court determines that the appointment of counsel is not in the best interest of the subject of the proceeding, the court shall not appoint an attorney.

30 Okla.Stat. § 3-107(C) (emphasis added).

The record on appeal reflects that the District Court did not undertake the inquiry mandated by the plain language of § 3-107(C), a provision that was clearly designed to protect "the best interest of the subject of [a guardianship] proceeding" by insuring that that person knows he/she has a right to assistance of counsel or in the case of an individual who is not capable of making an informed decision on that subject, the Court will appoint an attorney if it determines that that would be in that person's best interest.

Although the issue raised by Proposition III appears to be an issue of first impression, appellant submits that it should be resolved by following settled Oklahoma law which conditions the vesting of jurisdiction, and likewise, the validity of orders appointing guardians of alleged incompetents or incapacitated persons, on full compliance with applicable guardianship statutes.

To the extent that this Court finds that Wallace made a *prima facie* showing of an irreconcilable conflict of interest between Mr. Poe's representation of Ronald J. Saffa, on one hand, and his representation of Ms. Hastings, on the other, the same conflict should preclude his representation, indirect or otherwise, of Lisa Frances Wallace. *Cf.* 30 Okla. Stat. § 3-107(G) (requiring court to make independent inquiry to determine whether counsel is independent and whether any conflict of interest exists which would preclude proper representation of the subject of the proceeding or which would be detrimental to the best interest of the subject of the proceeding in all cases where independent counsel is retained by or on behalf of the subject of the proceeding); *Towne v. Hubbard,* 2000 OK 30,

21

¶ 15, 3 P.3d 154 ("Although it is principally a lawyer's responsibility when undertaking a repre-
sentation to settle questions regarding possible conflicts of interest, a court may also consider the
question, when it is appropriately raised by the motion of one of the parties, by acting in the exercise
of its power to regulate the conduct of those involved in a judicial proceeding before it, or where, as
here, a statute directs the court to consider the matter.").

## CONCLUSION

For the reasons set forth above, appellant Mary Roma Jage submits that the Court should vacate
the Order Appointing General Guardian of the Estate and remand the case to the District Court with
directions to enter an Order decreeing the Order Appointing General Guardian of the Estate to be void.
*See Tiger v. McCallom,* 1923 OK 192, 214 P. at 196.

Respectfully submitted,

Joan Godlove, OBA No. 10563
2121 South Columbia, Suite 500
Tulsa, Oklahoma 74114-3519
Telephone: (918) 744-0201

Attorney for Appellant Mary Roma Jage,
individually and as next friend of Lisa
Frances Wallace, an incapacitated person

22

## CERTIFICATE OF SERVICE

I certify that on this 12th day of May, 2006, true and correct copies of Appellant's Brief in Chief were delivered to James E. Poe, 111 West 5th Street, Suite 740, Tulsa, Oklahoma 74103; and the Tulsa County Court Clerk, Tulsa County Courthouse, 500 South Denver Avenue, Tulsa, Oklahoma 74103.

Joan Godlove

23