**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LISA F. WALLACE, a developmentally disabled person, by and through her next friend, co-trustee and brother, STEPHEN P. WALLACE; STEPHEN P. WALLACE, Individually; and all those similarly situated in the class,<br><br>        Plaintiffs,<br><br>v.<br><br>PATRICIA W. HASTINGS, an Individual; RONALD J. SAFFA, an Individual; JAMES MILTON, an Individual; JAMES POE, an Individual; JOHN FEARS, an Individual; JAMES WEGER, an Individual; JP MORGAN CHASE & CO., (New York) JOSEPH M. WATT, an Individual; JAMES R. WINCHESTER, an Individual; GREGORY FRIZZELL, an Individual; RONALD SHAFFER, an Individual; and JOHN DOES 1-10, whose identities are not yet known,<br><br>        Defendants. | Case No. CIV-06-1264 RBW<br><br>**RECEIVED**<br><br>MAR – 1 2007<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

**MOTION FOR APPOINTMENT OF PROVIDENT TRUST COMPANY AS INTERIM TRUSTEE AND GUARDIAN AD LITEM FOR LISA F. WALLACE, SUA SPONTE, DUE TO HER "FAILURE TO THRIVE" EMERGENCY AND NOTICE BY DEFAULT PURSUANT TO RULE 55A BY DEFENDANT JOHN FEARS**

COMES now Lisa F. Wallace, by and through her next friend, brother and co-trustee, Stephen P. Wallace and moves the Court as follows:

1)    Movant filed a Complaint for Lisa F. Wallace on or about December 28, 2000, wherein the Court appointed a Guardian Ad Litem who entered her Affidavit as an "officer of the Court" as to the **"conspiracy"** against Lisa's rights on **January 4, 2001**. (Exhibit I)

2)    Said interdiction was for a **"…temporary program by the Oklahoma Department of Human Services…"** (See pg. 8, line 1).

3)     On **January 28, 2001,** District Judge Ellison entered an ORDER agreed to by the interested parties. (Exhibit II)

4)     On **November 21, 2001,** Movant's counsel filed an Emergency Motion citing multiple violations against Lisa's and Movants civil and constitutional rights, also requesting sanctions against the Guardian Ad Litem and William Kellough for compounding a felony of collusion/conversion/contempt of Court. (Exhibit III)

5)     Defendants thereafter filed a Guardianship action against Lisa in Tulsa County District Court in Case No. PG-2002-25 in Defendants' Ronald Shaffers' Court.

6)     Defendant Ronald Shaffer, in collusion with Defendant's, et al., sanctioned counsel, Robert L. Mitchell, Esq., **$7,500** and also dismissed Plaintiffs' (which included Lorice, Trustor and sister, Roma Jage) **Petition for Accounting <u>with Prejudice</u>, under color of law and under color of authority,** which is required of fiduciaries/trustees by Oklahoma law.

7)     Thereafter, Counsel Mitchell was forced to resign as counsel and seek employment as an Asst. D.A., to continue to support his family.

8)     Plaintiff's are again subject to the **Sooner Klan** criminal conspiracy/conversion in Oklahoma due to the anti-Semetic discrimination violations plus those in 42 USC 1985 alleged against Lisa as an "incapacitated person" whose life is rapidly deteriorating due to her **"failure to thrive".**

9)     The ***Homeward Bound*** case is now closed in the Northern District by Decree leaving Lisa as a Ward of the State, incarcerated behind 24/7 guarded gated community, while Defendants await her **Terri Schrivo** type emaciation of her body and soul.

Wherefore, an **emergency** exists due to the horrific conflicts of interests by the Defendants warranting this Court's intervention, in the interest of justice, public policy and for Lisa's **life.**

Plaintiffs move the Court to vacate Lisa's Guardianship and appoint an Independent Guardian Ad Litem and Interim Trustee unless the court accepts Edson Bridges II, Chairman of Provident Trust Company, who has capacity and intent to serve. (Exhibit IV)

**NOTICE:** Plaintiffs further notice the Court Clerk of Default by **John Fears** pursuant to Rule 55A as he was served Summons on 11/3/06. Return of Service on 11/21/06 with Answer Due 11/24/06.

Respectfully submitted,

Stephen P. Wallace
6528 E. 101st, D-1 #304
Tulsa, OK 74133
(918) 694-1870

<u>Affidavit</u>

I swear/affirm the foregoing is true and correct to the best of my knowledge.

Stephen P. Wallace

State of Oklahoma    )
County of Oklahoma  )

Stephen P. Wallace appeared before me this 28th day of February, 2007 and signed this document.

Notary Public

<u>Certificate of Service</u>

I certify that on the ____ day of March, 2007, I mailed a copy to:
Edson Bridges II, Chairman of Provident Trust and Bridges Investment Cousel
All Defendant's counsel of record

Stephen P. Wallace

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LISA F. WALLACE,                              )
an incapacitated person,                      )
by and through her next friend,               )
STEPHEN P. WALLACE,                           )
                                              )
            Plaintiff,                        )
                                              )    CASE No. 00CV-1086E(M)
v.                                            )
                                              )
THE DEPARTMENT OF HUMAN                       )
SERVICES OF THE STATE OF                      )
OKLAHOMA,                                     )
ex rel., JOHN/JANE DOE, in their              )
official capacity as District Supervisor      )
for Tulsa County, Oklahoma; and               )
                                              )
PATRICIA WALLACE HASTINGS,                    )
Individually and as Curatrix of               )
Lisa F. Wallace, and                          )
RONALD J. SAFFA, individually,                )
                                              )
            Defendant.                        )

**FILED**
JAN - 4 2001
Phil Lombardi, Clerk
U.S. DISTRICT COURT

## GUARDIAN *AD LITEM'S* MEMORANDUM BRIEF IN SUPPORT OF JURISDICTION

There are two statutes which provide a federal cause of action for the plaintiff,

Lisa F. Wallace, 42 U.S.C. §1983 and 42 U.S.C. §1985(3).

## 42 U.S.C. §1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.

Exhibit



EXHIBIT

I

In *Thomas S. v. Morrow*, 781 F.2d 367 (3rd Cir. 1986) the guardian of Thomas S. was sued for having placed him in various institutional settings which did not meet his needs. The complaint alleged that these actions by the guardian of Thomas denied him his substantive due process rights secured by the Fourteenth Amendment for having imposed upon him a degree of restraint on his liberty that was inconsistent with professional judgement. On appeal, the guardian challenged the ruling of the trial court urging that he was not a state actor under §1983. The Court of Appeals for the third Circuit held:

> The "under color of state law" requirement of §1983, is satisfied if the deprivation is caused by the exercise of some privilege created by State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. In this case the guardian's authority over Thomas is a right or privilege created by the State. By statute, the essential purpose of guardianship is to replace an individual's authority to make decisions with the authority of a guardian when the individual does not have adequate capacity to make such decisions.

*Thomas S.*, 781 F.2d at 376.[1]

Without the authority given to her by the State of Louisiana, Patricia Hastings

---

[1]    The only case which has been found in this Circuit where this question was raised was *Taylor v. Gilmartin*, 686 F.2d 1346 (10th Cir. 1982). In *Taylor* the plaintiff was appointed a "temporary" guardian. The Circuit never reached the question of whether the guardian was a state actor subject to suit under §1983. First, before the district court ruled, the guardian had been voluntarily dismissed from the case. The court also found that the Order of Guardianship which was used in this instance was void. Oklahoma had no procedure to allow the appointment of a guardian for Taylor who was not disabled and there was no provision under state law for a temporary guardian to be appointed under such circumstances. Having found that the guardianship order was void from the beginning, the court did not examine the issue further.

Wallace would not have the ability to hold Lisa against her will, keeping her from living in Tulsa near her family and forcing her to return to Louisiana. It is the legal authority conferred upon her by the state court in Louisiana, which she asks this Court to recognize and defer to. That makes her a state actor and accountable under §1983.

Within her realm, Patricia Wallace is as much of a state officer as any other. In fact, there is perhaps no other official who exercises as great of discretion over another person as those appointed as guardian of a person judged to be incompetent. No other state officer could presume to determine where a fellow citizen could live or to decide to incarcerate them in a far away institution. It is only because of the power granted to her by the court in Louisiana that Patricia Wallace claims the right to exercise such control over her sister.

It is also important here to recognize that in performing her task, Patricia Wallace is not acting without state support even beyond the assistance which she receives by virtue of her state court appointment as guardian. As guardian it is her decision to keep her ward in a placement funded by state and federal funds provided under the medicaid program. This is not merely a private action, government intervention is woven throughout it.

When Patricia Wallace Hastings acts to force Lisa Wallace to reside out of the State of Oklahoma and keeps her in an institution which is not meeting her needs, she is invoking her authority as a state appointed guardian.

The second requirement of §1983 is that federal rights be denied under the color of

GAL's Memorandum Brief in Support of Jurisdiction                                          Page 4

state law.  The rights at issue here are provided both by the Fourteenth Amendment and

by federal statute.  In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28

(1982) the Supreme Court recognized that persons with developmental disabilities retain

the right to be free from bodily restraint.  "Indeed, liberty from bodily restraint always has

been recognized as the core of the liberty protected by Due Process Clause from arbitrary

government action."  *Youngberg*, 457 U.S. at 316.  Building upon this right, the Supreme

Court found:

> [Th State] may not restrain residents [in institutions] except when to the
> extent professional judgement deems this necessary to assure such safety or
> to provide needed training.

*Youngberg*, 457 U.S. at 324.

While the right to receive needed training in the least restrictive environment

became clear in *Youngberg*, Congress has not been silent on the matter.  In 42 U.S.C.

§15009 set forth the following rights for persons with developmental disabilities:

> IN GENERAL - Congress makes the following findings respecting the
> rights of inidividuals with developmental disabilities:
> (1)   Individuals with developmental disabilities have a right to
>       appropriate treatment, services, and habilitation for such disabilities .
>       . .
> (2)   The treatment, services, and habilitation for an individual with
>       developmental disabilities should be designed to maximize the
>       potential of the individual and should be provided in the setting that
>       is least restrictive of the individual's personal liberty.

It is not consistent with our view of human rights that the state can appoint a

person to take these rights away.  Guardians are not unrestrained in their power over those

whom they are appointed to serve.  A guardian cannot order that medication be

administered to their ward suffering from mental illness. Before medications can be

forcefully administered the ward has a right to a hearing before a judge. A guardian

cannot waive due process rights and commit their ward to a prison or a mental hospital.

Again, before a mental patient is placed in a hospital or a criminal behind bars, they must

be taken before a judge. When a guardian attempts to use the authority granted to them

by the state to accomplish such objectives, they violate the rights of their ward and are

accountable in federal court for that action §1983.

## 42 U.S.C. §1985(3).

In passing the civil rights acts following the Civil War, Congress well understood

that dangers to liberty did not only flow from the renegade actions of state officers.

Events made it clear to legislatures that private individuals who had banded together,

could also serve to deny people their liberty. From this understanding came 42 U.S.C.

§1985(3). It provides in its relevant parts:

> If two or more persons in any State or Territory conspire, . . . for the
> purpose of depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal privileges and
> immunities under the laws . . . ; in any case of conspiracy set forth in this
> section, any act in furtherance of such conspiracy, whereby
> another is injured in his person or property, or deprived of having and
> exercising any right or privilege of a citizen of the United States, the party
> so injured or deprived may have an action for the recovery of damages
> occasioned by such injury or deprivation, against any one or more of the
> conspirators.

When Holy Angels, Ronald Saffa, and Patricia Hastings Wallace joined together to

keep Lisa Wallace away from her family and in a state funded placement which is not

meeting her needs, they violated §1985(3). *Taylor v. Gilmartin, supra.*

In *Taylor* the plaintiff was taken by his family and placed in the control of a group of "deprogrammers" who claimed to have the ability to break people away from what they had determined to be "cults." In this case the plaintiff had taken up residence in the monastery of the Blessed Virgin Mary. He was taken by the "deprogrammers" first to Akron Ohio where he was kept in a motel for a week. During this time he was treated to a variety of abuses. He was deprived of sleep, threatened, had his clothes torn off him, cold water thrown on him, and denied medical treatment for a variety of physical complaints. He was then taken from Akron and moved to Phoenix, Arizona where he was kept for another week, until his escape.

The Tenth Circuit found that defendants had conspired to "deprive the victim of important rights - his liberty, his freedom, his right to practice his religion, among other rights" and on this basis concluded that they had violated §1985(3).

Two years later, the circuit court revisited §1985(3) and reaffirmed its holding:

> As to private conspiracies, the Court has thus held that §1985(3) protects rights under the Thirteenth Amendment and the right to travel guaranteed by the Federal Constitution, also certain equal protection rights not limited by the constraints of the Fourteenth Amendment as to state action.

*Wilhelm v. Continental Title Company,* 720 F.2d 1173, 1176 (10th Cir. 1983). Under this statute, the Tenth Circuit protects Lisa Wallace's right to travel, or more particularly her right to be with her family.

The Third Circuit would go further and find that the conspiracy of defendants not

only passes the line when they seek to deny the plaintiff her right to travel freely, they also cross the line when they act to deny her equal protection of the law due to her disabilities. *Lake v. Arnold*, 112 F.3d 682 ( 3rd Cir. 1997). The plaintiff in *Lake* was mentally retarded and married. Her parents, apparently concerned about her becoming pregnant, took her to the hospital and without her consent, had a tubal ligation performed on her. She sued the hospital and her parents for having conspired to deny her rights. Looking to the history of mistreatment of persons with developmental disabilities, the Court held:

> To ensure that private conspirators do not strip other citizens of the equal protection of the laws, we must be particularly concerned with those discrete and insular minorities who have traditionally borne the brunt of prejudice in our society.

*Lake,* 112 F.3d at 687. The Third Circuit found that the plaintiff, due to her developmental disabilities was the victim of an illegal conspiracy under §1985(3). The Tenth Circuit has not gone so far.

While the Court of Appeals for the Tenth should rethink its limitations on §1985(3), under the circuit's present rulings, it still falls upon this Court to act to protect the rights of Lisa Wallace to reside in Tulsa with her family, where she can secure the training and program which needs in the least restrictive environment.

## CONCLUSION

After a preliminary review of its jurisdiction, this Court should find that it does have jurisdiction to hear this matter. Upon so finding, the Court should order that Lisa

GAL's Memorandum Brief in Support of Jurisdiction                    Page 8

Wallace be provided a temporary program by the Oklahoma Department of Human

Services until this matter can be heard on its merits. Further, the Court should set a

discovery schedule which will allow the plaintiff an opportunity to fully prepare a case

relating to the lack of adequate treatment of the plaintiff at Holy Angels.

Respectfully submitted,

Patricia W. Bullock, OBA #9569
BULLOCK & BULLOCK
320 South Boston, Suite 718
Tulsa, Oklahoma 74103-3783
(918) 584-2001
(918) 582-7302 (facsimile)

**GUARDIAN AD LITEM**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document
was hand-delivered on this 4th day of January, 2001 to counsel for Lisa Wallace, DHS,
Patricia Hastings, and Ron Saffa.

Patricia W. Bullock

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LISA F. WALLACE,         )
an incapacitated person,     )
by and through her next friend, )
STEPHEN P. WALLACE,    )
                      )
        Plaintiff,    )
                      )
v.                  )   CASE No. 00CV-1086E(M)
                      )
THE DEPARTMENT OF HUMAN  )
SERVICES OF THE STATE OF    )
OKLAHOMA,           )
ex rel., JOHN/JANE DOE, in their  )
official capacity as District Supervisor )
for Tulsa County, Oklahoma; and   )
                      )
PATRICIA WALLACE HASTINGS,  )
Individually and as Curatrix of    )
Lisa F. Wallace, and         )
RONALD J. SAFFA, individually,   )
                      )
        Defendant.   )

**FILED**

JAN 26 2001

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### <u>ORDER</u>

On the 26th day of January 2001, the parties appeared before this Court. Upon oral motion of Lisa Wallace's guardian *ad litem* and agreement of the parties, the Court finds and orders as follows:

1.    Lisa Wallace is currently residing in an adult companion placement with Christy Gladson on East 60th Street, Tulsa, Oklahoma. It is in the best interest of Lisa Wallace, as well as her desire, to continue to live in this home.

2.    Evaluations of Ms. Wallace's service needs are currently scheduled. Upon completion of the evaluations, Ms. Wallace's team will meet and design an Individual Plan



EXHIBIT
II

Order _____ Page 2

which will be submitted to the Court for review and approval.

    3.      Family counseling services will be authorized on Lisa Wallace's plan of care

*Pursuant to and*

by DHS as required by the Consent Decree in *Homeward Bound.* The plaintiff, Steve

Wallace, and defendants, Patricia Hastings, Lorice Wallace and Mary Roma Wallace Jage,

will participate in family counseling with a counselor who will be approved by the guardian

*ad litem.* The focus of the family counseling will be to address Lisa's well being, safety and

relationships with her family. The family counselor will provide the guardian *ad litem*

monthly reports on the status of the counseling, including cooperation of the family. Even

though Mary Roma Wallace Jage lives out of state and Lorice Wallace is partially

incapacitated, it is expected they will participate to the extent practical.

    4.      Until further order of this Court, Lisa will continue to reside in her current

placement. Family members may visit Lisa in her home and in community settings. Lisa

will always have her adult companion or HTS with her. This includes on outings with family

members. Lisa will not be taken to any family member's home for any reason. These

restrictions will remain in place until it is clear they are no longer needed to assure Lisa

Wallace's safety and well being.

 

                                *James O. Ellison*

                          James O. Ellison, Senior District Judge

United States District Court    }
Northern District of Oklahoma  } ss
    I hereby certify that the foregoing
is a true copy of the original on file
in this court.
             Phil Lombardi, Clerk
By _____
            Deputy

Order _____ Page 3

AGREED TO:

_____
Robert Mitchell
Judith Finn
Attorneys for Steve Wallace

_____
Danny Williams
Attorney for Patricia Wallace Hastings

_____
William Kellough
Attorney for Lorice Wallace
and Mary Roma Wallace Jage

_____
John Fears
Attorney for Department of Human Services

_____
Patricia W. Bullock
Guardian *ad litem* of Lisa Wallace

LisaWall.Ord

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

LISA F. WALLACE,                          )
an incapacitated person,                  )
by and through her next friend,           )
STEPHEN P. WALLACE,                       )
                                          )
            Plaintiff,                    )
v.                                        )        CASE NO.  00CV-1086E(M)
                                          )
THE DEPARTMENT OF HUMAN                    )
SERVICES OF THE STATE OF                  )
OKLAHOMA,                                 )
ex rel. JOHN/JANE DOE, in their           )
official capacity as District Supervisor  )
for Tulsa County, Oklahoma; and           )
                                          )
PATRICIA WALLACE HASTINGS,                )
Individually and as Curatrix of           )
Lisa F. Wallace, and                      )
RONALD J. SAFFA, individually,            )
                                          )
            Defendants.                   )

*FILED*
*NOV 2 1 2001*
*Phil Lombardi, Clerk*
*U.S. DISTRICT COURT*

<u>**EMERGENCY MOTION TO MODIFY ORDER OF JANUARY 26,**</u>
<u>**and MAY 3, 2001, RESPECTING CARE OF LISA F. WALLACE**</u>

Comes now Stephen P. Wallace and seeks an emergency order modifying the care

of Lisa F. Wallace and in support thereof alleges and states as follows:

1.  In the above mentioned order of January 26, 2001, the court indicated that

certain reports would be made to the court regarding the Individual Plan for the care and

treatment of Lisa F. Wallace and that the court would review same.  That Plan was not

complete by the prior hearing conducted on May 3, 2001.

2.  Counsel for Stephen P. Wallace, Robert L. Mitchell, contacted the guardian ad

litem on Friday November 16, 2001 and discussed with the guardian ad litem on



1

Monday, November 19, 2001, the fact that the Individual Plan for the care of Lisa F. Wallace has still not been provided to Stephen P. Wallace, or the Court.

3. The Court, on January 26 and May 3, 2001, provided, among other things, for living arrangements for Lisa F. Wallace in Tulsa, Oklahoma, and for the Department of Human Services to provide all services and benefits appropriate to members of the *Homeward Bound* class, including supervision of family visits between Lisa F. Wallace and other members of her family. Unknown to Stephen P. Wallace prior to November 19, 2001, a referral of Lisa's case has been made to the guardian ad litem for the members of the *Homeward Bound* class. However there has been no appointment of an independent voluntary guardian as contemplated by this court on May 3, 2001, wherein the court stated:

> " . . . I think it's pretty clear that the counsel in the *Hissom* case should take steps for the appointment of a guardian to work out from our roster of guardians someone who is willing to take over that responsibility, if the family fails to act . . ."

4. According to guardian ad litem in the Hissom case, everything appears to be fine with Lisa, however there still appears to be an attempt to "poison the well" by other members of the Wallace family and to some extent Lisa's guardian ad litem concerning the relationship between Lisa Wallace and Stephen Wallace. All of this is being done, without benefit of evidence, to the detriment of the relationship between Stephen P. Wallace and Lisa F. Wallace and contrary to Lisa's best interest.

5. Contrary to the entry of the court's order, Movant Stephen P. Wallace has been denied family visits with Lisa F. Wallace on two separate occasions. No satisfactory explanation has been given for the denial of visits and Movant Wallace is still suffering

from the stigma of unsubstantiated allegations regarding supposed improper conduct between himself and Lisa F. Wallace.

6  There is no risk of harm to Lisa F. Wallace in allowing family visits with Stephen P. Wallace under the conditions prescribed by the court and these unsubstantiated "rumors" of improper conduct are slanderous and without any basis in fact.

7. Lisa F. Wallace is entitled under 42 U.S.C. § 15009 to "treatment, services and habitation designed to maximize the potential of the individual and should be provided in the setting that is *least* restrictive of the individual's personal liberty"and the "provision for close *relatives* or guardians of such individuals to visit the individuals without prior notice." (Emphasis added).

8. On May 3, 2001,the court directed William Kellough, counsel for Mary Roma Jage to provide to Patricia Bullock "all information that deals with any assets of any trust" (applicable to Lisa F. Wallace) and further directed Ms. Bullock to provide that information to the court. It is apparent that neither Mr. Kellough nor Ms. Bullock have complied with that order.  On June 1, 2001, the court noted that the response of Mr. Kellough was insufficient and directed Ms. Bullock to commence discovery and report to the court within 45 days.  No discovery was held and an extension of 60 days was granted until September 4, 2001.  No discovery was conducted.

9. Movant has not received any confirmation or copies of attempted discovery on behalf of Lisa Wallace to determine the extent of her interest in any property or trusts previously ordered by the court, therefore Movant can only conclude that no such discovery was had.

10. Movant has discovered some documentation of interests of Lisa F. Wallace in certain real estate, trusts and property which is the subject of a prior motion filed by Stephen P. Wallace to which there has been no response and which is incorporated herein by reference.

11. It is very clear that an independent volunteer guardian should be appointed by the court. Edith Jackson is a friend of the family, is well known to Lisa F. Wallace, is a competent and qualified individual and is willing to act as an independent volunteer guardian for Lisa F. Wallace. A copy of her resume is attached hereto as exhibit "A."

12. Stephen P. Wallace, or Edith Jackson as guardian for Lisa F Wallace, should be allowed to conduct discovery to determine the assets available for Lisa F. Wallace and the placement that would be in the best interest of Lisa F. Wallace, that would provide the least restrictive means possible and would provide the safeguards contemplated by 42 U.S.C. § 15009.

13. The present situation has been the result of the inattention or disobedience of the directives of the court by William Kellough and or Patricia Bullock and therefore Movant requests that he be allowed to complete discovery and advise the court of the evidence regarding assets available to Lisa F. Wallace and the propriety of her care plan.

14. Movant declares that an emergency exists affecting the welfare of Lisa F. Wallace due to the prolonged nature of the responses of the present custodians of Lisa Wallace to the court's directives and the lack of compliance with the court's efforts to receive information concerning the welfare and care of Lisa F. Wallace, as well as the concerted effort by the parties set forth herein to interfere with the legitimate relationship between Movant and Lisa F. Wallace.

4

WHEREFORE, movant Stephen P. Wallace respectfully requests that this court enter an order granting relief as follows:

A. Allow Stephen P. Wallace to conduct discovery to determine the assets available to Lisa F. Wallace through any applicable trust and to determine the least restrictive means of maintaining the care of Lisa Wallace while assuring that her constitutional and federal statutory rights are protected and to report back to the court within 60 days.

B. Appoint Edith Jackson as an independent volunteer guardian on behalf of Lisa Wallace and designate the independent volunteer guardian to be Lisa Wallace's representative to her individualized program planning team and allow her to conduct such discovery as is necessary to make informed financial and personal decisions regarding Lisa F. Wallace's welfare.

C. Allow supervised visits between Lisa Wallace and Stephen P. Wallace at any reasonable time and place including in her home and in Mr. Wallace's home provided that Lisa is accompanied by her DHS representative or care giver.

D. Require the filing with the court of any and all documents, memos, reports or data collected by the guardian ad litem regarding the assets available to Lisa F. Wallace through any trust or otherwise and regarding any evidence which would reflect on the development and implementation of the current individualized treatment program.

E. Sanction the conduct of William Kellough or Patricia Bullock for failure to comply with the court's previous directives as the court may deem appropriate.

F. Movant requests that the court set this matter for an emergency hearing and determine all issues presented by this motion after reasonable notice to all parties.

Respectfully submitted,

_Robert L. Mitchell_

Robert L. Mitchell,   OBA # 6279
MITCHELL & FOLEY
5500 N. Western Ave., Suite 100A
Oklahoma City, OK 73118
Phone:        (405) 767-0404
Facsimile     (405) 767-0909

STATE OF OKLAHOMA     )
                                    ) ss.
COUNTY OF OKLAHOMA )

## AFFIDAVIT

I, Stephen P. Wallace, hereby state upon my oath that I am the movant in the above styled emergency motion, that I have read that contents thereof, and that the same are true and correct to the best of my information and belief.

Dated this 21st day of November, 2001.

_Stephen P. Wallace_

Stephen P. Wallace

Subscribed and sworn to before me this 21st day of November, 2001.

TRACY L. HENRY
Oklahoma County
Notary Public in and for
State of Oklahoma
My commission expires

_Tracy L. Henry_

Notary Public

My Commission Expires:

8/21/04

6

## CERTIFICATE OF MAILING

I, the undersigned, hereby certify that on the 21st day of November, 2001, I sent by facsimile and mailed a true and correct copy of the above and foregoing Motion to the following counsel of record:

Danny Williams, Esq.
for Patricia Wallace Hastings
5310 East 31st Street
Tulsa, Oklahoma 74135

William Kellough, Esq.
for Mary Roma Wallace Jage
Limited Guardian of the person of Lorice T. Wallace
BOONE, SMITH, DAVIS, HURST & DICKMAN
500 Oneok Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103

John Fears
for the Department of Human Services
444 South Houston
Tulsa, Oklahoma 74127

Patricia W. Bullock
Guardian Ad Litem of Lisa F. Wallace
BULLOCK & BULLOCK
320 South Boston, Suite 718
Tulsa, Oklahoma 74103

by placing it in the U.S. Mail, postage pre-paid.

_Robert L. Mitchell_

9107 South Urbana #C
Tulsa, OK 74137

Phone 918-477-7494

# Edith L. Jackson (Bunny)

| | |
|---|---|
| **Objective** | To obtain a full time position in a clerical setting that provides an opportunity to work with the general public. |
| **Education** | St. Jude's Grade School    Manhattan, New York<br>George Washington High School    Manhattan, New York<br>Tulsa Junior College Community Classes    Tulsa, Oklahoma |
| **Interests and activities** | Cultural events in the theater and arts. |

**Work experience**

| | | |
|---|---|---|
| *1999 – Present*<br>*Administrative Assistant/Receptionist to General Manager, Rooms Director and Food and Beverage Director* | *Doubltree Hotel at Warren Place* | *Tulsa OK* |
| *1996 - 1999*<br>*PBX Operator, Concierge* | *DoubleTree Hotel at Warren Place* | *Tulsa, OK* |
| *1993 - 1996*<br>*Para-Professional* | *Jenks East Elementary School* | *Tulsa, OK* |
| *1993 - 1992*<br>*Officer Manager* | *Dos Hombres Company International* | *Tulsa, OK* |
| *1980 – 1993*<br>*Nursery Supervisor* | *St. Bernard's Catholic Church* | *Tulsa, OK* |
| *1979 – 1980*<br>*Nursery Supervisor* | *Church of the Resurrection* | *Tulsa, OK* |

| | |
|---|---|
| **Volunteer experience** | St. Bernard's Singles Group Coordinator – 2 years<br><br>Charlie Allen Bowling League for Mentally Challenged Individuals – 6 years<br><br>St. Bernard's Church Volunteer |
| **Hobbies** | Walking, Swimming, Decorating |
| **References** | Available upon request |

EXHIBIT

A

BRIDGES INVESTMENT COUNSEL, INC.
8401 WEST DODGE ROAD, SUITE 256
OMAHA, NEBRASKA 68114-3493

TELEPHONE  402-397-4700
FACSIMILE  402-397-8617

May 24, 2004

Mr. William B. Harrison, Jr.
Chairman and Chief Executive Officer
J. P. Morgan Chase & Co.
270 Park Avenue
New York, NY 10017

Dear Mr. Harrison:

This letter is written on behalf of Stephen P. Wallace of Tulsa, Oklahoma. I am an investment adviser with residence and business in Omaha, Nebraska, where I have lived and practiced for 42 years. Our Firm is the continuation to the 208th registration with the Securities and Exchange Commission. There are approximately 60,000 registered investment advisers in the nation. I employ about 27 persons, and the Firm manages around $2 billion in client and trust customer assets. During my business career, I have started and successfully nurtured the first mutual fund organized under the laws of the State of Nebraska, a transfer agency business, and a state chartered trust company. These entities have business relationships in 27 states and several foreign countries. My secondary education was at Deerfield Academy in Deerfield, Massachusetts. I graduated Summa Cum Laude from the University of Nebraska in June, 1954. While I was a student, I received a Phi Beta Kappa Key and other honors. I received an MBA from Harvard University in June, 1956, and I continued on the faculty at Harvard Business School as a research assistant to George P. Baker and James J. Hill, Professor of Transportation, who later became the Dean of the School and, subsequently, the Trustee in bankruptcy for the Penn Central Railroad.

Mr. Wallace has sent you a letter dated May 3, 2004, in which he wishes your attention regarding his family affairs with the Trust Division of Bank One, N.A., located in Tulsa. Mr. Wallace wished me to indicate to you that a private trust company under our care would be willing to act as a successor to Bank One, N.A. and Union Bank and Trust Company in Lincoln, Nebraska, as a potential receiver for assets held either at the Trust Company of Oklahoma on behalf of his mother or the Frank A. Wallace Revocable Trust dated December 27, 1974. The major asset inside the Lorice T. Wallace Revocable Trust is the Lorice T. Wallace Family Limited Partnership. This letter serves to express our agreement to serve in the successor capacities desired by Mr. Wallace and his sister Roma Jage.



EXHIBIT
IV

FROM :                              FAX NO. :                    Aug. 23 2004 01:46PM P18
MAY-24-04 15:47 FROM:BRIDGES INVESTMENT          ID:4023978817         PAGE 5/5

Mr. William B. Harrison, Jr.                    2                    May 24, 2004

In my 45 years as an investment counselor and 12 years as the manager of Provident Trust Company, I have never seen a situation that deserves someone somewhere to stand up and find out the facts and provide appropriate relief to family members as principal and income beneficiaries than the situation faced by the family of Frank A. Wallace, deceased, and Lorice T. Wallace, deceased.

Bank One has a supervising officer for trust departments in Oklahoma and Texas by the name of Mark Clemons. This individual is someone who thought there was sufficient conflict of interest in Tulsa to move the administration of the Frank A. Wallace Trust to Dallas, Texas, in early 2003. This individual is competent and, I believe, compassionate. He described how difficult cases were handled within the Bank One system when protective administrative actions should occur. For some reason, his thinking or voice has been lost, and an overbearing and hurtful condition continues for the two family members referenced earlier in this letter. I urge you to respond to Mr. Wallace, and even though your Bank is not yet merged with Bank One, you should use your influence with Mr. Dimon and others to at least find a responsive way to address the concerns and ways to assist principal beneficiaries of his father's trust.

Thank you for your consideration in this matter on behalf of the Wallace family. For my part, our organization or its investment adviser has probably donated $10,000 to $25,000 in administrative time to set up the Wallace relationships. We have also paid for independent attorneys to see whether or not there were merits that should be considered and whether or not our organization should accept the Wallace trusts. Our institution refuses to participate in any litigation. In this matter, my interest, and that of our personnel, are only desirous of finding ways to unify family members and to be peacemakers.

Sincerely,

Edson L. Bridges II, CFA
President

ELBII:kjs