NOT FOR OFFICIAL PUBLICATION

IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA

DIVISION III

FILED
COURT OF CIVIL APPEALS
STATE OF OKLAHOMA
DEC 22 2006
MICHAEL S. RICHIE
CLERK

RECEIVED
DEC 26 2006

| | |
|---|---|
| IN RE: FRANKLIN A. WALLACE REVOCABLE TRUST dated December 26, 1974 and as amended. | ) ) ) ) |
| BANK ONE, N.A., Successor Trustee, | ) ) |
| Petitioner/Appellee, | ) ) ) |
| and | ) ) |
| THE TRUST COMPANY OF OKLAHOMA, | ) ) |
| Appellee, | ) ) ) ) |
| vs. | ) ) |
| STEPHEN P. WALLACE, | ) ) |
| Respondent/Appellant, | ) ) ) |
| and | ) ) |
| PATRICIA WALLACE HASTINGS, Individually and as Guardian of LISA FRANCES WALLACE, | ) ) ) ) ) |
| Respondent/Appellee, | ) ) |
| and | ) ) |

No. 101,164
(Cons. w/101,859)

MARY ROMA WALLACE JAGE, )
)
Respondent. )

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE GREGORY K. FRIZZELL, JUDGE

### AFFIRMED

| | |
|---|---|
| James Earl Weger,<br>Jack Lawrence Brown,<br>Adam J. Strange,<br>JONES, GOTCHER & BOGAN,<br>Tulsa, Oklahoma, | For Petitioner/Appellee<br>Bank One, N.A., |
| James C. Milton,<br>DOERNER, SAUNDERS,<br>DANIEL & ANDERSON, L.L.P.,<br>Tulsa, Oklahoma, | For Appellee The Trust<br>Company of Oklahoma, |
| Stephen P. Wallace,<br>Tulsa, Oklahoma, | *Pro Se*, |
| James E. Poe,<br>COVINGTON & POE,<br>Tulsa, Oklahoma, | For Appellee Patricia Wallace<br>Hastings, Guardian of Lisa<br>Frances Wallace. |

Opinion by Kenneth L. Buettner, Chief Judge:

¶1  Respondent/Appellant Stephen P. Wallace ("Appellant") appeals from the trial

court's decision to reform a trust to effect the intent of the trustor.[1] Appellant has also filed a Petition in Error appealing the trial court's denial of his request to proceed *in forma pauperis*, in which he requested transcripts at state expense. Appellant has not briefed that issue and we are therefore unable to consider it. We affirm the trial court's August 9, 2004 Final Order.

¶2    Rule 1.11(k)(1) of the Oklahoma Supreme Court Rules provides that issues raised in the Petition in Error but omitted from the brief may be deemed waived. That rule also provides that argument without supporting authority will not be considered. Based on this rule, we consider only the assertions of error included in Appellant's Brief in Chief.[2]

¶3    The record shows this particular case began when Petitioner/Appellee Bank One, N.A. ("Bank") filed its Petition for Guidance and Construction of Trust September 16, 2003. In its Petition, Bank averred that it was the sole successor trustee of the Frank A. Wallace Revocable Trust dated December 26, 1974 (as

---

[1] In an Order filed February 28, 2005, the Oklahoma Supreme Court granted the motions of Appellees Bank One and The Trust Company of Oklahoma to dismiss Respondent Mary Roma Wallace Jage as an appellant in this case because Jage's entry of appearance and attempted appeal were untimely filed.

[2] The Motions to Dismiss Appeal filed by Bank One and The Trust Company of Oklahoma were deferred to this court by the Oklahoma Supreme Court in its February 28, 2005 Order. They sought dismissal based on Appellant's untimely filing of the designation of record. The motions to dismiss this appeal are denied.

amended) ("F.A. Wallace Trust"). Bank also asserted it fulfilled its duties as successor trustee from its offices in Tulsa County, and that the Tulsa County District Court therefore had jurisdiction and was the proper venue.

¶4   Bank noted that the beneficiaries of the F.A. Wallace Trust included Jage, Appellee Patricia Wallace Hastings, Lisa Frances Wallace, and Appellant. Bank asserted that Lisa Frances Wallace is an impaired person whose needs were being met by the State of Oklahoma pursuant to the Hissom/Homeward Bound litigation. Bank further cited the Third Amendment to the F.A. Wallace Trust, which provides that if the trustee determines that the irrevocable trust for Lisa Frances Wallace ("Lisa Trust") will not have sufficient assets to support Lisa for her lifetime, then the trustee shall distribute to the Lisa Trust "such amount of the [F.A. Wallace] trust estate as the Trustee determines to be necessary for that purpose, even though the exercise of the Trustee's discretion in this regard has the result of reducing the share of the [F.A. Wallace] trust to be received by Grantor's other children . . . ." That amendment included the statement of the grantor's intent to give priority to the needs of Lisa Frances Wallace.

¶5   Bank asserted that the Lisa Trust is not a special needs trust, and that if it was funded as directed in the F.A. Wallace Trust, then Lisa risked losing her entitlement to state or federal public assistance. Bank noted that Jage, Hastings, and Appellant

were the current successor trustees of the Lisa Trust, but that they may be conflicted from serving as successor trustees because they are the beneficiaries of the Lisa Trust in the event of Lisa's death.

¶6    Bank requested the court's guidance and assistance in determining first, under the terms of the F.A. Wallace Trust, the needs of Lisa and at what level those needs should be met; second, how much of the F.A. Wallace Trust assets should be set aside for Lisa's future care and maintenance; third, whether the Lisa Trust should be reformed or interpreted by the court in such a way that Lisa Frances Wallace would not lose her entitlement to federal and state assistance after the Lisa Trust is funded by the F.A. Wallace Trust; and fourth, whether a conflict of interest required disqualifying Jage, Hastings, and Appellant as successor trustees of the Lisa Trust (and if so, Bank asked the court to appoint a new successor trustee). Bank also asked the court to determine how and to whom to distribute any remaining funds in the F.A. Wallace Trust.

¶7    Bank also filed a Motion to Transfer Case seeking a transfer of the case to Judge Frizzell because he had presided over three other cases involving the F.A. Wallace Trust and was familiar with the issues. The trial court granted the Motion to Transfer October 1, 2003.

¶8    Hastings filed her Answer October 6, 2003, in which she admitted the

allegations in Bank's Petition. Hastings agreed that her status as beneficiary of the Lisa Trust created a conflict of interest which prevented her and her siblings from serving as successor trustees to the Lisa Trust. Hastings suggested the court appoint The Trust Company of Oklahoma (TCO) as successor trustee. Hastings also asserted her belief that Lisa's needs required that all assets in the F.A. Wallace Trust be distributed to the Lisa Trust.

¶9   Appellant filed his Objection to Bank's Petition for Guidance October 9, 2003. Appellant asserted that he was the trustee of the F.A. Wallace Trust, and that Bank was not the sole successor trustee of the F.A. Wallace Trust. Appellant based this assertion on his claim that void judgments entered (in other litigation) after September 13, 2001 resulted in Appellant becoming the trustee. Appellant also claimed that Hastings was the guardian of Lisa's person, but not of Lisa's property.

¶10   Appellant further averred that the Lisa Trust was to be funded in December 1994 and that there were similar trusts for Appellant, Jage, and Hastings, but David Fist and Ronald Saffa fraudulently dissolved those trusts and converted the assets for their own use. Appellant claimed that Bank and counsel for Hastings were conspiring with Saffa, Fist, Hastings, and TCO to alter the irrevocable Lisa Trust. Appellant also alleged that the assigned judge was involved in the conspiracy. Appellant asserted that Bank and Hastings's counsel were violating federal banking and securities laws,

as well as violating their fiduciary duties and the trust covenants. Appellant asked that Bank's Petition be dismissed.

¶11 Bank filed its Application to Continue Hearing for a Limited Purpose March 24, 2004, in which it noted that trial was scheduled for March 26, 2004 and Bank stated it "does not request that this date and time be altered, changed, or modified by the Court. Instead, (Bank) requests this trial hearing to be continued to the following week at a time suitable to the Court in order to hear the testimony of its witness, Patricia W. Bullock." Bank noted Bullock represented class members in the Hissom/Homeward Bound litigation and she would testify regarding the future receipt of benefits under the consent decree in the class action, and how those benefits affected Lisa Frances Wallace. Bank asserted Bullock was unavailable March 26, 2004 because she would attend her father's funeral.

¶12 The trial court entered a minute order March 29, 2004, which granted Bank's Petition for Guidance and overruled Appellant's October 9, 2003 Objection. The trial court entered its Order April 1, 2004, in which it formalized the decision from the March 26, 2004 hearing. In the Order, after noting the provision in the F.A. Wallace Trust providing that Lisa's needs are to be given priority over the other children, the court found that funding the Lisa Trust from the F.A. Wallace Trust would negatively impact Lisa's Medicaid eligibility. The court therefore ordered the Lisa Trust to be

restated and reformed, and the court attached the reformed document titled The Lisa Frances Wallace Supplemental Needs Trust. The court found that an unanticipated change in circumstances frustrated the purposes of the original Lisa Trust. The court also removed Appellant, Hastings, and Jage as trustees of the Lisa Trust after finding that all three had a conflict of interest as beneficiaries of the Lisa Trust and the reformed supplemental needs trust.

¶13   The court further appointed TCO as trustee of the reformed Lisa Trust. The court referenced a May 19, 1998 letter agreement and directed that the terms of TCO's acceptance of administration was subject to the terms of the letter agreement as if the reformed Lisa Trust had been mentioned in that letter. The court next directed Bank to transfer all assets of the F.A. Wallace Trust to the reformed Lisa Trust based on the intent expressed by Frank A. Wallace in his trust.

¶14   Appellant and Jage filed their Emergency Motions to Vacate Judgments obtained by Fraud and for Dismissal of Case, Instanter and Sua Sponte March 30, 2004. They argued that the Application to Continue the Hearing for a Limited Purpose was made under false pretenses with the intent that Appellant and Jage would rely on it to their detriment. Appellant averred that Bullock had sought additional time to file a brief, in another matter, in February 2004 citing a family emergency and again sought additional time for filing March 1, 2004 for the death of

her father. Appellant asserted he and Jage did not attend trial March 26, 2004 because they believed it had been continued. They asserted the trial court's decision on the Petition for Guidance must be vacated because it was entered by fraud.

¶15 Bank filed its Response to Appellant's and Jage's Emergency Motions to Vacate April 8, 2004. Bank attached the First Amended Scheduling Order, filed February 10, 2004, which provided that trial briefs were due March 15, responses were due March 22, and hearing on the Petition was set for March 26, 2004. The Bank noted it served the scheduling order on Jage and Appellant February 11, 2004, but neither filed a response to the Bank's trial brief by March 22. Bank also attached its Application to Continue Hearing for a Limited Purpose, which expressly asked that the March 26, 2004 hearing date not be changed. Bank asserted that when the matter came on for hearing March 26, 2004, the Bank, Hastings as guardian of Lisa, and counsel for TCO all appeared. The Bank elicited testimony from other witnesses which made Bullock's testimony unnecessary and the court granted the Bank's oral motion to strike the hearing time set for taking Bullock's testimony.

¶16 Bank argued that Appellant and Jage had failed to show that they were prevented from appearing and presenting their argument March 26, 2004. Bank denied that its assertions about Bullock's reason for missing the March 26 hearing were false. Bank asserted Bullock's father died in early March and was cremated.

The memorial service was held in another state March 27, 2004. Bank asked the court to deny the Emergency Motions to Vacate.

¶17   Appellant next filed his Emergency Motions to Vacate all Orders Entered in the Above-Captioned Cases and to Dismiss All Cases filed Under Color of Law and Brief in Support April 16, 2004. Appellant filed this pleading in this case and four others. He contended that Judge Frizzell had never practiced probate law and was therefore enabling the criminal conversion of his family's $30,000,000 estate under color of law. Appellant directed the court to an unrelated case involving the State and another Tulsa County District Judge. Appellant also contended that Bank had breached its fiduciary duties to the beneficiaries of the trusts and acted in concert with other lawyers and law firms to criminally convert the Wallace estate for their own use. Appellant demanded that Judge Frizzell vacate all orders, dismiss all cases "filed by the criminal interim fiduciaries" and order Ronald Saffa to turn over the Wallace family estate tax return. The trial court denied this motion the day it was filed.

¶18   The trial court entered its Order denying Appellant's and Jage's Emergency Motions to Vacate Judgments Obtained by Fraud April 16, 2004. In its Order the court found that Bank's March 24, 2004 Application did not seek to change the hearing date set for March 26, 2004, but "merely sought leave to elicit the testimony of one of the expected witnesses at a later date."

¶19    The trial court issued an Order June 18, 2004 in which it denied Appellant's motion to disqualify the trial judge. In its Order the court found Appellant had failed to follow the procedure required by District Court Rule 15 for seeking disqualification of a trial judge. Appellant then filed a document titled Emergency Applications for Chief Judge Gillert to Disqualify Judge Frizzell for Alleged Public Corruption and for Order Appointing Receiver Pendente Lite July 9, 2004.[3]

¶20    Bank and TCO filed their "Application for Instructions Regarding the Effect of the Court's August 9, 2002 Order, Entered in Tulsa County Case No. PT-2000-44, on the Administration of the Lisa Frances Wallace Supplemental Needs Trust" July 15, 2004. In their Application, Bank and TCO noted that the court's August 9, 2002 Order directed that Bank's attorney fees and litigation costs would be charged against any distribution from the F.A. Wallace Trust that may in the future become payable to Appellant. Bank and TCO further noted that the trial court's April 1, 2004 Order directed them to transfer all assets in the F.A. Wallace trust to the reformed Lisa Trust. Bank and TCO asserted that Appellant is a contingent beneficiary of the F.A. Wallace Trust and the reformed Lisa Trust and that they anticipated that Appellant would receive distributions from the reformed Lisa Trust, either directly or indirectly.

---

[3] The Presiding Judge of the Tulsa County District Court denied Appellant's Second Emergency Application to Disqualify the trial judge August 10, 2004. The Presiding Judge denied Appellant's Emergency Motion for Rehearing of this issue August 17, 2004.

11

Bank and TCO asserted that the 2002 Order requiring Appellant's distributions from the F.A. Wallace Trust to pay Bank's attorney fees was entered because of Appellant's excessive and onerous litigation activities. They alleged that purpose would be frustrated and defeated if Appellant could avoid its effects by receiving distributions from the F.A. Wallace Trust through his status as contingent beneficiary of the reformed Lisa Trust. Bank and TCO asked that the August 9, 2002 Order be changed to make it apply to Appellant's distributions from the reformed Lisa Trust.

¶21   The trial court set hearing on Bank's and TCO's Application for August 6, 2004. Jage filed her Objection to the distribution of the F.A. Wallace Trust August 5, 2004. On August 6, 2004, Appellant filed his Notice of Removal, in which he purported to be co-trustee of the Lisa Trust and the Stephen P. Wallace Trust. He claimed that the instant case had "been removed to the Southern District of Texas federal court pursuant to 28 U.S.C.A. 1441(b) for heinous violations of Defendants' civil rights protected under the U.S. Constitution."

¶22   The trial court issued its Final Order as to Certain Issues August 9, 2004. In this order the trial court repeated the findings and orders included in the April 1, 2004 Order reforming the Lisa Trust and directing Bank to distribute the assets in the F.A. Wallace Trust to the reformed Lisa Trust. The court certified the Final Order for immediate review pursuant to 12 O.S.2001 §994(A).

¶23  The trial court also filed August 9, 2004 its Order that its August 9, 2002 Order, entered in Tulsa County Case No. PT-2000-44 would apply to any distribution Appellant might receive from the reformed Lisa Trust in the same way that the 2002 Order applied to distributions Appellant would have received from the F.A. Wallace Trust. The result of this Order is that Appellant will be charged with attorney fees and expenses against any distribution payable to him in the future from either trust. The court certified this Order for immediate review as well. The trial court denied Appellant's Emergency Motion for Rehearing September 2, 2004.

¶24  Appellant appeals from the two August 9, 2004 Orders. This matter has been pending since then while Appellant sought other remedies in federal court. However, the matter has been remanded from the federal court and the Oklahoma Supreme Court has assigned the case to this court.[4] As noted earlier, our review is limited to

---

[4] The United States District Court for the Southern District of Texas issued its Order of Remand November 19, 2004 in which it found Appellant had failed to show any basis for federal jurisdiction over the matter. The federal court therefore granted Bank's and TCO's Joint Motion to Remand. The Oklahoma Supreme Court entered its Order July 10, 2006, providing that Appellant's July 3, 2006 motion would be treated as a request for a stay of proceedings, and the Supreme Court denied that request. The Supreme Court further ordered that this case was ready for assignment to the Oklahoma Court of Civil Appeals.

On July 14, 2006, Appellant filed a Notice of Removal in which he claimed to have removed this case to the United States District Court for the District of Columbia. On the same date, Appellant filed an Emergency Notice and Demand for Stay in which he alleged a stay of this appeal is required because Appellant had requested a grand jury proceeding. We note that one federal district court has already held that Appellant failed to show any basis for federal court jurisdiction in this case. Additionally, Appellant's belated attempt to remove a case to federal court after a final order has been entered is untimely under 28 U.S.C.A. §1446(B) which provides that a petition for
(continued...)

issues included in Appellant's brief in chief.

¶25  Appellant's first proposition is that jurisdictional questions can be raised at any time and can never be time-barred. In his brief, Appellant expands on his proposition in his first "question presented," which he states is "(w)hether the Oklahoma Supreme Court erred or was in the alleged collusion documented in Appellant's May 1, 2006 Objection and Emergency Motions to Dismiss for Crimes Against Public Justice, Conspiracy, Mail Fraud, etc., therefore, depriving this court of subject matter jurisdiction and the lower court as well."

¶26  While it is true that jurisdictional questions may be raised at any time, Appellant has simply failed to show in his brief any support for his claim that the trial court did not have subject matter jurisdiction in this case. The Oklahoma Trust Act, 60 O.S.2001 §§175 *et seq.*, includes the following provision on jurisdiction:

> A. The district court shall have original jurisdiction to construe the provisions of any trust instrument; to

---

[4] (...continued)
removal from state court to federal court must be made within thirty days of the date the defendant receives the plaintiff's petition. Appellant's July 2006 effort to remove this case to the U.S. District Court is patently untimely and we deny Appellant's request for a stay on that ground.

On July 21, 2006, Appellant filed a Special Appearance and Notice that no Oklahoma court has subject matter jurisdiction in this case. In that pleading, Appellant asserted that the Texas Supreme Court has jurisdiction of the F.A. Wallace Trust. To that pleading Appellant attached his Petition for Judicial Impeachment, which he filed in the Oklahoma House of Representatives seeking the impeachment of the Chief Justice of the Oklahoma Supreme Court, as well as two judges from the Tulsa County District Court. Appellant has not shown how the Texas Supreme Court has jurisdiction over this case. And, Appellant has not presented any authority that his impeachment or grand jury requests require this court to stay these proceedings.

> determine the law applicable thereto; the powers, duties, and liability of trustee; the existence or nonexistence of facts affecting the administration of the trust estate; to require accounting by trustees; to surcharge trustee; and in its discretion to supervise the administration of trusts; and all actions hereunder are declared to be proceedings in rem.

In his Brief, Appellant has failed to refer to evidence in the record that the trial court did not have jurisdiction in this matter. And, although Appellant argues that the F.A. Wallace Trust was transferred to Bank's offices in Ft. Worth, Texas six months before the instant litigation was filed, and that therefore Bank did not have standing in this case, Appellant has failed to provide any reference to the record showing that he raised this issue in the trial court. For these reasons, we are without authority to alter the trial court's final orders on this ground.

¶27  In his Brief, Appellant has stated his second proposition in two ways: 1) "(w)here the face of the record shows a jurisdictional defect the matter is void and the court is deprived of judicial discretion in re: vacation of the void judgment;" and 2) "(w)hen jurisdiction is challenged, it is incumbent on the party asserting that jurisdiction was complete to show, on the Record, wherein there are no jurisdictional failings. A party seeking to invoke a court's jurisdiction bears the burden of establishing that such jurisdiction exists." This bare statement of law without any reference to the record, nor any explanation of how a jurisdictional defect existed in

this case, is not sufficient to demonstrate error below.

¶28   Appellant's final proposition in his Brief is that "attorneys can't testify in support of factual averments in pleadings. Statements of counsel are not facts before the court." In this proposition, Appellant suggests that the trial judge acted only on the "theories and conclusions" of counsel for Bank in making its decision. The record includes a transcript of the March 26, 2004 hearing on Bank's Petition. Witnesses testified in support of Bank's Petition. We have reviewed the transcript and find sufficient evidence was presented to support the trial court's decision. Counsel for Bank did not testify.

¶29   We recognize Appellant's frustration over the litigation in this case. However, we are constrained by rules limiting our review to matters briefed and supported with citation to the record and to relevant legal authority. Appellant has cited authority in his brief, but he has failed to explain how that authority impacts this case, and he has failed to provide support in the record on appeal to support his claims for relief. For these reasons, the trial court's decision in this case is AFFIRMED.

ADAMS, J., and MITCHELL, P.J., concur.